IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
a Michigan corporation,

Plaintiff,

vs.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

NAVIGATION CATALYST SYSTEMS, INC.,
a Delaware corporation; BASIC
FUSION, INC., a Delaware corporation;
CONNEXUS CORP., a Delaware
corporation; and FIRSTLOOK, INC., a
Delaware corporation,

Defendants.

| | |
|---|---|
| Anthony P. Patti (P43729)<br>HOOPER, HATHAWAY PRICE<br>BEUCHE & WALLACE<br>Attorney for Plaintiff<br>126 S. Main Street<br>Ann Arbor, MI 48104<br>(734) 662-4426<br>apatti@hooperhathaway.com | John P. Jacobs (P15400)<br>JACOBS AND DIEMER, P.C.<br>Local Counsel for Defendants<br>500 Griswold Street, Suite 2825<br>Detroit, MI 48226-3480<br>(313) 965-1900<br>jpj@jpjpc.com |
| Brian A. Hall (P70865)<br>Enrico C. Schafer (P43506)<br>Attorneys for Plaintiff<br>TRAVERSE LEGAL PLC<br>810 Cottagview Drive, Suite G-30<br>Traverse City, MI 49684<br>(231) 932-0636<br>brianhall@traverselegal.com<br>enrico@traverselegal.com | William A. Delgado (admission pending)<br>WILLENKEN WILSON LOH & LIEB LLP<br>Lead Counsel for Defendants<br>707 Wilshire Blvd., Suite 3850<br>Los Angeles, CA 90017<br>(213) 955-9240<br>williamdelgado@willenken.com |

## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2) OR, IN THE

## ALTERNATIVE, TRANSFER

## MEMORANDUM OF POINTS AND AUTHORITIES

**DECLARATIONS**

**EXHIBITS**

**CERTIFICATE OF SERVICE**

William A. Delgado (admission pending)
WILLENKEN WILSON LOH & LIEB LLP
Lead Counsel for Defendants
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com

John P. Jacobs (P15400)
JACOBS AND DIEMER, P.C.
Local Counsel for Defendants
500 Griswold Street, Suite 2825
Detroit, MI 48226-3480
(313) 965-1900
jpj@jpjpc.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
     a Michigan corporation,

     Plaintiff,

vs.

NAVIGATION CATALYST SYSTEMS, INC.,
     a Delaware corporation; BASIC
     FUSION, INC., a Delaware corporation;
     CONNEXUS CORP., a Delaware
     corporation; and FIRSTLOOK, INC., a
     Delaware corporation,

     Defendants.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

---

Anthony P. Patti (P43729)
HOOPER, HATHAWAY PRICE BEUCHE
     & WALLACE
Attorney for Plaintiff
126 S. Main Street
Ann Arbor, MI 48104
(734) 662-4426
apatti@hooperhathaway.com

Brian A. Hall (P70865)
Enrico C. Schafer (P43506)
Attorneys for Plaintiff
TRAVERSE LEGAL PLC
810 Cottagview Drive, Suite G-30
Traverse City, MI 49684
(231) 932-0636
brianhall@traverselegal.com
enrico@traverselegal.com

John P. Jacobs (P15400)
JACOBS AND DIEMER, P.C.
Local Counsel for Defendants
500 Griswold Street, Suite 2825
Detroit, MI 48226-3480
(313) 965-1900
jpj@jpjpc.com

William A. Delgado (admission pending)
WILLENKEN WILSON LOH & LIEB LLP
Lead Counsel for Defendants
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com

---

## MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(2) OR, IN THE

## ALTERNATIVE, TRANSFER

# TABLE OF CONTENTS

Index of Principal Authorities Cited ................................................................. ii

MEMORANDUM OF POINTS AND AUTHORITIES ............................................. 2

    Statement of the Issue Presented .......................................................... 2

    Introduction ............................................................................................. 2

    Statement of Facts .................................................................................. 4

        Introduction to Defendants' Operations ................................... 4

        Defendants' Lack of Michigan Contacts ................................. 6

ARGUMENT

I.     THIS CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL
      JURISDICTION OVER DEFENDANTS ........................................................ 7

    A.  Plaintiff Cannot Establish General Jurisdiction Over Defendants in Michigan .......... 9

    B.  Plaintiff Cannot Establish Specific Jurisdiction Over Defendants in Michigan ........ 10

       1.  Defendants have not purposefully availed themselves of the privilege of
          acting in the forum state or causing a consequence in the forum state because
          Defendant's web sites are "passive" and the "effects doctrine" does not apply .. 11

       2.  Plaintiff's claims do not arise from forum-related activities .............................. 14

       3.  It would not be reasonable to exercise jurisdiction over Defendants
          in Michigan ..................................................................................... 14

II.    THE COURT CAN DISMISS THIS MATTER WITHOUT ORDERING
      DISCOVERY ON THE JURISDICTIONAL QUESTION ............................................. 15

III.   EVEN IF THIS COURT DECIDED IT *COULD* EXERCISE PERSONAL
      JURISDICTION OVER SOME DEFENDANTS, IT SHOULD TRANSFER THIS
      MATTER TO THE CENTRAL DISTRICT OF CALIFORNIA ..................................... 16

CONCLUSION ................................................................................................ 19

# INDEX OF PRINCIPAL AUTHORITIES CITED

**Cases**

*Audi AG and Volkswagon of Am., Inc. v. D'Amato,*
341 F. Supp. 2d 734 (E.D. Mich. 2004) .................................................. 8, 13, 17, 18

*Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.,*
223 F.3d 1082 (9th Cir. 2000) ......................................................................... 9

*Bird v. Parsons,*
289 F.3d 865 (6th Cir. 2002) ................................................................. 8, 9, 10, 11

*Brake Shop, Inc. v. Dacey,*
793 F. Supp 154 (E.D. Mich. 1992) .............................................................. 10

*Brake Shop, Inc. v. Dacey,*
830 F. Supp. 1008 (E.D. Mich. 1993) ........................................................... 10

*Cadle Co. v. Schlichtmann,*
123 Fed. Appx. 675 (6th Cir. 2005) ............................................................... 11

*Calder v. Jones,*
465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984) ............................... 13

*Cottman Transmission Sys., Inc. v. Martino,*
36 F.3d 291, 296 (3d Cir. 1994) ..................................................................... 17

*Cybersell, Inc. v. Cybersell, Inc.,*
130 F.3d 414 (9th Cir. 1997) ............................................................... 10, 13, 14

*Estate of Thomson v. Toyota Motor Corp. Worldwide,*
545 F.3d 357 (6th Cir. 2008) ......................................................................... 10

*Goldlawr, Inc. v. Heiman,*
369 U.S. 463, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) ......................................... 16

*Helicopteros Nacionales de Columbia S.A. v. Hall,*
466 U.S. 408, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984) ................................. 9

*Innovation Ventures, LLC v. N2G Distributing, Inc.,*
2008 WL 5110603 ......................................................................................... 15

