IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
    a Michigan corporation,

       Plaintiff,

vs.

NAVIGATION CATALYST SYSTEMS, INC.,
    a Delaware corporation; BASIC FUSION, INC.,
    a Delaware corporation; CONNEXUS CORP.,
    a Delaware corporation; and FIRSTLOOK, INC.,
    a Delaware corporation,

       Defendant.

Case No. 2:09-CV-10756-MOB-VMM
Hon. Marianne O. Battani

_____

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI 49686
231-932-0411
enrico.schaefer@traverselegal.com
brianhall@traverselegal.com
Lead Attorneys for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI 48104
734-662-4426
apatti@hooperhathaway.com
Attorneys for Plaintiff

John P. Jacobs (P15400)
JACOBS AND DIEMER, PC
500 Griswold Street, Suite 2825
Detroit, MI 48226-3480
(313) 965-1900
jpj@jpjpc.com
Local Counsel for Defendants

William A. Delgado (admission pending)
WILLEKEN WILSON LOH & LIEB, LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

_____

**PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS**
**FOR LACK OF PERSONAL JURISDICTION**

i

## TABLE OF CONTENTS

I. STATEMENT OF THE ISSUE PRESENTED ........................................................................ 1

II. INTRODUCTION ......................................................................................................... 1

III. STATEMENT OF FACTS ............................................................................................. 2

   A. Weather Underground, Inc. ..................................................................................... 2

   B. Defendants ............................................................................................................... 3

IV. STANDARD OF REVIEW ........................................................................................... 6

V. ARGUMENT ............................................................................................................... 6

   A. Plaintiff Has Established a Prima Facie Case that Limited Personal Jurisdiction Exists as to Each Defendant ....................................................................................................... 6

     1. Defendants Relationships with the State of Michigan Subjects Them to Limited or Specific Personal Jurisdiction under the Long-Arm Statute ............................................... 7

     2. Exercising Limited or Specific Personal Jurisdiction Over Defendants Comports with Due Process Requirements ....................................................................................... 10

       a. Defendants Have Purposefully Availed Themselves of or Caused a Consequence in this Michigan Forum ............................................................................................. 11

       b. Wunderground's Claims Arise from Defendants' Activities ........................... 15

       c. Defendants' Substantial Connection with the Forum State Makes Action Reasonable ... 15

   B. Conspiracy Theory of Personal Jurisdiction ........................................................ 16

   C. Plaintiff is Entitled to Discovery on Issues of Personal Jurisdiction ..................... 17

   D. Factual Determinations Regarding Personal Jurisdiction Should be Reserved for Trial......... 17

   E. Venue is Proper Where Personal Jurisdiction is Proper ......................................... 18

VI. CONCLUSION ........................................................................................................... 19

INDEX OF PRINCIPAL AUTHORITIES CITED

## Cases

*Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 748 (E.D. Mich. 2004) ........................................... 13, 14

*Bird v. Parsons*, 289 F.3d 865, 874-75 (6th Cir. 2002 .................................................... 11, 15

*Brunner v. Hampson*, 441 F.3d 457, 465 (6th Cir. 2006) ........................................................ 7

*Burleson v. Liggett Group, Inc.*, 111 F. Supp. 2d 825, 827 (E.D. Tex. 2000) .......................................... 7

*Catalano v. BRI, Inc.*, 724 F. Supp. 1580 (E.D. Mich. 1989) .................................................. 8

*Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236-37 (6th Cir. 1981).............................................. 16

*Compare See, Inc. v. Imago Eyewear Pty Ltd.*, 2004 WL 5569067 at *7 .................................................. 14

*Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 818-19 (E.D. Mich. 2006) .................................... 9, 12, 15

*Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F. Supp. 371, 377 (W.D. Mich. 1990) ........................... 18

*Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 771 (E.D. Mich. 2001) ..... 9, 12, 13, 14, 15

*Frankenmuth v. Appalachian*, 2004 U.S. Dist. LEXIS 11465 *11 (E.D. Mich.) ................................. 7

*General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F.Supp. 656, 665-66 (E.D. Mich. 1996)..... 16, 18

*Goldstein v. Christiansen*, 638 N.E.2d 541, 545 n.1 (Ohio 1994) ............................................. 7

*Green v. Wilson*, 455 Mich. 342, 350-51, 565 N.W.2d 813, 816-17 (1997) ......................................... 7

*Hanson v. Denckla*, 357 U.S. 235, 251 (1958) .................................................... 10

*Inc. v. Imago Eyewear Pty Ltd.*, 2004 WL 5569067, *6 (E.D. Mich.) ............................................. 12, 15

*Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership*, 34 F.3d 410

    (7th Cir. 1994) .................................................................................. 15

*Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945) ..................................................... 10

*Johnson Controls, Inc.*, 2005 WL 1630098 at *6 .................................................................. 18

*Kennedy v. R.W.C., Inc.*, 359 F. Supp. 2d 636, 643 (E.D. Mich. 2005)................................................ 16

*LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989) .................................................... 10

*Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988) ..................................................... 8

*Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981) ............................................... 6

*McMaster-Carr Supply Co. v. Supply Depot, Inc.*, 1999 U.S. Dist. LEXIS 9559 (N.D. Ill. 1999) ............. 14

*Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176

    (6th Cir. 1992) .......................................................................................................................... 7

*Milligan v. Anderson*, 522 F.2d 1202, 1207 (10th Cir. 1975) ............................................................... 18

*Neogen Corp. v. Neo Gen Screening, Inc.*, 109 F. Supp. 2d 724, 727-28 (W.D. Mich. 2000)................. 6, 9

*Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002) ...................................... 8, 16

*North Dakota Personal Injury Asbestos Litigation No. 1*, 737 F. Supp. 1087, 1098 (D.N.D. 1990).......... 16

*Panavision Int'l. L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ......................................................... 13

*Perez v. Brown & Williamson Tobacco Corp.*, 967 F. Supp. 920, 925 (S.D. Tex. 1997) ............................. 7