*International Shoe Co. v. Washington*,
326 U.S. 310, 66 S. Ct. 154, 90 L. Ed. 95 (1945) .................................................. 8

*McGill Technology Ltd. v. Gourmet Technologies, Inc.*,
300 F. Supp. 2d 501 (E.D. Mich. 2004) ............................................................... 12

*Michigan Coalition of Radioactive Material Users, Inc. v. Girepentrog*,
954 F.2d 1174 (6th Cir. 1992) ............................................................................... 8

*Neogen Corp v. Neo Gen Screening, Inc.*,
282 F3d 883 (6th Cir., 2002) ......................................................................... 11, 15

*Panavision Intl L.P. v. Toeppen*,
141 F.3d 1316 (9th Cir. 1998) ............................................................................. 13

*Pride Distributors, Inc. v. Nuzzolo*,
2007 WL 1098286 ........................................................................................... 8, 12

*See, Inc. v. Imago Eyewear Pty Ltd.*,
2004 WL 5569067 (E.D. Mich. 2004) (unpublished) ..................................... 12, 16

*Serras v. First Tenn. Bank Nat'l Ass'n*,
875 F.2d 1212 (6th Cir. 1989) ............................................................................... 8

*Southern Machine Co. v. Mohasco Indus., Inc.*,
410 F.2d 374 (6th Cir. 1968) ............................................................................... 10

*Theunissen v. Matthews*,
935 F.2d 1454 (6th Cir. 1991) ........................................................................... 7, 8

*United States ex rel Hadid v. Johnson Controls, Inc.*,
2005 WL 1630098 (E.D. Mich. 2005) ................................................................. 16

*Zippo Mfg,. Co. v. Zippo Dot Com, Inc.*,
952 F. Supp. 1119 (W.D. Pa. 1997) ............................................................... 11, 12

**Federal Statutes**
28 U.S.C. § 1404 .................................................................................................... 1
28 U.S.C. § 1404(a) .................................................................................. 16, 17, 18
28 U.S.C. § 1406(a) ............................................................................................. 16

**Federal Rules**
Fed. R. Civ. P. 12(b)(2) ...................................................................................... 1, 7
Fed. R. Civ. P. 45(b)(2) ........................................................................................ 18

TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 12(b)(2), Defendants Navigation Catalyst Systems, Inc. ("NCS"), Basic Fusion, Inc. ("Basic Fusion"), Connexus Corporation ("Connexus") and Firstlook, Inc. ("Firstlook") (collectively "Defendants") hereby move this Court to dismiss the claims against them, and each of them, for lack of personal jurisdiction over each of them or, in the alternative, to transfer this matter pursuant to 28 U.S.C. § 1404 to the U.S. District Court for the Central District of California.

This Motion is based on the facts set forth in the accompanying Memorandum of Points and Authorities. In summary, Defendants do not have the constitutionally mandated "minimum contacts" with the state of Michigan such that the exercise of personal jurisdiction over Defendants comports with traditional notions of fair play and substantial justice.

In the alternative, this Court should transfer this matter to the U.S. District Court for the Central District of California which is the more suitable forum for this case. This Motion is supported by the attached Memorandum of Points and Authorities, the Declarations of Seth Jacoby, Sandeep Chopra, and William A. Delgado, the case file, and the arguments of counsel that the Court would entertain at a hearing on this motion.

On or about March 20, 2009, there was a conference between William A. Delgado, counsel for Defendants, and Enrico Shaefer, counsel for Plaintiff, in which Defendants explained the nature of the motion, its legal basis and requested, but did not obtain, concurrence in the relief sought.

RESPECTFULLY SUBMITTED this __ day of April 2009.

/s/ John P. Jacobs
John P. Jacobs (P15400)
JACOBS AND DIEMER, P.C.
Local Counsel for Defendants
500 Griswold Street, Suite 2825
Detroit, MI 48226-3480
(313) 965-1900
jpj@jpjpc.com

/s/ William A. Delgado (admission pending)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
(213) 955-9240
Lead Counsel for Defendants
williamdelgado@willenken.com

## MEMORANDUM OF POINTS AND AUTHORITIES

### Statement of the Issue Presented

The question for this Court is this: whether California companies involved in the registration and operation of "passive" Internet web sites are subject to personal jurisdiction in this district court? Defendants respectfully submit that the answer is "no." For that reason, Defendants ask that the Court dismiss this lawsuit for lack of personal jurisdiction over each of them. In the alternative, Defendants ask that this matter be transferred to the U.S. District Court for the Central District of California, which is the more suitable venue for this matter.

### Introduction

Over fifty years ago, the U.S. Supreme Court announced that a party's constitutional due process rights required certain "minimum contacts" with a forum before that forum could exercise personal jurisdiction over the party. Because Defendants lack these "minimum contacts" with the state of Michigan, this matter must be dismissed.

2

Defendants are Delaware corporations with their principal places of operations in El Segundo, California. None of the Defendants has any offices, employees, bank accounts, or other property in Michigan. None of the Defendants has a registered agent for service of process in Michigan. None of the Defendants has ever filed a lawsuit in Michigan. In short, none of the Defendants have the constitutionally mandated "minimum contacts" that are required by traditional notions of fair play and substantial justice before this Court can exercise personal jurisdiction over them.

Admittedly, defendant NCS owns various domain names where it hosts various web sites, and these web sites can be viewed by residents of Michigan. Plaintiff apparently believes that is sufficient to confer jurisdiction in Michigan. Plaintiff is wrong. If we use Plaintiff's logic, because web sites can be viewed anywhere in the world, web site operators should be subject to jurisdiction anywhere, including such locations as Belarus, Dubai, and Kuala Lumpur.

Not surprisingly, that is not the law in the Sixth Circuit (or anywhere else for that matter). In the Sixth Circuit, personal jurisdiction cannot be exercised over operators of "passive" web sites where no commercial activity occurs. Here, NCS operates "passive" web sites. These web sites simply contain informational hyperlinks to other third party web sites. *No* business transactions or commercial activity take place on NCS's web sites at all. The actions of Basic Fusion (the registrar of the domain names) and Firstlook (the content provider) are even more attenuated since these companies merely provide services to NCS from California. And, Connexus plays no role whatsoever in the registration or monetization process; it is merely the parent company of Firstlook.

As a result, the exercise of personal jurisdiction over Defendants in Michigan, based solely on the existence of "passive" web sites, would be improper. For that reason, Defendants respectfully request that this Court dismiss this matter. In the alternative, Defendants ask that this Court transfer this matter to the U.S. District Court for the Central District of California, which is a more suitable forum for this dispute.

## Statement of Facts

<u>Introduction to Defendants' Operations</u>. Plaintiff has named four entities as defendants.

1. Connexus—this Delaware Corporation, residing in California, is the parent company. Declaration of Sandeep Chopra, dated April 14, 2009, at ¶ 2.