*Pride Distributors, Inc. v. Nuzzolo,* 2007 WL 1098286, *4 (E.D. Mich.)........................................... 6, 12

*Salom Enters. V. TS Trim*, 464 F. Supp. 2d 676 (E.D. Mich. 2006) ....................................................... 7

*Schmidt v. Wilbur*, 775 F. Supp 216 (E.D. Mich. 1991) ....................................................................... 8

*Schultz v. Ary*, 175 F. Supp. 2d 959, 965 (W.D. Mich. 2001) ............................................................. 18

*Serras v. First Tennessee Bank Nat'l Assoc.*, 875 F.2d 1212, 1215 (6th Cir. 1989)........................ 2, 6, 17

*Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968) ........................................ 10

*The Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746, 747 (E.D. Mich. 2000) ................. 10, 11

*Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991) ........................................................ 6, 18

*Toys "R" Us, Inc. v. Step Two S.A.*, 318 F.3d 446, 448 (3d Cir. 2003).................................................. 17

*United States of America v. Johnson Controls, Inc.*, 2005 WL 1630098 *2 (E.D. Mich.) ............................ 7

*Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974) .............................................. 6

*Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), cert. denied, 450 U.S. 981 (1981) ........................ 6

*World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980) .................................... 10

*Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 1119, 1122 (W.D. Pa. 1997) ............................ 10, 11

**Statutes**

28 U.S.C. § 1391(b)(1) ............................................................................................... 18

28 U.S.C. § 1391(b)(2) ............................................................................................... 18

28 U.S.C. § 1391(c) .................................................................................................... 18

Mich. Comp. Laws § 600.715 ...................................................................................... 8

Mich. Comp. Laws § 600.715(1) .................................................................................. 8

Mich. Comp. Laws § 600.715(2) ............................................................................... 8, 9

Mich. Comp. Laws § 600.715(5) ............................................................................... 8, 9

**Rules**

Fed. R. Civ. P. 12(b)(2) .............................................................................................. 6

Plaintiff The Weather Underground, Inc. ("Wunderground") filed a complaint against Navigation Catalyst Systems, Inc., Basic Fusion, Inc., Connexus Corp, and Firstlook, Inc. (collectively "Defendants") alleging counts of cybersquatting; direct, contributory, and vicarious trademark infringement; false designation of origin; dilution; unfair competition; civil conspiracy; and declaratory judgment. On April 15, 2009, Defendants filed a Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) Or, In The Alternative, Transfer. For the reasons herein, Plaintiff requests that said Motion be DENIED.

## I. STATEMENT OF THE ISSUE PRESENTED

Whether conspiring, foreign corporation defendants who target Michigan companies, earn substantial revenue from Michigan consumers and advertisers and otherwise regularly transact business within the State with Michigan are subject to personal jurisdiction in this District Court? Plaintiff submits the answer is yes, and Plaintiff urges this Court to deny Defendants' motion.

## II. INTRODUCTION

Defendants' primary argument is that their hundreds of thousands of web sites and domain names, many of which typosquat on distinctive and famous trademarks, are (a) "passive"[1] (b) "where no commercial activity exists" and (c) contain "only informational hyperlinks."[2] These three arguments are directly controverted by the allegations in Plaintiff's Complaint and otherwise unsupportable by admissible evidence. Defendants' mass typosquatting scheme targeting famous and registered trademarks, such as Plaintiff's incontestable marks and the marks of many other Michigan companies, cannot reasonably and in good faith be described as 'passive.' The

---

[1] The 'passive' argument is made 16 times in defendants' Memorandum Supporting their Motion.
[2] "These web sites simply contain informational hyperlinks to other third party web sites. No business transactions or commercial activity take place on NCS's web sites at all."(Defs. Brief, p. 3). "No commercial activity takes place on the web sites." (Defs. Brief, p. 12.)

advertisements displayed on Defendants web sites on a pay-per-click ("PPC") basis qualify as 'commercial activity' and/or 'business transactions.' The software which drives and optimizes the PPC advertisements and other text was conceived, programmed and implemented using sophisticated "interactive" software intended to divert Plaintiff's customers to competitors and other third-party advertisers.[3]

Defendants' superficial affidavits are insufficient to warrant a dismissal,[4] since they fail to address more questions than they answer such as: (a) how many Michigan companies they are typosquatting, (b) how much revenue they realize when Michigan consumers inadvertently arrive at a typo-domain name and click a PPC link, (c) how many trademark threat letters they have received and responded to inside of Michigan, (d) how much of their web traffic is from Michigan, (e) how many of the advertisers displaying on the infringing domains are from Michigan, (f) whether they have customers, agents, vendors, internet service providers (ISPs), or other relationships here, and (g) how their interactive software identifies domains to register and what advertisements to display.

## III. STATEMENT OF FACTS

**A.** Weather Underground, Inc.

Wunderground started at the University of Michigan, was incorporated in March 1995 and maintains its principal place of business in Ann Arbor, Michigan. (Compl. ¶¶ 1, 11). *See Exhibit A,*

---

[3] Defendants' effort to hide behind their "automated software" as the "culprit" for registering, hosting and serving paid advertisements to Plaintiff's competitors on the typo domains of Plaintiff's famous and registered marks is frivolous. Defendants specifically designed and implemented their software to target high traffic web sites, which they know will likely be trademark protected, to register typos of those trademark protected domains and to display deceptive advertisements on the infringing domains. Further, the "Parked Payees" displaying PPC advertisements are deceptive since they are designed to appear as legitimate web sites sponsored or operated by the trademark holders. Many consumer often has no idea that the links on the page are advertisements at all.

[4] A defendant can not defeat personal jurisdiction "merely by filing a written affidavit contradicting jurisdictional facts alleged by a plaintiff." *See Serras v. First Tennessee Bank Nat'l Assoc.*, 875 F.2d 1212, 1215 (6th Cir. 1989).