2. Firstlook—this Delaware Corporation, residing in California, is a wholly owned subsidiary of Connexus. Firstlook is a domain name monetization company which creates web sites populated with hyperlinks for registrants, like NCS. *Id.* at ¶ 3. Declaration of Seth Jacoby, dated April 14, 2009, at ¶ 2, 13. Firstlook is the parent corporation of NCS and Basic Fusion, Inc. *Id.*

3. NCS —this Delaware Corporation, residing in California, is a wholly owned subsidiary of Firstlook. *Id.* at ¶¶ 2, 13. NCS operates as a domain name holding company which acquires generic and descriptive domain names in bulk (i.e., it is a "registrant" of domain names). *Id.* at ¶ 3.

4. Basic Fusion—this Delaware Corporation, residing in California, is also a wholly owned subsidiary of Firstlook. *Id.* at ¶¶ 2, 13. Basic Fusion is an ICANN– accredited registrar which registers domain names on behalf of registrants, such as NCS. *Id.* at ¶ 3.

Defendants' business model is to profit from "direct navigation." Many Internet users "surf" the Internet by direct navigation, which occurs when an Internet user enters a word or phrase directly in a web browser's address bar (with an appropriate top-level domain such as ".com" or ".org"), instead of in the search field of a search engine. For example, an Internet user looking to purchase party supplies might simply type www.partysupplies.org into the address bar rather than conducting a Yahoo! or Google search for "party supplies." *Id.* at ¶ 4. NCS helps ensure that Internet users find the information, products, and services they seek and that online advertisers reach their audience. NCS's automated system accomplishes this by identifying and registering domain names reflecting generic or descriptive words. For example, in the hypothetical provided, NCS's system might attempt to register "partysupplies.org."[1] That way, when an Internet user typed www.partysupplies.org into their browser's address bar, they would be taken to a web site with information on party supplies. *Id.* at ¶ 5.

After NCS registers domain names through the Basic Fusion registrar[2], the NCS system submits the domain names to Firstlook, a domain name monetization company which creates web pages for the domain names. These passive web pages consist of hyperlinks to products and services that a visitor might be interested based on the domain name itself. *Id.* at ¶ 7. For example, the "landing page" (i.e., the first page the user sees) for www.partysupplies.org would contain hyperlinks to third party advertisers that provide party supplies, party decorations, party locations, etc. *Id.* at ¶ 8 and Ex. A.

---

[1] Registration of a domain name with ICANN can only be done by a registrar. Thus, NCS registers its domain names through Basic Fusion, an ICANN-accredited registrar. *Id.* at ¶ 6.

[2] These third parties are unrelated to Defendants.

When a visitor clicks on a hyperlink to a third party advertiser, the user is transported *away* from NCS's domain and to the web site owned by the third party advertiser that provides the product or service the user is seeking. Thus, NCS does not sell any products or services and visitors to an NCS domain *cannot* conduct any business on that site. Users can only click on the hyperlinks or input search criteria into a search box. *Id*. at ¶ 9. For example, visitors to the NCS domain, www.partysupplies.org, could *not* actually order party supplies or party decorations from NCS. Instead, to obtain any information, product or service, the visitor must click on a hyperlink and be transported away from NCS's domain to a third party advertiser. *Id*. at ¶ 10. Put another way, visitors cannot "interact" with any web site at an NCS domain because they cannot provide any: personal information (e.g., name, address), order information (e.g., order party supplies) or payment information (e.g., credit card number).[3] *Id*. at ¶ 11.

Defendants' Lack of Michigan Contacts. None of the corporate Defendants reside in Michigan. To the contrary, each of Connexus, Firstlook, Navigation, and Basic Fusion are separate Delaware corporations. And, each of these companies has its principal place of business in El Segundo, California. *Id*. at ¶ 13.

Further, none of the Defendants have *systematic and/or continuous* contact with Michigan. None of the Defendants has an office anywhere in Michigan. Jacoby Decl. at ¶ 14; Chopra Decl. at ¶ 4. None of the Defendants has any employees, bank accounts or other property in Michigan. *Id*. None of the Defendants has ever filed a lawsuit in the state of Michigan or otherwise availed itself of the Michigan legal system. *Id*. None of the Defendants

---

[3] The domain name that is the subject of this lawsuit exist in the same manner—any web pages which appeared on the domain name simply consisted of hyperlinks to services provided by third party advertisers. Jacoby Decl. at ¶ 12.

has a registered agent for service of process in Michigan. *Id.* Neither Firstlook nor Basic Fusion has entered into any contracts with any entity in Michigan. Jacoby Decl. at ¶ 14. None of Firstlook, NCS or Basic Fusion has ever sought to qualify to do business in Michigan. *Id.* None of Firstlook, NCS, or Basic Fusion has a business license in Michigan. *Id.*

Only two defendants have ever had any contact with Michigan and, then, only in connection with matters that do not arise from this lawsuit. From time to time, NCS will sell one of its domain names to a third party. In 2007, NCS sold 5 domain names to a corporation having its principal place of business in Michigan. In 2008, NCS sold 1 domain name to a corporation having its principal place of business in Michigan. In 2009, NCS has sold 2 domain names to a corporation having its principal place of business in Michigan. None of these domain names is related to this case. Jacoby Decl. at ¶ 16. Connexus recently filed a document with the Department of State but then, only because another one of its subsidiaries (Traffic Marketplace), which is *not* a defendant in this lawsuit and whose business is *not* implicated by this lawsuit, recently hired an employee to work in Detroit on or about 3/2/2009. Chopra Decl. at ¶ 5.

## Argument

I.  THIS CASE SHOULD BE DISMISSED FOR LACK OF PERSONAL JURISDICTION OVER DEFENDANTS.

Fed. R. Civ. P. 12(b)(2) allows a defendant to seek dismissal of a complaint by way of motion on the basis that the court lacks personal jurisdiction. Upon the filing of a motion to dismiss, this Court has three procedural options: (1) decide the motion upon the affidavits alone; (2) permit discovery in aid of deciding the motion; (3) conduct an evidentiary hearing to resolve any apparent factual questions. *Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991). Regardless of the procedure adopted, the plaintiff always bears the burden of proving jurisdiction

exists, though the weight of the burden varies depending on the procedure adopted. *Serras v. First Tenn. Bank Nat'l Ass'n*, 875 F.2d 1212, 1214 (6th Cir. 1989). Where a court is able to decide the motion upon the affidavits alone, the plaintiff must set forth a *prima facie* case for jurisdiction to avoid dismissal. *Theunissen*, 935 F.2d at 1458.