*The Weather Underground, Inc. Corporate Entity Details.*   All its USPTO registered service marks and trademarks are owned by the Michigan corporation.  (Compl. ¶¶ 26-27, 29-31).

Wunderground's official web site, available at <wunderground.com>, attracts over 363,000 unique visitors each month from the State of Michigan alone.  *See Exhibit B, <quantcast.com> Results by State for <wunderground.com>*.   There are approximately 288 personal weather stations, which contribute to the real-time weather offered at Wunderground's web site, reporting in the State of Michigan.  *See Exhibit C, Affidavit of Jeff Ferguson*.   Approximately 28% of Wunderground's 2008 revenue was derived from the State of Michigan.  See *Id*.   Wunderground's business operations are intimately tied to the State of Michigan, as further detailed in Mr. Ferguson's Affidavit.

**B.** Defendants

Defendants conspired together, as agents of one another, to design and implement a mass typosquatting business model of domain registration, hosting, advertising software and monetization.  As an intended and expected result of that business model: (a) Defendants monetized web traffic and PPC from Michigan consumers, no doubt on behalf of many Michigan advertisers and (b)  infringed on Wunderground's marks, as well as many other Michigan companies.  (Compl. ¶¶ 10, 42-48, 58-59).   Each Defendant, individually, and Defendants acting collectively have established the requisite minimum contacts to purposefully avail themselves in this forum.  (Compl. ¶¶ 9-10).

Defendant Navigation Catalyst Systems, Inc. ("NCS") was the registrant of all 41 infringing and typosquatted domains listed in the Complaint.  (Compl. ¶ 77).  Since the filing of the Complaint and after having provided direct notice of trademark infringement on September 2, 2008, Wunderground has discovered that NCS has been the registrant of at least five additional domains that create a likelihood of consumer confusion with and/or dilute Wunderground's marks, including

<wwatherunderground.com>, <whetherunderground.com>, <uundergroundweather.com>, <undergground.com>, and <unerground.com>. *See Exhibit D, WHOIS Records; see also Exhibit E, Printout of available web sites.* The most recent registration was <wwatherunderground.com> on March 26, 2009, at least one month after the Complaint was filed.[5] A cursory WHOIS search on typo-domains of other Michigan entities and/or companies reveals the depth of Defendants' attack on the trademarks of Michigan companies, including <dteenegry.com>, <bordrrs.com>, <detroiteredwings.com>, and many others.[6] NCS has admittedly entered into contracts with Michigan entities. (Defs. Brief p. 7, Jacoby Decl. at ¶ 14). NCS has admittedly sold domain names to corporations having their principal places of business in Michigan (Defs. Brief p. 7).

Defendant Firstlook, Inc. ("Firstlook") is a wholly-owned subsidiary of Connexus, as well as the parent corporation of NCS and Basic Fusion. (Compl. ¶ 52). Firstlook provides the parking page, including a search function, content, and advertising hyperlinks displayed at the infringing domains, and it offers domain traffic optimization and monetization for the infringing domains in order to generate maximum revenue by displaying advertisements of Plaintiffs' competitors. (Compl. ¶ 52). Firstlook builds "media properties, actively driving traffic and increasing value propositions to both users and advertisers." *See Exhibit F.* Firstlook operates <gympost.com>, although it is registered by NCS, which offers a directory of gyms. *See Exhibit G, <gympost.com>*

---

[5] The <wwatherunderground.com> domain is no longer registered by NCS.

[6] Dsow.org, steenergy.com, wwwdteenergy.com, Deenergy.com, Dteeergy.com, Dteendergy.com, Ellyservices.com, Brogwarner.com, Borderss.com, Bordsers.com, Bordfers.com, La-z-bpy.com, Piatons.com, Pistins.com, Detroitistons.com, Redings.com, Detroiteredwings.com, Detroitrediwngs.com, Detroitredings.com, Detroitredswings.com, Detroitttigers.com, Deroitshock.com, Fordfeld.com, Detroitlons.com, Comeroca.com, Coomerica.com, Wanyestate.com, Donminos.com, Dominps.com, Auyo-owners.com, Auto-owers.com, Kiderock.com, Joelois.com, Henryfrod.com, Henrford.com , Henryfordhosiptal.com, heneryfordhospital.org, Detroitfreeppress.com, Detrooitfreepress.com, Deroitfreepress.com, Detritnews.com, Dertoitnews.com, Detroitmews.com, etc.

*About Us.* Firstlook's <gympost.com> property includes gyms located in Michigan, as evidenced by its directory of fitness centers from 96 Michigan counties. *See Exhibit H, <gympost.com> Michigan Directory.* Seth Jacoby is the President of Firstlook. *See Exhibit I, <firstlook.com> About Us.*

Defendant Basic Fusion, Inc.'s ("Basic Fusion") address is the same as Connexus, 335 Madison Avenue, #840, New York, NY 10017. Basic Fusion is a registrar of domain names, including all infringing domains in this matter. (Compl. ¶ 53). Basic Fusion is also the registrar for the other Michigan companies being typosquatted as noted in footnote 6, and no doubt countless other Michigan brands. Seth Jacoby is the contact for Basic Fusion on ICANN's List of Accredited Registrars.[7] It is believed that Basic Fusion is the registrar for Michigan companies and residents and has numerous additional contacts with Michigan

Defendant Connexus Corp. ("Connexus") maintains offices in California, New York at 335 Madison Avenue, #840, New York, NY 10017 and Chicago. *See Exhibit J, <connexuscorp.com> About Us.* Connexus designs, develops, and maintains an online marketing software platform and technology to offer Parking Pages with optimized PPC ads at the heart of the monetization scheme at issue here. (Compl. ¶ 51). According to Connexus itself, it "features a multi-channel network with extensive reach that delivers over 30 billion impressions monthly and 20 million leads and customers annually. Additionally, Connexus owned and operated consumer sites aggregate over 17 million visitors, 20 million searches and 3 million registrations monthly . . .." *See Exhibit J, <connexuscorp.com> About Us.* Seth Jacoby is a member of Connexus's Management Team. *See Exhibit K, <connexuscorp.com> About Us Management Team Profile.* Connexus has admittedly entered into contracts with Michigan entities. (See Motion p. 7, Jacoby Decl. at ¶ 14). Connexus sought to qualify to do business and obtain a license to do business in Michigan. (See Motion p. 7).