Determining whether personal jurisdiction exists is a two-step process. "Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal question, personal jurisdiction over a defendant exists 'if the defendant is amenable to service of process under the [forum] state's long-arm statute and if the exercise of personal jurisdiction would not deny the defendant due process.'" *Bird v. Parsons*, 289 F.3d 865, 871 (6th Cir. 2002) *citing Michigan Coalition of Radioactive Material Users, Inc. v. Girepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992). "Under Michigan's Long-Arm Statute, the state's jurisdiction extends to the limits imposed by the Due Process Clause, and thus, the two questions become one." *Audi AG and Volkswagon of Am., Inc. v. D'Amato*, 341 F. Supp. 2d 734, 742 (E.D. Mich. 2004); *see also Pride Distributors, Inc. v. Nuzzolo*, 2007 WL 1098286 *2 (E.D. Mich.) (unpublished) (noting that the two inquiries merge and that "courts must only determine whether an assertion of personal jurisdiction over the defendant violates the Due Process Clause.") [4].

Due process requires that, "in order to subject a defendant to a judgment *in personam*, if he be not present within the territory of the forum, he have certain minimum contacts with it such that the maintenance of the suit does not offend traditional notions of fair play and substantial justice." *International Shoe Co. v. Washington*, 326 U.S. 310, 316, 66 S. Ct. 154, 90 L. Ed. 95 (1945) (internal quotation marks and citations omitted). Applying the "minimum contacts"

---

[4] Unpublished decisions cited by Defendants are found in our attachments as Exhibit "D".

analysis, a court may obtain either general or specific jurisdiction over a defendant. *Bird*, 289

F.3d at 873 ("Personal jurisdiction can be either general or specific, depending upon the nature

of the contacts that the defendant has with the forum state.").

A.    Plaintiff Cannot Establish General Jurisdiction Over Defendants in Michigan.

The exercise of general jurisdiction is appropriate only when the defendant's activities in

the forum state are substantial or "continuous and systematic." *Helicopteros Nacionales de*

*Columbia S.A. v. Hall*, 466 U.S. 408, 416, 104 S. Ct. 1868, 80 L. Ed. 2d 404 (1984); *Bird*, 289

F.3d at 873 ("General jurisdiction is proper only where 'a defendant's contacts with the forum

state are of such a continuous and systematic nature that the state may exercise personal

jurisdiction over the defendant even if the action is unrelated to the defendant's contacts with the

state.'"). As one court has noted, "[t]he standard for establishing general jurisdiction is 'fairly

high.'" *Bancroft & Masters, Inc. v. Augusta Nat'l, Inc.*, 223 F.3d 1082, 1086 (9th Cir. 2000).

Here, it is clear that there is no general jurisdiction over Defendants in Michigan. As

noted, *supra*, Defendants do not have "systematic or continuous contacts" with Michigan.

Defendants are Delaware corporations with offices in California. Jacoby Decl. at ¶ 13; Chopra

Decl. at ¶ 3. They do not maintain offices in Michigan, employ persons in Michigan, have bank

accounts in Michigan, have registered agents for service in Michigan, reside in Michigan or even

visit Michigan. Jacoby Declaration at ¶14 and Chopra Decl. at ¶ 4; *Bird*, 289 F.3d at 873-74 (no

general jurisdiction existed where Plaintiff did not allege that Dotster had an office in Ohio, was

licensed to do business there, had an Ohio bank account, directed business operations from Ohio

or visited Ohio). Indeed, *Bird* is particularly instructive in that the Sixth Circuit held that there

was no general jurisdiction over Dotster despite the fact that 4,666 Ohio residents had used

Dotster (a registrar) to register domain names. *Id.* If transacting business with 4,666 residents of the forum state is insufficient to establish general jurisdiction in *Bird*, then having *one* defendant sell a handful of unrelated domain names to a few Michigan residents is also insufficient. The economic reality is that Defendants have no ties—economic or otherwise—to the state of Michigan.[5] "Further, the fact that Dotster maintains a website that is accessible to anyone over the Internet is insufficient to justify general jurisdiction." *Bird*, 289 F.3d at 874 *citing Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 419-20 (9th Cir. 1997).

    For the foregoing reasons, this Court does not have general jurisdiction over Defendants.

B.     <u>Plaintiff Cannot Establish Specific Jurisdiction Over Defendants in Michigan.</u>

    The exercise of specific jurisdiction over Defendants is permissible only if their contacts with Michigan satisfy *all three parts* of the three-part test established in *Southern Machine Co. v. Mohasco Indus., Inc.*, 410 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege
>
> of acting in the forum state or causing a consequence in the forum
>
> state. Second, the cause of action must arise from the defendant's

---

[5] Further, the employment of a single Michigan resident by subsidiary Traffic Marketplace in March 2009—*after* the occurrence of the events complained of in the complaint—is insufficient to establish general jurisdiction over Connexus, the parent company. *See, e.g., Brake Shop, Inc. v. Dacey,* 793 F. Supp. 154 (E.D. Mich. 1992); *Brake Shop, Inc. v. Dacey,* 830 F. Supp. 1008 (E.D. Mich. 1993) (Reconsideration Opinion) (Judge Gadola expressing the view that, as ought to be recognized here, even a subsequent Michigan *incorporation* by a foreign corporation which is only effective long after the time of the justiciable actions upon which the suit is based does not justify an extension of personal jurisdiction, as that later incorporation is necessarily and fundamentally unrelated to the earlier acts which form the matrix of the suit). Furthermore, to establish jurisdiction over a parent company based on the actions of a subsidiary, the parent and the subsidiary must be alter egos. *Estate of Thomson v. Toyota Motor Corp. Worldwide*, 545 F.3d 357, 362 (6th Cir. 2008). Here, there is no allegation that Connexus and Traffic Marketplace are alter egos (they are not) because Traffic Marketplace is not even a party in this lawsuit.

activities there. Finally, the acts of the defendant or consequences

caused by the defendant must have substantial enough connection

with the forum state to make the exercise of jurisdiction over the

defendant reasonable.

*Bird*, 289 F.3d at 874, *citing Southern Machine, supra.*

>    1. <u>Defendants have not purposefully availed themselves of the privilege of acting in the forum state or causing a consequence in the forum state because Defendant's web sites are "passive" and the "effects doctrine" does not apply.</u>

>        a.    <u>The *Zippo* Sliding Scale Approach.</u>

"A defendant purposefully avails itself of the privilege of acting in a state through its

website if the website is interactive to a degree that reveals specifically intended interactions

with residents of the state." *Neogen Corp. v. Neo Gen Screening, Inc.,* 282 F.3d 883 at 890 (6[th]

Cir 2002), *citing Zippo Mfg. Co. v. Zippo Dot Com, Inc.,* 952 F. Supp. 1119, 1124 (W.D. Pa.

1997) (using a "sliding scale" of interactivity to identify Internet activity that constitutes

purposeful availment); *Cadle Co. v. Schlichtmann,* 123 Fed. Appx. 675, 678 (6th Cir. 2005) ("In

evaluating whether the defendant's contact with the forum state constituted purposeful

availment, this and other circuits have used the '*Zippo* sliding scale' approach…").