---

[7] See http://www.icann.org/en/registrars/accreditation-qualified-list.html

## IV.  STANDARD OF REVIEW

When a motion to dismiss for lack of personal jurisdiction is filed under Fed. R. Civ. P. 12(b)(2), the trial court may, within its sound discretion, (1) determine the motion on the basis of affidavits alone, or (2) permit discovery in aid of the motion, or (3) conduct an evidentiary hearing on the merits of the motion.  *See Serras*, 875 F.2d at 1215.  The plaintiff's burden depends upon how the court decides the merits of the motion, either based upon written submissions or based upon hearing evidence.  *Weller v. Cromwell Oil Co.*, 504 F.2d 927, 929 (6th Cir. 1974).   The court "must consider the pleadings and affidavits in the light most favorable to the plaintiff."  *Welsh v. Gibbs*, 631 F.2d 436, 439 (6th Cir. 1980), cert. denied, 450 U.S. 981 (1981).  Thus, a prima facie showing that personal jurisdiction exists is all that is required in such an instance to deny the motion to dismiss, "notwithstanding any controverting presentation by the moving party."  *Marine Midland Bank, N.A. v. Miller*, 664 F.2d 899, 904 (2d Cir. 1981); *see also Theunissen v. Matthews*, 935 F.2d 1454, 1458 (6th Cir. 1991).  In the alternative, the court may order a pretrial evidentiary hearing and order discovery.  *See Serras,* 875 F.2d at 1215.

## V.  ARGUMENT

### A.  Plaintiff Has Established a Prima Facie Case that Limited Personal Jurisdiction Exists as to Each Defendant

For a court to exercise limited personal jurisdiction over a defendant, it must be authorized by Michigan law, namely pursuant to Michigan's long-arm statute, and be in accordance with the Due Process Clause of the Fourteenth Amendment.  *See Neogen Corp. v. Neo Gen Screening, Inc.*, 109 F. Supp. 2d 724, 727-28 (W.D. Mich. 2000).  Defendants rely upon the unpublished decision of *Pride Distributors, Inc. v. Nuzzolo,* 2007 WL 1098286, *4 (E.D. Mich.) to argue that the two-party inquiry merges into solely one of Due Process.  However, *Pride Distributors* relied upon a Sixth Circuit case,

*Nationwide Mut. Ins. Co. v. Tryg Int'l Ins. Co.*, which analyzed the Ohio long-arm statute, which has since been held to not extend to the limits of the Due Process Clause so as to require that the two issues be analyzed separately. *See Brunner v. Hampson*, 441 F.3d 457, 465 (6th Cir. 2006) (citing Goldstein v. Christiansen, 638 N.E.2d 541, 545 n.1 (Ohio 1994)).[8] In addition, the Eastern District of Michigan has applied the two-part inquiry, after the decision the Defendants rely upon in *Audi AG. See Salom Enters. V. TS Trim*, 464 F. Supp. 2d 676 (E.D. Mich. 2006).

> In Michigan, it is necessary to analyze separately the question of limited personal jurisdiction under the state's long-arm statute and under the Due Process Clause. Although it has been suggested that Michigan's long-arm statute is coextensive with the Due Process Clause, and that there accordingly is no reason to conduct a two-part inquiry, *see Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog*, 954 F.2d 1174, 1176 (6th Cir. 1992), the Court notes that the Sixth Circuit's prediction on this point has since been proven incorrect. Since *Griepentrog* was issued, the Michigan Supreme Court has clarified that its statute does *not* automatically extend to the limits of the Due Process Clause. Thus, if the defendant's conduct is not covered by the long-arm statute, there is no need to conduct a Due Process Analysis. *Green v. Wilson*, 455 Mich. 342, 350-51, 565 N.W.2d 813, 816-17 (1997).

*See Frankenmuth v. Appalachian*, 2004 U.S. Dist. LEXIS 11465 *11 (E.D. Mich.).

Ultimately, Defendants failure to address the Michigan long-arm statute enables this Court to assume that long arm jurisdiction exists. *See United States of America v. Johnson Controls, Inc.*, 2005 WL 1630098 *2 (E.D. Mich.) (Judge Battani) ("The parties do not address whether the long-arm statute is satisfied so the Court assumes that it is..."). Plaintiff nonetheless provides further support below that the two-part inquiry is indeed satisfied.

1. **Defendants Relationships with the State of Michigan Subjects Them to Limited or Specific Personal Jurisdiction under the Long-Arm Statute**

---

[8] Although this Court generally must follow Circuit Court construction of state law, even if it believes it erroneous, *Perez v. Brown & Williamson Tobacco Corp.*, 967 F. Supp. 920, 925 (S.D. Tex. 1997), it need not do so if an intervening decision of the supreme court of that state makes it clear that the Circuit's previous construction of state law was incorrect. *Burleson v. Liggett Group, Inc.*, 111 F. Supp. 2d 825, 827 (E.D. Tex. 2000).