The "sliding scale" approach of *Zippo* is straight forward. "At one end of the spectrum

are situations where a defendant clearly does business over the Internet. If the defendant enters

into contracts with residents of a foreign jurisdiction that involve the knowing and repeated

transmission of computer files over the Internet, personal jurisdiction is proper." *Zippo,* 952 F.

Supp. at 1124. "At the opposite end are situations where a defendant has simply posted

information on the Internet Web site which is accessible to users in a foreign jurisdiction. **A**

**passive Web site that does little more than make information available to those who are**

**interested in it is not grounds for the exercise of personal jurisdiction."** *Id.* (emphasis

added). "The middle ground is occupied by interactive Web sites where a user can exchange

information with the host computer. In these cases, the exercise of jurisdiction is determined by

examining the level of interactivity and commercial nature of the exchange of information that

occurs on the Web site." *Zippo*, 952 F. Supp. at 1124.

Defendants' web sites (those implicated in this lawsuit *and* other ones it operates) are all

passive web sites. "A passive website is one that simply provides information; customers cannot

transact business (e.g., purchase products on a passive website)." *McGill Technology Ltd. v.*

*Gourmet Technologies, Inc.*, 300 F. Supp. 2d 501, 507 (E.D. Mich. 2004). When visitors to an

NCS website click on a hyperlink, they are taken *away* from the NCS domain. Jacoby Decl. at

¶¶ 9-12. **No** commercial activity takes place on the web sites, and visitors to the web sites

cannot exchange commercial information with the host computer (e.g. personal information,

order information, credit card information, etc). *Id.* As such, the likelihood that personal

jurisdiction can be constitutionally exercised is essentially zero. *McGill*, 300 F. Supp. 2d at 507

("Accordingly, the passive GT site is an insufficient ground to establish personal jurisdiction

over Defendant GT."); *see also See, Inc. v. Imago Eyewear Pty Ltd.*, 2004 WL 5569067 (E.D.

Mich. 2004) (unpublished) (personal jurisdiction improper when web site at issue was "passive"

in nature); *Pride Distributors, supra* (granting motion to dismiss even though website was "semi-

interactive").

        b.      <u>The "effects doctrine."</u>

Plaintiffs seeking to exercise jurisdiction over a defendant solely on the basis of an Internet web site often rely on the "effects doctrine" first articulated by the Supreme Court in *Calder v. Jones*, 465 U.S. 783, 104 S. Ct. 1482, 79 L. Ed. 2d 804 (1984), to satisfy the "purposeful availment" prong. "For the 'effects doctrine' to apply, the Plaintiff must demonstrate that the brunt injury was felt in Michigan, the use of the Plaintiff's trademarks was intentional or deliberate and that the Defendant's acts were expressly aimed at the State of Michigan." *Audi AG*, 341 F. Supp. 2d at 746. However, as the *Audi AG Court* presciently noted:

> In the Internet context, **"simply registering someone else's trademark as a domain name and posting a website on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another."** For the "effects doctrine" to apply, there needs to be "something more" to demonstrate that the defendant directed his activity toward the forum state. The Court notes that the "effects doctrine" should be applied with caution because a plaintiff always feels the effect of a legal injury in its home forum.

*Id*. (emphasis added) at 746-47, *relying on Panavision Intl L.P. v. Toeppen*, 141 F.3d 1316, 1322 (9th Cir. 1998) (*quoting Cybersell, Inc. v. Cybersell, Inc.*, 130 F.3d 414, 418 (9th Cir. 1997)).

Here, Plaintiff cannot meet this test for at least two reasons. First, NCS's *automated* registration of domain names in bulk is not expressly aimed at Plaintiff, specifically, or Michigan, in general. NCS is not registering domain names that are specifically designed to elicit web site visitors from Michigan nor is any Defendant taking affirmative steps to

specifically encourage residents of Michigan to visit its web sites. Indeed, Plaintiff admits that

its websites relies on personal weather stations to provide weather conditions around the **_globe_**

(Complaint at ¶ 15) and its websites get 12.0 million **_global_** visitors each month (Complaint at ¶

19), so Plaintiff cannot claim that its web sites are visited solely by Michigan residents such that

Defendants' conduct was aimed _at_ Michigan. And, of course, the mere fact that the web pages at

these domains are available for view by residents of Michigan is insufficient to show that any

conduct was aimed at Michigan.

Second, Plaintiff has not and cannot allege the "something more" which is required. _See,_

_e.g., Cybersell_, 130 F.3d at 418 ("**Creating a site, like placing a product into the stream of**

**commerce, may be felt nation-wide or even world-wide but, without more, it is not an act**

**purposefully directed toward the forum state.**") (emphasis added). Here, Defendants register

domain names and create a site...nothing more. As a result, Plaintiff cannot rely on the "effects

doctrine" to show purposeful availment.

2.      Plaintiff's claims do not arise from forum-related activities.

As explained in the Jacoby and Chopra Declarations, Defendants do not conduct any

activities in Michigan. NCS's automated system, which selects the domain names to acquire,

runs in California. Jacoby Decl. at ¶17. Basic Fusion, the registrar which registers the domain

names, does so from California. _Id._ at ¶ 13. Firstlook's systems monetize domain names from

California. _Id._ at ¶ 13. And, Connexus, who is merely a parent company, operates from

California. Chopra Decl. at ¶3. Put simply, Plaintiff's claims do not arise from Defendant's

"forum-related activities" as there is no activity in the forum.

3.      It would not be reasonable to exercise jurisdiction over Defendants in
         Michigan.

Perhaps the best way to illustrate why it would be unreasonable to assert jurisdiction over Defendants in this case is to compare Defendants, here, to the Defendant in *Neogen*. In *Neogen*, the Sixth Circuit held that it was reasonable to exercise jurisdiction over a defendant who previously had yearly sales with the state of Michigan and expected to continue having yearly sales in the state of Michigan such that "its predictable yearly business in Michigan does represent a continuing relationship with the state overall." *Neogen*, 282 F.3d 883 at 892.

Here, the opposite is true. Defendants conduct no business with Michigan residents with respect to the domain names at issue in this lawsuit. They do not anticipate conducting any business with Michigan residents on a yearly basis with respect to those domains. They simply provide informational hyperlinks on a web site that is accessible from any place in the world. If it is not reasonable to exercise jurisdiction over them in Kuala Lumpur, then it is not reasonable to exercise jurisdiction over them in Michigan.

In summary then, the exercise of personal jurisdiction over Defendants would be improper, and, therefore, this matter should be dismissed.