Michigan's long-arm statute Mich. Comp. Laws § 600.715 et seq. empowers a court to exercise limited personal jurisdiction over a nonresident corporation where any of the following relationships exist: "the transaction of any business within the state" under § 600.715(1), "the doing or causing of any act to be done, or consequences to occur, in the state resulting in an action for tort" under § 600.715(2), and the "entering into a contract for services to be performed or for materials to be furnished in the state by the defendant" under § 600.715(5).[9]

The "slightest act of business in Michigan" will satisfy the "transaction of any business" necessary for limited personal jurisdiction under § 600.715(1). *Lanier v. Am. Bd. of Endodontics*, 843 F.2d 901, 906 (6th Cir. 1988). Even at this early juncture of the case, it is beyond dispute that Defendants have transacted business within the state. Even beyond the 41+ typos of Wunderground's marks, Defendants have monetized domain names that incorporate the trademarks of many of the Michigan companies that appear in the 2008 Fortune 500, as well as other famous Michigan brands, such as DTE Energy, Borders Group, Pulte Homes, Dow Chemical, Kelly Services, BorgWarner, and La-Z-Boy. *See Exhibit L, Spreadsheet listing company, typosquatted domains owned by Defendants; see also Exhibit M, 2008 Fortune 500 by the State of Michigan.*

Michigan's long-arm statute "likely is broad enough" to encompass a Defendants' activities that cause an adverse economic effect in Michigan. *See Neogen Corp. v. Neo Gen Screening, Inc.*, 282 F.3d 883, 888 (6th Cir. 2002). More importantly, it is well-settled law that "misappropriating a

---

[9] In addition, Michigan's long arm statute allows for limited personal jurisdiction where there is a "relationship between a corporation **or its agent** and the state" as evidenced by, among other things, "the transaction of any business within the state" or "[t]he doing or causing any act to be done, or consequences to occur, in the state resulting in an action for tort." MCL § 600.715 (emphasis added). *See Schmidt v. Wilbur*, 775 F. Supp 216 (E.D. Mich. 1991). *See also Catalano v. BRI, Inc.*, 724 F. Supp. 1580 (E.D. Mich. 1989) (finding personal jurisdiction over hotel that served as national airlines agent to reserve rooms that the hotel knew or should have known could be reserved for, used, and paid for on behalf of Michigan residents).

trademark for use as a domain name causes an injury to occur where the trademark owner resides." *Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 771 (E.D. Mich. 2001). It does not matter that the actual registration of the domain name incorporating the trademarks did not take place in the State of Michigan, as stated in *Ford*. *Id*. Neither the registration services provided by the registrar Basic Fusion[10] nor the online marketing software platform and domain parking, optimization, and monetization services provided by Connexus and Firstlook need take place in Michigan as long as the injurious tort arising there from affected the State of Michigan. The resulting economic harm, satisfying § 600.715(2), arises out of and is directly related to each Defendants' transaction of business in Michigan.

Wunderground has also presented a prima facie case under § 600.715(5) since Defendants provides a contract, entitled its Terms of Service (TOS), on the webpage that is displayed at the infringing domains to Michigan consumers. *See Exhibit N, FirstLook Terms of Service*. Defendants have entered into, what they would argue at least, are binding contracts with Michigan consumers.[11]

Discovery is needed to identify instances where services are to be furnished or performed within the State of Michigan. For example, if Basic Fusion provides passwords to Michigan residents to access the registrar services, this would be a sufficient contract. *See Neogen Corp.*, 282 F.3d at 888 (providing passwords to Michigan customers constituted the performance of services in the state of Michigan under § 600.715(5)). Moreover, contracting with other subscribers and

---

[10] It is believed that discovery will reveal that Basic Fusion, for instance, has accepted domain registrations by Michigan residents, communicated with them via telephone or email, sent notices and confirmations, and accepted payment for the registrations. *See Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 818-19 (E.D. Mich. 2006) (finding defendants transacted business in Michigan by communicating with the Plaintiff, accepting bids during auctions, accepting winning bids and confirming them, and accepting payment through the mail from Michigan).

[11] It is likely that thousands of Michigan residents have unwittingly been bound by Defendants' TOS contract, regardless of the questionable enforceability of the forum choice.

internet services providers (ISPs) is sufficient to justify the court's exercise of personal jurisdiction. *See Zippo Mfg. Co. v. Zippo DOT Com*, 952 F. Supp. 1119, 1122 (W.D. Pa. 1997) (holding that defendants providing passwords to approximately 3,000 Pennsylvania residents and entering into agreements with seven Internet access providers in Pennsylvania satisfied the state's long-arm statute, specifically contracting to supply services or things).

### 2. Exercising Limited or Specific Personal Jurisdiction Over Defendants Comports with Due Process Requirements

The Plaintiff carries the burden to establish minimum contacts, consistent with *International Shoe*, such that this Court may exercise jurisdiction over the Defendants without offending "traditional notions of fair play and substantial justice." *See Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945); *see also The Winfield Collection, Ltd. v. McCauley*, 105 F. Supp. 2d 746, 747 (E.D. Mich. 2000). Jurisdiction is proper if a defendant should "reasonably anticipate being haled into court there." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The minimum contacts requirement is met if a "defendant purposefully avails itself of the privilege of conducting activities within the forum state, thus invoking the benefits and protection of its laws." *See Hanson v. Denckla*, 357 U.S. 235, 251 (1958). The Sixth Circuit applies a three part test, commonly referred to as the *Mohasco* test, to determine whether personal jurisdiction exists under *Int'l Shoe*:

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

*LAK, Inc. v. Deer Creek Enterprises*, 885 F.2d 1293 (6th Cir. 1989) (citing *Southern Machine Co. v. Mohasco Indus.*, 401 F.2d 374, 381 (6th Cir. 1968).

### a. Defendants Have Purposefully Availed Themselves of or Caused a Consequence in this Michigan Forum

"[T]he need for a special Internet-focused test for "minimum contacts" has yet to be established," and Defendants' sites at the Infringing Domains "are mere accessories to the central inquiry." *See The Winfield Collection, Ltd.*, 105 F. Supp. 2d at 749. Even under the so-called *Zippo* test established in Pennsylvania, the Defendants are subject to this Michigan Court. *See The Winfield Collection, Ltd.*, 105 F. Supp. 2d at 748-49 (citing *Zippo Mfg. Co. v. Zippo Dot Com. Inc.*, 952 F. Supp. 1119 (W.D. Pa. 1997) (applying a "sliding scale" based upon "the nature and quality of commercial activity that an entity conducts over the Internet."). Defendants are offering, operating, and maintaining hundreds of thousands of website which Michigan residents can access and search for products and services of advertisers displayed on those web sites, and are redirected to providers of such products and services. *Bird v. Parsons*, 289 F.3d 865, 874-75 (6th Cir. 2002) ("We conclude that by maintaining a website on which Ohio residents can register domain names and by allegedly accepting the business of 4,666 Ohio residents, the Dotster defendants have satisfied the purposeful-availment requirement."). As such, Defendants qualify as "those who reach out, originate and repeatedly conduct business over the Internet with people in a foreign jurisdiction: such people subject themselves to that state's courts as would a person who repeatedly conducts such business either in person or by telephone." *See The Winfield Collection*, 105 F. Supp. 2d at 749.