II.     THE COURT CAN DISMISS THIS MATTER WITHOUT ORDERING DISCOVERY ON THE JURISDICTIONAL QUESTION.

Before the Court exercises its discretion to grant discovery prior to the ruling on a 12(b)(2) motion, Plaintiff must first offer *some* facts that support the exercise of personal jurisdiction. *Innovation Ventures, LLC v. N2G Distributing, Inc.*, 2008 WL 5110603 (E.D. Mich.) (denying discovery because "Plaintiff has not established that Diehl has had any contacts with the forum state or adduced any evidence showing that it is probable that Diehl purposefully availed himself of the privilege of conducting business in Michigan."). Here, since Defendants

have no contacts with Michigan outside of the Internet context, Plaintiffs cannot offer any facts

to support the exercise of personal jurisdiction. Thus, it would be needlessly expensive,

unnecessary, and inappropriate to permit discovery on the jurisdictional question. *Cf. See, Inc.,*

2004 WL 5569067 at *11.

III.   EVEN IF THIS COURT DECIDED IT *COULD* EXERCISE PERSONAL
       JURISDICTION OVER SOME DEFENDANTS, IT SHOULD TRANSFER THIS
       MATTER TO THE CENTRAL DISTRICT OF CALIFORNIA.

Even assuming that Plaintiff is right, and we deny it, and that one or more of the

Defendants are, despite our strong showing, still subject to the jurisdiction of Michigan, the

Court may nevertheless transfer the entire case in the interest of justice pursuant to 28 U.S.C. §

1406(a) to the Central District of California where **all** Defendants are subject to the full gamut of

plenary jurisdiction and proper venue. Facing this type of situation before, in *United States ex rel*

*Hadid v. Johnson Controls, Inc.*, 2005 WL 1630098 (E.D. Mich. 2005), Judge Battani, utilizing

the interest of justice Rule of §1406(a) in a similar case, held:

> Section 1406(a) allows a district court to grant a change of venue when
>
> venue was improper in the original forum. Specifically, section 1406(a)
>
> provides that a district court with a case "laying venue in the wrong
>
> division or district shall dismiss, or if it be in the interest of justice,
>
> transfer such case to any district or division in which it could have been
>
> brought." Unlike section 1404(a), however, section 1406(a) does not
>
> require that the district court have personal jurisdiction over the
>
> defendants before transferring the case. *See Goldlawr, Inc. v. Heiman,*
>
> 369 U.S. 463, 466-67, 82 S.Ct. 913, 8 L.Ed.2d 39 (1962) (utilizing section

1406(a) to transfer a case where there was both improper venue and lack

of personal jurisdiction in the transferor forum). Thus, Section 1406(a)

authorizes the district court to transfer a case to avoid an obstacle to

adjudication on the merits due to lack of personal jurisdiction or improper

venue.

In situations where venue is proper for one defendant but not for another,

the court may transfer the entire case to another district that is proper for

both defendants or sever the claims. *Cottman Transmission Sys., Inc. v.*

*Martino*, 36 F.3d 291, 296 (3d Cir. 1994). Here, the conduct of RMS is

central to the claims raised by Plaintiff, and the Court concludes that the

better course of action is to transfer the action in its entirety to the

Northern District of Florida. The Northern District of Florida is an

appropriate forum and there is no contention before this Court that venue

would not be proper with respect to both Defendants.

Furthermore, as *Audi AG v. D'Amato* , 341 F. Supp. 2d 734, 749 (E.D. Mich. 2004) put it as

to prevailing policy, "[D]istrict courts have wide discretion to transfer an action under 28 U.S.C.

§ 1404(a) in order to 'prevent waste of time, energy and money, and to protect litigants,

witnesses and the public against unnecessary inconvenience and expense." *Audi AG,* 341 F.

Supp. 2d at 749. In assessing whether to transfer a case, the Court must consider the following:

(1) the convenience of the parties; (2) the convenience of the witnesses; (3) the relative ease of

access to sources of proof; (4) the availability of processes to compel attendance of unwilling

witnesses; (5) the cost of obtaining willing witnesses; (6) the practical problems associated with

trying the case most expeditiously and inexpensively; and (7) the interests of justice. *Id.* Here, these factors are either in equipoise or favor transfer.

First, witness convenience favors transfer. "Witnesses' convenience is one of the most important factors in determining whether to grant a motion to change venue under §1404(a)." *Id.* at 750. According to its website, Plaintiff's executive office—where its President and other executive team members work—is located in **San Francisco, California** so Plaintiff has witnesses in California. Declaration of William A. Delgado, dated April 14, 2009 at Ex. C (printouts of Plaintiff's web site showing executive office in San Francisco). Defendants also have witnesses in California. Jacoby Decl. at ¶ 18; *Audi AG*, 341 F. Supp. 2d at 750-51 ("In the Eastern District of Michigan, courts have held that 'convenience of witnesses who are also employees is considered as part of a motion to transfer and is not discounted.'"). In addition, the third party which provides the majority of the advertisements appearing on the web sites, resides in California. Jacoby Decl. at ¶ 18.

Second, access to proof favors transfer. The automated systems at the very core of Plaintiff's complaint as well as Defendants' documentary evidence (and the documentary evidence of Plaintiff's executives and important third parties) are located in California. *Id.* at ¶¶ 17-18; *Audi AG*, 341 F. Supp. 2d at 751 ("A fundamental principle guiding the Court's analysis is that litigation should proceed in that place where the case finds its center of gravity.") (internal citations omitted).

Third, availability of service of process and the cost of obtaining witnesses favor transfer. California witnesses—including third party witnesses—are not subject to the subpoena power of this Court. Fed. R. Civ. P. 45(b)(2). Thus, if a trial in this matter were held in Michigan,

Defendants would have to present their evidence in some less than convincing fashion, such as reading deposition transcripts, while Plaintiff would present live witnesses. Even if Defendant's witnesses were amenable to traveling to Michigan for trial, the cost would be significant. The opposite is not true, however. Apparently, Plaintiff's main witnesses are already in San Francisco, a short and inexpensive flight to Los Angeles and subject to statewide subpoena process. Further, even if there were some limited number of witnesses in Michigan, Plaintiff ostensibly has the incentive to pursue this case and, therefore, will undoubtedly present their live witness testimony at a trial in California.

Fourth, transfer to California would be efficient. This case is still in the pleading stage, all the parties are essentially in California, and the median time for resolving a civil case in the Central District of California is essentially equivalent to the median time for disposition of a civil case in this court. *Compare* Federal Court Management Statics for C.D. Cal. and E.D. Mich., attached as Exhibits D and E to the Declaration of William A. Delgado.

The remaining factors are in equipoise. For example, it would be just as convenient for Plaintiff for this case to proceed in Michigan as it would be convenient for Defendants for this case to proceed in California. If anything, this factor *also* favors transfers since Plaintiff has a California office. And, while Michigan may have an interest in protecting Plaintiff, California has a similar interest in the business activities of both Plaintiff and Defendants. Given that no factor strongly favors keeping this matter in Michigan and several factors favor transfer, this Court should transfer this matter to the Central District of California. Finally, the Court may always transfer this to the Central District of California "in the interests of justice".