Defendants do not merely "post information" on the Internet. Defendants display advertisements for other companies, sometimes competitors of Plaintiff, and get paid when end users click on those advertisements. [12] Many of the advertisers and consumers who click on those

---

[12] Despite Defendants' claim that "no commercial activity takes place on the web sites" in support of its argument that the web sites are passive (Defs. Brief p. 12), Defendants repeatedly admit the commercial nature of their business model and web sites when they state:

ads are located in Michigan. Further, Defendants' software enables the Defendants to track Michigan user searches and analyze them so as to be able to offer an optimized product in order to increase monetization. Further, it is clear that Defendants undoubtedly welcome, and in fact, solicit Michigan business. *See Dedvukaj v. Maloney*, 447 F. Supp. 2d 813, 818-19 (E.D. Mich. 2006) (evaluating all of defendant's contacts within the State of Michigan in finding purposeful availment). Defendants' own supporting Declaration admits that Firstlook, NCS, and Basic Fusion receive or transmit money to consumers in Michigan. (Jacoby Decl. ¶ 15). In *Pride Distributors, Inc. v. Nuzzolo*, an unpublished case relied on by Defendants, the Court held that there was no purposeful availment upon a showing of a single consumer contact through Defendant's web site. Here, involvement with Michigan runs much deeper across a range of commercial activity and relationships. Even Defendants admit that they have sold domain names and the rights associated with the web site to third parties in Michigan.[13] (Jacoby Decl. ¶ 16)

In the absence of purposeful availment, Michigan courts still rely upon and apply the "effects doctrine," which holds that jurisdiction may attach if the conduct of the defendant was aimed at or has an effect in the forum state. *See Ford Motor Co. v. Great Domains, Inc.*, 141 F. Supp. 2d 763, 771 (E.D. Mich. 2001) (Thus, to satisfy the "effects" test in this case, Ford must demonstrate (1) that the brunt of the injury was felt in Michigan; (2) that the Registrant Defendant's use of the Ford Marks was intentional or deliberate, and (3) that the Registrant Defendant's acts were expressly

- "Defendants' business model is to profit from "direct navigation." (Defs. Brief p. 5).
- "…Firstlook, a domain name monetization company…." (Defs. Brief p. 5).
- "Firstlook is a domain name monetization company…." (Jacoby Decl. ¶ 3).

[13] In yet another unpublished decision supporting their argument regarding the passive nature of the web site, Defendants failed to note that the court's decision was based, in part, upon the fact that "there is no allegation that Defendants attempted to sell rights to the website to Plaintiffs." *See, Inc. v. Imago Eyewear Pty Ltd.*, 2004 WL 5569067, *6 (E.D. Mich.).

aimed at the State of Michigan."); *see also Panavision Int'l. L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998).

As noted above, the brunt of the injury is undoubtedly felt in the State of Michigan, Wunderground's principal place of business. Instead of converting its web traffic into revenue, generating further consumer recognition, and engendering goodwill in its Marks, Wunderground lost web site consumers to competitors who advertise on the infringing domains. In addition, in cases where a trademark is misappropriated and used as part of a domain, the injury occurs where the trademark owner resides, which is Michigan. *Ford Motor Co.*, 141 F. Supp. 2d at 771.

Not only is the brunt of the injury felt in Michigan, but Defendants' use of Wunderground's Marks was intentional and deliberate. In order to assess the level of individual targeting needed under the "effects doctrine," a court reviews five factors, including:

(1) whether the trademark owner has been directly solicited to purchase the domain name;
(2) whether the domain name registrant has registered domain names incorporating other protected marks;
(3) whether the domain has been offered for sale by the current registrant and, if so, the price sought;
(4) whether registrant has a preexisting, legitimate use for the domain name; and
(5) any other factors which demonstrate that the act of incorporating the protected mark into a domain name was "expressly aimed" at the forum where the trademark owner resides.

*See Audi AG v. D'Amato*, 341 F. Supp. 2d 734, 748 (E.D. Mich. 2004) (holding that the defendant deliberately infringed the AUDI trademark with knowledge that Audi resides in Michigan). In this case, Factors 2, 4 and 5 weigh heavily in favor of finding personal jurisdiction. It is believed that discovery will reveal that Factor 3 is also met.

Defendants purposefully selected Wunderground's Marks, registered confusingly similar domain names aimed at capitalizing upon the typing errors of consumers, and continue to infringe

on Plaintiff's marks even months after receiving notice of infringement. In fact, Defendants registered and monetized additional trademark protected domains after losing a URDP arbitration where they were found to have engaged in cybersquatting the infringing domains. At a minimum, Defendants' registration and use of new infringing domains after notice of Plaintiff's trademark rights and an adverse cybersquatting ruling were expressly aimed at Plaintiffs in Michigan. *See Audi AG,* 341 F. Supp. 2d at 746-47 ("intentionally registered [plaintiff's] mark as its domain name, an act that it knew would harm Illinois-based [plaintiff] and accordingly it could anticipate being haled into court there.") (quoting *McMaster-Carr Supply Co. v. Supply Depot, Inc.*, 1999 U.S. Dist. LEXIS 9559 (N.D. Ill. 1999) (unpublished)). The intent of Defendants[14] is similar to that of the registrant in the *Ford* case, where the court held that if "a person were to register the domain name "fordmotorco.com" and offer it for sale over the Internet "to any interested person," an almost irrebuttable inference nonetheless could be made that the acts were targeted at Ford because no other entity or person could have a legitimate interest in that domain name." *Ford Motor Co.*, 141 F. Supp. 2d at 771. Defendants specifically targeted Wunderground, and others,[15] and its globally popular site to generate revenue for Defendants.