## Conclusion

Defendants are California based companies that register domain names and maintain passive web sites with informational hyperlinks. Time and again, courts throughout the country have held that the operation of a passive web site is insufficient for the exercise of personal jurisdiction over the web site operator. This Court should hold no differently. Defendants respectfully request that the Court grant its motion to dismiss or, in the alternative, transfer this matter to the U.S. District Court for the Central District of California.

RESPECTFULLY SUBMITTED this 14th day of April 2009.

/s/ John P. Jacobs
John P. Jacobs (P15400)
JACOBS AND DIEMER, P.C.
Local Counsel for Defendants
500 Griswold Street, Suite 2825
Detroit, MI 48226-3480
(313) 965-1900
jpj@jpjpc.com

/s/ William A. Delgado (admission pending)
William A. Delgado (admission pending)
WILLENKEN WILSON LOH & LIEB LLP
Lead Counsel for Defendants
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
a Michigan corporation,

Plaintiff,

vs.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

NAVIGATION CATALYST SYSTEMS, INC.,
a Delaware corporation; BASIC
FUSION, INC., a Delaware corporation;
CONNEXUS CORP., a Delaware
Corporation; and FIRSTLOOK, INC., a
Delaware corporation,

Defendants.

---

William A. Delgado (admission pending)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

John P. Jacobs (P15400)
JACOBS AND DIEMER, P.C.
Local Counsel for Defendants
500 Griswold Street, Suite 2825
Detroit, MI 48226-3480
(313) 965-1900
jpj@jpjpc.com

---

## DECLARATION OF WILLIAM A. DELGADO

I, William A. Delgado, declare as follows:

1.     I am an attorney duly licensed to practice in the State of California and am in the

process of applying for admission to this Court.  I make this declaration in support of

Defendants' Motion to Dismiss or, in the Alternative, for Transfer.  I have personal knowledge

of the facts stated herein and, if called as a witness, I could competently testify hereto.

2.     Attached as Exhibit A is a true and correct copy of the Judicial Caseload Profile Report for the Central District of California obtained from http://www.uscourts.gov/fcmstat.

3.     Attached as Exhibit B is a true and correct copy of the Judicial Caseload Profile Report for the Eastern District of Michigan obtained from http://www.uscourts.gov/fcmstat.

4.     Attached as Exhibit C is a true and correct copy of printouts I obtained from Plaintiff's web site of the biography and contact information of some of Plaintiff's executives.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 14th day of April 2009 at Miami, Florida.

William A. Delgado

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
     a Michigan corporation,

     Plaintiff,

vs.

NAVIGATION CATALYST SYSTEMS, INC.,
     a Delaware corporation; BASIC
     FUSION, INC., a Delaware corporation;
     CONNEXUS CORP., a Delaware
     Corporation; and FIRSTLOOK, INC., a
     Delaware corporation,

     Defendants.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

---

William A. Delgado (admission pending)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
(213) 955-9240
Lead Counsel for Defendants
williamdelgado@willenken.com

John P. Jacobs (P15400)
JACOBS AND DIEMER, P.C.
Local Counsel for Defendants
500 Griswold Street, Suite 2825
Detroit, MI 48226-3480
(313) 965-1900
jpj@jpjpc.com

---

## **DECLARATION OF SETH JACOBY**

I, Seth Jacoby, declare as follows:

1.     I am over the age of eighteen and am a duly authorized representative of the

defendants in this lawsuit. I make this declaration in support of Defendants' Motion to Dismiss

or, in the Alternative, for Transfer.

2.     Since April 2008, I have been the President of Firstlook, Inc., a wholly-owned

subsidiary of Connexus Corporation. Firstlook is the parent corporation of both Navigation

Catalyst Systems, Inc. ("NCS") and Basic Fusion, Inc. ("Basic Fusion"). Connexus is the parent corporation of Firstlook. I have been responsible for various aspects of their online businesses, including the business associated with domain names. My knowledge of the matters herein is based on personal knowledge and a review of business records, except where stated on information and belief.

3.        As explained in more detail, below, NCS is a domain name holding company which acquires generic and descriptive domain names in bulk (i.e. it is a "registrant" of domain names). Basic Fusion is an ICANN –accredited registrar which registers domain names on behalf of registrants, like NCS. Firstlook is a domain name monetization company which creates web sites populated with sponsored links for registrants, like NCS.

4.        Many Internet users "surf" the Internet by direct navigation, which occurs when an Internet user enters a word or phrase directly in a web browser's address bar (with an appropriate top-level domain such as ".com" or ".org"), instead of in the search field of a search engine. For example, an Internet user looking to purchase party supplies might simply type www.partysupplies.org into the address bar rather than conducting a Yahoo! or Google search for "party supplies."

5.        NCS helps ensure that Internet users find the information, products, and services they seek and that online advertisers reach their audience. NCS's automated processes accomplish this by identifying and registering domain names reflecting generic or descriptive words. For example, in the hypothetical provided, NCS's system might attempt to register "partysupplies.org." That way, when an Internet user simply typed www.partysupplies.org into their browser's address bar, they would be taken to a web site with information on party supplies.

6.     Registration of a domain name can only be done by a registrar.  Thus, NCS registers its domain names with Basic Fusion, an ICANN-accredited registrar.

7.     After registering the domain name through Basic Fusion, NCS then submits its domain names to Firstlook, a domain name monetization company which creates web pages which appear at the domain names owned by NCS.  These passive web pages consist of hyperlinks to products and services that a visitor might be interested based on the domain name itself.

8.     For example, the "landing page" (i.e., the first page the user sees) for www.partysupplies.org might contain links to third parties who can provide party supplies, party decorations, party locations, etc.  Attached as Exhibit A is a true and correct copy of a printout of the landing page for www.partysupplies.org, a domain that is owned by NCS for which Basic Fusion acts as the registrar and Firstlook acts as the monetizing company

9.     When a visitor clicks on a hyperlink that is a "Sponsored Advertising," which can be found throughout the web site, they are transported away from NCS's domain and to the web site owned by the third party (unrelated to any of the Defendants) which actually provides the product or service the user is seeking.  Thus, visitors to an NCS domain *cannot* conduct any business on that site.  Users can only click on the hyperlinks or input search criteria into a search box.

10.    For example, visitors to www.partysupplies.org could not actually order party supplies or party decorations from NCS.  Instead, to obtain any information, product or service, the visitor must click on a hyperlink and be transported away from NCS's domain and to the web site of the third party that is actually providing the information, product or service.

11. Put another way, visitors cannot "interact" with any web site on an NCS domain because they cannot provide any personal information (e.g., name, address), any order information (e.g., order party supplies) or any payment information (e.g., credit card number).

12. The domain name that is the subject of this lawsuit exists in the same manner—any web pages which appeared on the domain name simply consisted of hyperlinks to services provided by third parties.

13. Each of Firstlook, NCS, and Basic Fusion is a Delaware corporation. Each of these companies has its principal place of business in El Segundo, California.