Absent Defendants being able to provide an "independent non-related reason for the creating of the trademark," it does not matter whether the Defendants themselves registered and used the domains or designed and implemented automated software to do so. *Compare See, Inc. v. Imago Eyewear Pty Ltd.*, 2004 WL 5569067 at *7 ("Plaintiff has not alleged that Defendants

---

[14] Wunderground's Complaint alleges that it was targeted (Compl. ¶¶ 49, 57, 90) and specifically notes Defendants' intent to commit the torts alleged therein (Compl. ¶¶ 9, 87, 108-111, 163, 165, 168, 176).

[15] Defendants specifically targeted WIKIPEDIA, FACEBOOK, ORKUT, MININOVA, and HUFFINGTON POST, among others. (Compl. ¶ 88).

deliberately registered its domain name.").[16]  The fact remains that, despite their wilfull blindness and efforts to blame everything on the "software," Defendants knew injury was to occur in Michigan and could anticipate being haled into a court here in Michigan.  *See id.* (citing *Indianapolis Colts, Inc. v. Metropolitan Baltimore Football Club Limited Partnership*, 34 F.3d 410 (7th Cir. 1994)).  Because the "effects test" is satisfied, this Court should conclude that Defendants purposefully availed themselves of this Michigan forum so as to subject Defendants to the jurisdiction of this Court.

### b.  Wunderground's Claims Arise from Defendants' Activities

Since Wunderground has established that Defendants expressly aimed their domain name registration, registrar services, and domain name parking, optimization, and monetization services at Wunderground in the State of Michigan, the "arising out of" requirement is also satisfied.  *See Ford Motor Co.*, 141 F. Supp. 2d at 777 ("Because the act of registering a domain name that incorporates a trademark gives rise to a cause of action, once it is determined that a domain name registration was "expressly aimed" at the forum state, the "arising out of" requirement is satisfied."); *see also Bird*, 289 F.3d at 874 (concluding that the "lenient standard that applies when evaluating the "arising from" criterion" was met because plaintiff's claims of trademark violations resulting from the defendants' operation of its website were sufficiently related to the alleged contacts between the defendants and Michigan); *see also Dedvukaj*, 447 F. Supp. 2d at 822.

### c.  Defendants' Substantial Connection with the Forum State Makes Action Reasonable

"An inference arises that the third factor is satisfied if the first two requirements are met." *Dedvukaj*, 447 F. Supp. 2d at 823 (citing *Bird,* 289 F.3d at 875).  In addition, for reasons discussed

---

[16] Defendants have yet to offer any explanation for the registration of misspellings of the Wunderground Marks as domain names, let alone the countless other victims.  Unlike the defendant in *See, Inc.,* Defendants do not have rights to any trademark corresponding to the Infringing Domains.  *Id.* at 9.

above, along with Michigan's own interest in the lawful operation of business in its state and prevention of Michigan consumer confusion, Defendants' contacts with the state warrant jurisdiction. Despite Defendants' attempt to distinguish *Neogen* (Defs. Brief, p. 15), their own admitted facts establish yearly business in Michigan, including in 2007, 2008, and 2009, and a continuing relationship with the state overall. (Jacoby Decl. ¶ 16). Whether slight or not, the business occurred for at least three years in a row so as to establish a reasonable relationship with the State of Michigan.

**B. Conspiracy Theory of Personal Jurisdiction**

Plaintiff has alleged, with particularity, the existence of a civil conspiracy between two or more persons (i.e. corporations), each of the Defendants' participation in the conspiracy, and an overt act by a co-conspirator within the forum state, subject to the long-arm statute, and in furtherance of the conspiracy as well as agency between them (Compl. ¶¶ 58, 59, 162-71). When a conspiracy or agency among Defendants is alleged, the acts of a co-conspirator, performed in the forum state in furtherance of the conspiracy, constitute sufficient minimum contacts to establish personal jurisdiction over an absent coconspirator who has no other contact with the forum state. *See Chrysler Corp. v. Fedders Corp.*, 643 F.2d 1229, 1236-37 (6th Cir. 1981). *General Motors Corp. v. Ignacio Lopez de Arriortua*, 948 F.Supp. 656, 665-66 (E.D. Mich. 1996) (adopting the test). *See generally Kennedy v. R.W.C., Inc.*, 359 F. Supp. 2d 636, 643 (E.D. Mich. 2005) (defining civil conspiracy as "a combination of two or more persons, who by some concerted action, agree to accomplish a criminal or unlawful purpose, or to accomplish a lawful purpose by unlawful means."); *see also In re North Dakota Personal Injury Asbestos Litigation No. 1*, 737 F. Supp. 1087, 1098 (D.N.D. 1990) ("The theory of conspirator jurisdiction is, despite its exotic name, relatively simple. It allows a court to attribute the acts of a defendant to his co-conspirators for jurisdictional purposes if the plaintiff makes a

prima facie showing of conspiracy.").  Jurisdiction as to any defendant creates jurisdiction against all conspiring defendants.

## C. Plaintiff is Entitled to Discovery on Issues of Personal Jurisdiction

To the extent this Court has any doubt about Defendants' contact with Michigan, Plaintiff is entitled to discovery[17] to establish, by a preponderance of the evidence, minimum contacts.  *See Serras,* 875 F.2d at 1215.  Discovery should not be limited to the traffic, revenue and how Defendants software tracks and analyzes the movement of Michigan consumers in its web sites, but should also include non-Internet related contacts with Michigan as well.  *Toys "R" Us, Inc. v. Step Two S.A.,* 318 F.3d 446, 448 (3d Cir. 2003) (in overruling the district court's decision to dismiss for lack of personal jurisdiction, the court held "that the District Court appears to have focused entirely on the web site, thereby preventing further inquiry into non-Internet contacts.").