14. None of Firstlook, NCS or Basic Fusion has an office anywhere in Michigan. Neither Firstlook nor Basic Fusion has entered into any contracts with any entity in Michigan. None of Firstlook, NCS, or Basic Fusion has any employees, bank accounts or other property in Michigan. None of Firstlook, NCS or Basic Fusion has ever filed a lawsuit in the state of Michigan or otherwise availed itself of the Michigan legal system. None of Firstlook, NCS or Basic Fusion has ever sought to qualify to do business in Michigan. None of Firstlook, NCS, or Basic Fusion has a registered agent for service of process in Michigan. None of Firstlook, NCS, or Basic Fusion has a business license in Michigan.

15. Specifically, none of Firstlook, NCS or Basic Fusion has entered into any contracts in the forum state, do not receive calls from residents of the forum state about its services/products, or receive or transmit money to consumers in the forum state in connection with the domain names at issue in *this* lawsuit.

16. From time to time, NCS will sell one of its domain names to a third party. In 2007, NCS sold 5 domain names to a corporation having its principal place of business in

Michigan. In 2008, NCS sold 1 domain name to a corporation having its principal place of business in Michigan. In 2009, NCS has sold 2 domain names to a corporation having its principal place of business in Michigan. None of these domain names is related to this case.

17.     The computers and servers that are used in Defendants' businesses are located in El Segundo, California.

18.     Because Defendants operate from El Segundo, California, its witnesses are in California. In addition, potential witnesses in this matter include Yahoo! Yahoo! provides the vast majority of the advertisements which appear on web sites created by Firstlook. Yahoo! is based in Sunnyvale, California.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 14th day of April 2009 at _New York, NY_

Seth Jacoby

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
     a Michigan corporation,

        Plaintiff,

vs.

                                          Case No. 2:09-CV-10756
                                          Hon. Marianne O. Battani

NAVIGATION CATALYST SYSTEMS, INC.,
     a Delaware corporation; BASIC
     FUSION, INC., a Delaware corporation;
     CONNEXUS CORP., a Delaware
     Corporation; and FIRSTLOOK, INC., a
     Delaware corporation,

        Defendants.

---

William A. Delgado (admission pending)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

John P. Jacobs (P15400)
JACOBS AND DIEMER, P.C.
Local Counsel for Defendants
500 Griswold Street, Suite 2825
Detroit, MI 48226-3480
(313) 965-1900
jpj@jpjpc.com

---

## DECLARATION OF SANDEEP CHOPRA

I, Sandeep Chopra, declare as follows:

1.     I am over the age of eighteen and am a duly authorized representative of the

defendants in this lawsuit. I make this declaration in support of Defendants' Motion to Dismiss

or, in the Alternative, for Transfer.

2. I am a Vice-President and Corporate Controller for defendant, Connexus Corporation ("Connexus"). Connexus is the parent corporation of Firstlook. In my position as Corporate Controller, I manage the corporate accounting group, direct the planning, coordination and review of all consolidated financial information, and manage the annual independent audit process, for Connexus and the three subsidiaries owned by Connexus. My knowledge of the matters herein is based on personal knowledge and a review of business records, except where stated on information and belief.

3. Connexus is a Delaware corporation having its principal place of business in El Segundo, California.

4. Connexus does not have an office anywhere in Michigan. Connexus does not have any employees, bank accounts or other property in Michigan. Connexus has never filed a lawsuit in the state of Michigan. Connexus does not have a registered agent for service of process in Michigan.

5. Traffic Marketplace, another subsidiary of Connexus which was _not_ named as a Defendant in this matter and whose business is unrelated to this matter, recently hired a single employee to work from her home in Detroit, Michigan on or about March 2, 2009. This employee is not involved in any of the business practices that are implicated in this matter.

//

//

//

//

6.     In connection with that recent hiring, Connexus has filed a Certificate of Assumed Name to the Michigan Department of Labor, and Connexus has filed for a corporate tax identification number.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed on this 14 day of April 2009 at _MOUNTAIN VIEW, CA_.

_____

Sandeep Chopra

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
    a Michigan corporation,

        Plaintiff,

vs.

NAVIGATION CATALYST SYSTEMS, INC.,
    a Delaware corporation; BASIC
    FUSION, INC., a Delaware corporation;
    CONNEXUS CORP., a Delaware
    corporation; and FIRSTLOOK, INC., a
    Delaware corporation,

        Defendants.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

| | |
|---|---|
| Anthony P. Patti (P43729)<br>HOOPER, HATHAWAY PRICE<br>BEUCHE & WALLACE<br>Attorney for Plaintiff<br>126 S. Main Street<br>Ann Arbor, MI 48104<br>(734) 662-4426<br>apatti@hooperhathaway.com | John P. Jacobs (P15400)<br>JACOBS AND DIEMER, P.C.<br>Local Counsel for Defendants<br>500 Griswold Street, Suite 2825<br>Detroit, MI 48226-3480<br>(313) 965-1900<br>jpj@jpjpc.com |
| Brian A. Hall (P70865)<br>Enrico C. Schafer (P43506)<br>Attorneys for Plaintiff<br>TRAVERSE LEGAL PLC<br>810 Cottagview Drive, Suite G-30<br>Traverse City, MI 49684<br>(231) 932-0636<br>brianhall@traverselegal.com<br>enrico@traverselegal.com | William A. Delgado (admission pending)<br>WILLENKEN WILSON LOH & LIEB LLP<br>Lead Counsel for Defendants<br>707 Wilshire Blvd., Suite 3850<br>Los Angeles, CA 90017<br>(213) 955-9240<br>williamdelgado@willenken.com |

## CERTIFICATE OF SERVICE

STATE OF MICHIGAN  )
                )SS
COUNTY OF WAYNE  )

I certify that on April 15, 2009, I electronically filed the foregoing paper with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

Anthony P. Patti (P43729)
HOOPER, HATHAWAY PRICE BEUCHE
    & WALLACE
Attorney for Plaintiff
126 S. Main Street
Ann Arbor, MI 48104
(734) 662-4426
apatti@hooperhathaway.com

Brian A. Hall (P70865)
Enrico C. Schafer (P43506)
Attorneys for Plaintiff
TRAVERSE LEGAL PLC
810 Cottagview Drive, Suite G-30
Traverse City, MI 49684
(231) 932-0636
enrico@traverselegal.com
brianhall@traverselegal.com

William A. Delgado (admission pending)
WILLENKEN WILSON LOH & LIEB LLP
Lead Counsel for Defendants
707 Wilshire Blvd., Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com

Respectfully submitted,

/s/John P. Jacobs
John P. Jacobs (P15400)
JACOBS AND DIEMER, P.C.
Local Counsel for Defendants
500 Griswold Street, Suite 2825
Detroit, MI 48226-3480
(313) 965-1900
jpj@jpjpc.com