## D. Factual Determinations Regarding Personal Jurisdiction Should be Reserved for Trial

"[T]he court has the power to defer hearing of evidence and a ruling on the motion until trial."  *See Serras,* 875 F.2d at 1215.  "[W]here the disputed jurisdictional facts are intimately intertwined with the parties' dispute on the merits, a trial court should not require plaintiffs to mount "proof which would, in effect, establish the validity of their claims and their right to the relief

---

[17] Plaintiff's discovery, as to each Defendant, would pertain to the existence of following, generally:
- Michigan customers and contracts with Michigan customers
- Contracts with Michigan internet service providers, vendors, distributors, etc.
- Domain registrations, parking pages, or software offered to Michigan residents
- Michigan employees, independent contractors, or agents
- Income earned from Michigan
- Communications with Michigan entities, via mail, telephone, email, or other means
- Web traffic from Michigan. Trademark threat letters to and from Michigan.
- Advertisements aimed at or displayed in Michigan

Defendants maintenance of its own financial records and bank accounts, its own bylaws and board of directors, its own policies and decisions, and own offices go toward whether or not a conspiracy and/or alter ego exist[17]

17

sought." *See id.*, citing *Milligan v. Anderson*, 522 F.2d 1202, 1207 (10th Cir. 1975). "In many cases, then, a district court may find sound reasons to rule, on the basis of written submissions, that the plaintiff has made her prima facie showing that the court has personal jurisdiction over a defendant, and to reserve all factual determinations on the issue for trial." *Id.* A district court's decision will only be reversed for abuse of discretion. *See Theunissen,* 935 F.2d at 1458. This Court should reserve such factual determinations for trial.

## E. Venue is Proper Where Personal Jurisdiction is Proper

"District courts should give deference to a plaintiff's choice of venue." *General Motors Corp.*, 948 F. Supp. at 668. "Likewise, transfer is not proper if the result is simply to shift the inconvenience from one party to another." *Evans Tempcon, Inc. v. Index Indus., Inc.*, 778 F. Supp. 371, 377 (W.D. Mich. 1990). Pursuant to 28 U.S.C. § 1391(b)(1), Wunderground brought this action in a judicial district where the Defendants reside. "For purposes of the venue statute, "a defendant that is a corporation shall be deemed to reside in any judicial district in which it is subject to personal jurisdiction at the time the action is commenced." *See Johnson Controls, Inc.*, 2005 WL 1630098 at *6 (Judge Battani) (quoting *Schultz v. Ary*, 175 F. Supp. 2d 959, 965 (W.D. Mich. 2001)); *see also* 28 U.S.C. § 1391(c).[18] In addition, pursuant to 28 U.S.C. § 1391(b)(2), venue is proper since a substantial part of the events, including the infringement of the Wunderground Marks, or omissions giving rise to the claim occurred in Michigan.

Wunderground's Jeff Ferguson, a Member of the Board of Directors, is responsible for this action and resides in Wunderground's principal place of business in Ann Arbor, Michigan. *See Exhibit C, Affidavit of Ferguson*. Seth Jacoby resides in New York, where his Declaration in support of

---

[18] The fact that Defendants admit an employee in Michigan, an attempt to register to do business in Michigan, and sale of domain names to Michigan residents further supports venue and personal jurisdiction. (Defs. Brief, pp. 7).

Defendants' Motion was executed, and Defendants also maintain offices in Chicago which are both closer to Michigan than to California.

Wunderground's witnesses will also hail mostly from Michigan, and may include individuals who were confused as a result of arriving at Infringing Domains targeting a Michigan corporation with whom they sought to conduct business. Contrary to Defendants' claims, the center of gravity is where the tort (trademark infringement) occurred, which is in Michigan. Defendants have infringed on countless other trademarks of Michigan companies, most of whom will require subpoenas and depositions here in Michigan. As admitted by Defendants, the remaining factors are equipoise. Therefore, as long as Wunderground can establish personal jurisdiction over the Defendants, this case is proper, and in the interests of justice, within this forum.

## VI. CONCLUSION

Viewing these pleadings in the light most favorable to the Plaintiff, Plaintiff has made a prima facie showing, as supported by Jeff Ferguson's affidavit and other written submissions, that personal jurisdiction exists, not withstanding any controverting presentation by the Defendants. As such, Defendants' Motion to Dismiss for Lack of Personal Jurisdiction should be DENIED.

Should this Court determine that discovery is needed to make factual determinations in light of the jurisdictional facts being so intimately intertwined with the parties' dispute on the merits, including the conspiracy claim, Plaintiff urges this Court reserve ruling on the matter of personal jurisdiction until trial. Venue is both reasonable and convenient in Michigan.

Respectfully submitted this 15th day of May, 2009.

\_\_/s/Enrico Schaefer_____

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI 49686
231-932-0411
enrico.schaefer@traverselegal.com

Lead Counsel for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI 48104
734-662-4426
apatti@hooperhathaway.com

Attorneys for Plaintiff

**CERTIFICATE OF SERVICE**

I hereby certify that on the 15th day of May, 2009, I electronically filed the foregoing **PLAINTIFF'S RESPONSE TO DEFENDANTS' MOTION TO DISMISS FOR LACK OF PERSONAL JURISDICTION** with the Clerk of the Court using the CM/ECF System on the following:

John P. Jacobs (P15400)
JACOBS AND DIEMER, PC
500 Griswold Street, Suite 2825
Detroit, MI 48226-3480
(313) 965-1900
jpj@jpjpc.com
Local Counsel for Defendants

And via U.S. Mail, postage paid, on the following:

William A. Delgado (admission pending)
WILLEKEN WILSON LOH & LIEB, LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

/s/Catherine A. Dittrich