## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

WEATHER UNDERGROUND, INC., a Michigan corporation,

            Plaintiff,

v.

NAVIGATION CATAYLST SYSTEMS, INC., a Delaware corporation; BASIC FUSION, INC., a Delaware corporation; CONNEXUS CORP., a Delaware corporation; and FIRSTLOOK, INC., a Delaware corporation,

            Defendants.
                                          /

CASE NO. 09-10756

HON. MARIANNE O. BATTANI

### OPINION AND ORDER GRANTING IN PART AND DENYING IN PART DEFENDANTS' MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(b)(6) OR, IN THE ALTERNATIVE, TRANSFER

Before the Court is Defendant's Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(2) or in the Alternative, Transfer (Doc. #15). The Court heard oral argument, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow, the motion is **GRANTED in part and DENIED in part**.

### I.  STATEMENT OF FACTS

Plaintiff, Weather Underground, Inc. ("Weather Underground"), is incorporated and maintains its principal place of business in Ann Arbor, Michigan. (Compl. ¶ 1.) Weather Underground is a commercial weather service, acting as an index for the information provided to it by multiple weather stations. (Id. ¶¶11-13.) Its primary sources of revenue are subscriptions (id. ¶ 14) and the sale of advertisements on its Web site,

<www.wunderground.com> (id. ¶ 22). Plaintiff's trademarks include, but are not limited to, "Weather Underground," "Wund," "Wunderground," "Weather Sticker," "Wundersearch," "Wundermarp," and "Wunderradio." (Id. ¶¶ 26-35.) Plaintiff owns approximately 125 Web addresses, or domain names, the majority of which integrate its trademarks and service marks. (Id. ¶ 24.)

Defendants in this case, Navigation Catalyst Systems, Inc. ("NCS"), Basic Fusion, Inc. ("Basic Fusion"), Connexus Corp. ("Connexus"), and Firstlook, Inc. ("Firstlook"), are incorporated in Delaware. (Def.'s Br. 4.) Connexus is the parent company of Firstlook, which, in turn, is the parent company of both NCS and Basic Fusion. (Id.) NCS is a "domain name holding company which acquires generic and descriptive domain names in bulk." (Id.) Basic Fusion is a domain name registrar.[1] (Id.) After NCS registers domain names through Basic Fusion, the names are submitted to First Look, and First Look creates automatically generated Web pages based on the text of the domain name. (Id. at 5.) The Web pages contain hyperlinks to third party advertisers, who pay on a pay-per-click basis. According to the Complaint, the links redirect users to Plaintiff's competitors, such as WeatherBug, Top-Weather.net, A LOT Weather, and DTN Meteorlogix. (Compl. ¶ 66.)

NCS profits from "direct navigation." (Id. at ¶ 42.) When an Internet user enters a word or phrase in a Web browser's address bar, instead of the search field of a search engine, the user would be taken to a Web site with information relevant to the search.

---

[1] All domain names must be registered by a registrar accredited by the Internet Corporation for Assigned Names and Numbers (ICANN). Basic Fusion is an ICANN-accredited domain name registrar. (Def.'s Br. 4.)

(Decl. of Seth Jacoby, at ¶ 4.)  For example, if a user looking for parties supplies types [www.partysupplies.org](www.partysupplies.org) in the address bar, he would reach NCS's Web page, which contains "hyperlinks to products and services that a visitor might be interested in based on the domain name itself." (Id. at ¶ 7.)  Each Web page also contains a search box that allows the visitor to input a search. (Id. at ¶ 9.)

Plaintiff alleges that Defendants' business model capitalizes on Internet users' errors in typing the Web addresses to businesses whose Web sites they intend to visit. Plaintiff characterizes Defendants' business as "typosquatting." (Compl. ¶¶ 44, 45.)  Weather Underground alleges that Defendants infringed its trademarks by registering domain names with various misspellings of Plaintiff's Web properties, <weatherunderground.com>, and <wund.com> (Pl.'s Br. 3.) in order to redirect Plaintiff's customers to competitors and third-party advertisers (id. at 2).  A few of the identified 41 domains alleged to infringe include the following: Qwundergoound.com, Swunderground.com, Udergroundweather.com, Undegroundweather.com, Undergroudweather.com, Undergroundwaether.com, Undergroundwweather.com. (Comp. ¶ 77.)

Plaintiff filed suit against Defendants, alleging cybersquatting under the Anti-Cybersquatting Consumer Protection, 15 U.S.C. § 1125(d), trademark infringement under the Lanham Act, 15 U.S.C. § 1114(1), false designation of origin under the Lanham Act, 15 U.S.C. § 1125(a), and dilution by blurring and tarnishment under the Lanham Act, 15 U.S.C. §1125(c).  Under Michigan common law, Plaintiff advances claims of unfair competition and trademark infringement, civil conspiracy, contributory trademark infringement, and vicarious trademark infringement.  Plaintiff seeks a declaratory judgment, injunctive relief, damages, and attorneys' fees.

Defendants ask the Court to dismiss Plaintiff's suit for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2), or in the alternative, to transfer this case to the United States District Court for the Central District of California pursuant to 28 U.S.C. § 1404(a) based on the convenience of the parties and the interests of justice.

## II. STANDARD OF REVIEW

### A. Dismissal for Lack of Personal Jurisdiction

A motion to dismiss under Fed. R. Civ. P. 12(b)(2) challenges the sufficiency of the jurisdictional facts regarding the existence of personal jurisdiction over a defendant. The plaintiff has the burden of establishing the existence of personal jurisdiction. Chandler v. Barclays Bank PLC, 898 F.2d 1148, 1151 (6th Cir. 1990). When a court decides whether it has personal jurisdiction on the basis of written submissions alone, the plaintiff "may not rest on his pleadings to answer the movant's affidavits, but must set forth, by affidavit or otherwise. . .specific facts showing that the court has jurisdiction." Seras v. First Tennessee Bank Intel Ass'n, 875 F.2d 1212, 1214 (6th Cir. 1989). If a plaintiff's pleadings and affidavits state the facts with sufficient particularity, a court must ignore contrary assertions by a defendant. Id. at 1215. "Dismissal is proper only if all the specific facts which the plaintiff. . .alleges collectively fail to state a prima facie case for jurisdiction." Theunissen v. Matthews, 935 F.2d 1454, 1458 (6th Cir. 1991).

### B. Transfer Venue

District courts have "broad discretion to transfer an action pursuant to 28 U.S.C. §1404 to avoid unnecessary delay and to protect parties, witnesses, and the public from undue expenses and inconvenience." Wayne County Employees Ret. Sys. v. MGIC Inv.

4

Corp., 604 F. Supp. 2d 969, 974 (E.D. Mich. 2009); see generally Van Dusen v. Barrack, 376 U.S. 612 (1964); Norwood v. Kirkpatrick, 349 U.S. 29 (1955). The Supreme Court has said that section 1404 "is intended to place discretion in the district court to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" Stewart Or., Inc. v. Ricoh Corp. 487 U.S. 22, 29 (1988) (quoting Van Dusen, 376 U.S. at 622).

The party who brings a motion to transfer venue bears the burden of proving by a preponderance of the evidence that "fairness and practicality strongly favor the forum to which transfer is sought." Amphion, Inc. v. Buckeye Elec. Co., 285 F. Supp. 2d 943, 946 (E.D. Mich. 2003) (quoting Thomas v. Home Depot U.S.A., Inc., 131 F. Supp. 2d 934, 936 (E.D. Mich. 2001)); see also Stanifer v. Brannan, 564 F.3d 455, 460 n.1 (6th Cir. 2009) (holding that where plaintiff responded to a motion to dismiss with a motion to transfer venue, plaintiff had the burden of proving grounds for transfer). District courts have considerable discretion in deciding whether to grant or deny motions to transfer. See Zomba Enters., Inc. v. Panorama Records, Inc., F.3d 574, 588 (6th Cir. 2007).

### III.    ANALYSIS

#### A.    May the Court Exercise Personal Jurisdiction over the Defendants?

The parties contest whether the exercise of personal jurisdiction is proper. In its brief, Plaintiff does not distinguish the actions of each Defendant relative to contact with Michigan. Instead, Plaintiff raises the conspiracy theory of jurisdiction; however, it advances no binding authority for this expansive view of jurisdiction. Therefore, the Court declines to endorse the theory in this case. Regardless of whether Defendants are

5

intertwined, their actions may not be imputed to each other. Accordingly, Plaintiff's failure to address each Defendants' contacts with the state of Michigan individually contravenes the well-established law of personal jurisdiction.

Specifically, the plaintiff bears the burden of establishing personal jurisdiction for each defendant individually. Calder v. Jones, 465 U.S. 783, 790 (1984) ( "Petitioners are correct that their contacts with [ the forum state] are not to be judged according to their employer's activities there. . . .Each defendant's contacts with the forum State must be assessed individually"); Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002) (the party seeking to assert personal jurisdiction bears the burden of demonstrating that such jurisdiction in fact exits). Because Plaintiff has not met its burden relative to Connexus, Basic Fusion, and First Look, the Court limits its discussion to whether NCS may be subjected to personal jurisdiction in this Court.

Where a federal court's subject matter jurisdiction over a case stems from the existence of a federal questions, two requirements must be met for the court to exercise personal jurisdiction over a defendant: (1) the defendant must be amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction must not deny the defendant due process. Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002). Personal jurisdiction can be either general or specific, depending on the type of minimum contacts. Third Nat'l Bank v. Wedge Group Inc., 882 F.2d 1087, 1089 (6th Cir. 1989). General jurisdiction depends on a showing that the defendant has "continuous and systematic contacts with the forum state sufficient to justify the state's exercise of judicial power with respect to any and all claims" the plaintiff may have against

the defendant. Fortis Corporate Ins. v. Viken Ship Mgmt., 450 F.3d 214, 218 (6th Cir. 2006) (quoting Aristech Chem Int'l v. Acrylic Fabricators, 138 F.3d 624, 627 (6th Cir. 1998)). In contrast, specific jurisdiction exposes the defendant to suit in the forum state only as to those claims that "arise out of or relate to" the defendant's contact with the forum. Helicopteros Nacionales de Colombia S.A. v. Hall, 466 U.S. 408, 414-15 (1984).

### 1. General Jurisdiction

The allegations in this case relative to general jurisdiction are undisputed. Defendant maintains no offices, employees, bank accounts, or other property in Michigan. (Jacoby Decl. at ¶ 16.) Since 2007, NCS has sold eight domain names, each unrelated to this case, to corporations having their principal places of business in Michigan. (Id. at 7.) Plaintiff does not contend that general jurisdiction over NCS exists. Therefore, the Court considers whether it may exercise specific jurisdiction, given the facts of this case and claims asserted.

### 2. Specific Jurisdiction

#### a. Long-Arm Statute

The Michigan long-arm statute specifies conditions under which Michigan courts may exercise specific personal jurisdiction over nonresident corporate defendants. Pursuant to applicable provisions, specific jurisdiction exists when the plaintiff's claim arises out of the defendant's contact with the state. The statute allows a court to assert personal jurisdiction over a defendant who, among other things, transacts "any business within" Michigan. MICH. COMP. LAWS § 600.715(1). The provision is interpreted broadly, and it includes even the "slightest" business contact. Sifers v. Horen, 188 N.W.2d 623, 624 n.2

(Mich 1971). The statute also allows a court to assert personal jurisdiction over a defendant and/or its agent who, among other things, does or causes "an act to be done, or consequences to occur, in the state resulting in an action for tort." MICH. COMP. LAWS § 600.715(2).

In this case, the Court assumes for the purposes of analysis that Defendants NCS transacted business in Michigan and/or caused consequences to occur in Michigan resulting in an action for tort. Accordingly, the Court must next consider "whether the exercise of limited personal jurisdiction violates the Due Process Clause of the Fourteenth Amendment of the United States Constitution." Florists' Transworld Delivery, Inc. v. Fleurop-Interflora, No. 01-CV-70954, 2003 WL 21051089 (E.D. Mich. April 10, 2003) (citing Michigan Coalition of Radioactive Material Users, Inc. v. Griepentrog, 954 F.2d 1174, 1176-77 (6th Cir. 1992)).

### b. Due Process

Under the Due Process Clause of the Fourteenth Amendment, "[a] state court may exercise personal jurisdiction over a nonresident defendant so long as there exists 'minimum contacts' between the defendant and the forum State." World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 291 (1980) (citing Int'l Shoe Co. v. Washington, 326 U.S. 310 (1945)). "The proper focus for analyzing these contacts is whether they represent an effort by the defendant to 'purposefully avail itself of the privilege of conducting activities within Michigan, the forum state. If the defendant's activities create sufficient minimum contacts, the court then considers "whether the exercise of personal jurisdiction over the defendant offends 'traditional notions of fair play and substantial justice.' " Id. (quoting

Asahi Metal Indus. Co. v. Superior Court of California, 480 U.S. 102, 113 (1987)).

In determining whether the exercise of specific personal jurisdiction is proper, the Sixth Circuit follows a three-prong test originally articulated in S'ern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968):

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences caused by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Because there has been no evidentiary hearing on the issue of personal jurisdiction, the Court must limit its inquiry to whether Plaintiff has established a "prima facie showing of jurisdiction." CompuServe, Inc. v. Patterson, 89 F.3d 1257, 1262 (6th Cir. 1996). The Court must draw all reasonable inferences and resolve all factual disputes in favor of Plaintiff as the party invoking federal jurisdiction. See Nationwide Mutual Ins. Co. v. Tryg Int'l Ins. Co., 91 F.3d 790 (6th Cir. 1996).

### 1. Purposeful availment or effects test

Under the first prong, "purposeful availment" means that the defendant's "contacts proximately result from the actions by the defendant *himself* that create a 'substantial connection' with the forum State." Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). This purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Id. at 475 (quoting Keeton v. Hustler Magazine, 465 U.S. 770, 774 (1984); Helicopteros, 466 U.S. at 417).

At the outset, the Court observes that a defendant cannot be subject to suit in a particular state merely because it maintained a Web site that could be viewed in the forum. Bird, 289 F.3d at 874. Instead, the Court must evaluate the relationship of NCS, Michigan, and the cause of action. Minimum contacts may be established through a defendant's purposeful availment of the benefits and protections of Michigan's laws, Ashai Metal indus., 480 U.S. at 109, or the effects test, which looks at whether the harm caused by NCS is intentional and aimed at Michigan, Calder, 465 U.S. at 788-90. Accord Mohasco, 401 F.2d at 381 (court must first determine whether the defendant "purposefully avail[ed] [itself] of the privilege of acting in the forum state or causing a consequence in the forum state") .

According to Defendants, the Web sites in question were registered consistent with a thoughtful business model ("direct navigation") that allowed them to capitalize on Internet users typing in generic or descriptive words directly in a Web browser's address bar. (Def.'s Br. 5.) They characterize NCS's Web site as passive in that no business is conducted on the site; nor can visitors exchange information with the host computer.

Notably, in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), the court introduced what is now known as the "sliding scale" approach, or the "Zippo test." Under the sliding scale approach,

> [a]t one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the

> exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Id. at 1124. The Sixth Circuit has adopted the sliding scale approach. See Neogen Corp., 282 F.3d at 890 ("A defendant purposefully avails itself of the privilege of acting in a state through its Web site if the Web site is interactive to a degree that reveals specifically intended interaction with residents of the state."); Cadle Co. v. Schlichtmann, 123 Fed. App'x 675, 678 (6th Cir. 2005) ("In evaluating whether the defendant's contact with the forum state constituted purposeful availment, this and other circuits have used the 'Zippo sliding scale' approach.").

Defendants urge this court to treat the Web sites automatically generated by their software as wholly passive, placing them in the second category of the sliding scale approach. (Def.'s Br. 12.) They further rely on the fact that "[w]hen visitors to an NCS Web site click on a hyperlink, they are taken away from the NCS domain." (Id.) Defendants add that there has been no effort to sell any Web site to Plaintiff, a fact that further supports the position that the Web sites are passive. See Panavision Int'l, L.P. v. Toeppen, 141 F.3d 1316, 1322 (9th Cir. 1998) (holding that nonresident defendant satisfied purposeful availment because he was "engaged in a scheme to register Panavision's trademarks as his domain names for the purpose of extorting money from Panavision"). Accord See, Inc. v. Imago Eyewear Party Ltd., No. 03-74761, 2004 WL 5569067, at *6 (E.D. Mich. Oct. 12, 2004) (personal jurisdiction cannot be exercised based on a passive Web site).

Defendants assert that these activities do not constitute the kind of "minimum contacts" that the Supreme Court requires each defendant have with the forum state. They conclude that inasmuch as NCS has no physical connection to the state of Michigan, the minimum contacts requirement cannot be met, and the exercise of specific personal jurisdiction violates due process.

Even if Defendants were correct that the facts here do not demonstrate purposeful availment, Plaintiff may satisfy its burden through the effects test. Accordingly, the Court directs its attention to the arguments advanced by Plaintiff in support of its position that personal jurisdiction is proper.

In determining personal jurisdiction relative to Internet disputes, many courts have applied the "effects test" set forth in Calder v. Jones, 465 U.S. 783 (1984). In Calder, a professional entertainer domiciled in California sued two Florida reporters in California state court for libel resulting from conduct that took place entirely in Florida. The U.S. Supreme Court held that the state court could properly exercise personal jurisdiction over the Florida defendants based on the 'effects' of their Florida conduct in California." Id. at 789. The Supreme Court focused on the fact that the defendants' intentional actions were aimed at California, that the defendants knew the stories "would have a potentially devastating impact" on the plaintiff, and they knew the "brunt of the harm" would be suffered in California. Id. at 789. Consequently, it concluded the defendants could "reasonably anticipate being haled into court" in California. 465 U.S. 783, 790 (quoting World-Wide Volkswagen Corp. v. Woodson, 444 U.S. 286, 297 (1980)).

Without question, injury to a forum resident is not enough, Air Products and

Controls, Inc. v. Safetech Int'l, Inc., 503 F. 3d 544 552 (6th Cir. 2008), and the Calder test has not been read to authorize personal jurisdiction in a plaintiff's home forum in the absence of "something more" to demonstrate that the defendant directed this activity toward the forum state. See Panavision Int'l v. Toeppen, 141 F. 3d 1316, 1322 (9th Cir. 1998) (noting that "simply registering someone else's trademark as a domain name and posting a Web site on the Internet is not sufficient to subject a party domiciled in one state to jurisdiction in another"); Mink v. AAAA Dev. LLC, 190 F.3d 333, 336-67 (5th Cir. 1999) (no jurisdiction where Web site allowed a user to obtain a printable order form). The effects test only allows a court to exert personal jurisdiction over a defendant if he: (i) commits intentionally tortious actions; (ii) which are expressly aimed at the forum state; (iii) which cause harm to the plaintiff in the forum state which the defendant knows is likely to be suffered. Euromarket Designs, Inc. v. Crate & Barrel Ltd., 96 F. Supp.2d 824, 835 (N.D. Ill. 2000) (citing Calder, 465 U.S. 783).

Certainly Plaintiff satisfies the first criteria. As for the express aiming, the Court agrees with Weather Underground that this lawsuit is a response to NCS's alleged extensive poaching activity whereby it profits, directly and indirectly, from advertisers and Internet users through the use of various misspellings of Plaintiff's trademarked Web site addresses (Compl. ¶ 18). See GTE New Media Servs., Inc. v, Ameritech Corp., 21 F. Supp.2d 27, 28 (D. D.C. 1998) (considering whether luring large numbers of viewers in order to profit from higher adverting fees might substitute for doing business over the Internet). The scope of the conduct suggests that Weather Underground was a target of the activities engaged in by NCS. See Verizon Cal., Inc. v. Navigation Catalyst Sys., Inc.,

568 F. Supp. 2d 1088, 1096 (C.D. Cal. 2008) (discussing a similar suit brought against NCS and observing that "[i]t is clear that [defendants'] intent was to profit from the poor typing abilities of consumers trying to reach Plaintiffs' sites: what other value could there be in a name like ve3rison.com?"). Accord Bunn-O-Matic Corp. v. Bunn Coffee Service Inc., 46 U.S.P.Q.2d 1375 (C.D. Ill.1998) (noting that jurisdiction is proper where the injury to intellectual property is incurred).

The Court is not persuaded to the contrary by Defendants' assertion that the effects doctrine is inapplicable because NCS's automated registration in bulk is not expressly aimed at Plaintiff or Michigan. Even if Defendants were correct that NCS is not soliciting Web site visitors from Michigan or encouraging Michigan residents to visit its Web sites, other factors demonstrate that, in this case, there is knowledge of and intent to harm Plaintiff in the forum. According to the Complaint, NCS has forty-one Web pages encompassing any number of typographical errors to the mark owned by Plaintiff. (Compl. ¶ 77). After the Complaint was filed, Plaintiff discovered five additional domain names that target Plaintiff's mark. (Pl.'s Ex. D, WHOIS Records). Given the business model and the prior proceedings, there is sufficient evidence, viewed in the light most favorable to Plaintiff, that NCS knew of Plaintiff and its mark as well as Plaintiff's location.

In light of allegations regarding Defendant's purposeful targeting and poaching Plaintiff's successful mark, the Court finds NCS entered into the forum. Because Weather Underground's principal place of business is in Ann Arbor, Michigan (Pl.'s Br. 2), and it has claimed infringement of its trademarks under the Lanham Act, among other federal and state causes of action (Compl. ¶ 6), the Court further finds for purposes of this motion that

the injury occurred in Michigan. See Bird, 289 F.3d at 876 (holding that violation of a federal trademark law constituted a tort in Ohio because the plaintiff's principal place of business was there and the plaintiff also suffered economic harm there). Although a corporation does not suffer harm in the same manner as an individual, here, the Affidavit of Jeff Ferguson sufficiently satisfies the Court that the brunt of the injury is felt in Michigan. Weather Underground employs students from the University of Michigan on a routine basis and has its principal office in Michigan. Id. at ¶ 5. More than a quarter of its revenue is derived from Michigan. Id. at ¶ 6. Moreover, the business was developed at the University of Michigan.

Accordingly, the Court finds the first prong of the Sixth Circuit's Mohasco test is satisfied.

### 2. Arising from

The next prong of Mohasco requires Plaintiff's cause of action to arise from Defendant's activities in the forum state should not be construed too strictly. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." Mohasoc, 401 F.2d at 384 n.29. In other words, so long as the cause of action has "[a] substantial connection with [a] defendant's in-state activities," it is not necessary that the suit formally arise from [a] defendant's contacts with the forum state. See WEDGE Group, Inc., 882 F.2d at 1091(quoting Mohasoc, 401 F2d at 384 n.27).

The activities of NCS satisfy this second prong. Here, Plaintiff's claims would not

15

have occurred in absence of NCS's targeting of Plaintiff. Given the lenient standard and that the cause of action need not "formally" arise out of the contact, the Court finds Plaintiff has made a prima facie showing of jurisdiction as to NCS. Even crediting Defendants' insistence that "automated processes" generate the domain names based on "generic or descriptive words" (Jacoby Dec. ¶ 5), there is no question that NCS set in motion the Web sites.

Therefore, the Court finds that NCS's activities gave rise to Plaintiff's cause of action and thus satisfy the second element of the Mohasco test.

### 3. Reasonableness.

As to the third and last prong, "[a]n inference arises that the third factor is satisfied if the first two requirements are met." Bird, 289 F3d at 875; CompuService, Inc., 89 F.3d at 1268. Nevertheless, courts look at several factors when examining the requirement of reasonableness, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interests of other states in securing the most efficient resolutions of controversies." Am. Greetings Corp., 839 F. 2d at 1169-70 (quoting Asahi Metal Indus. v. Superior Court, 480 U.S. 102, 113 (1987)).

The Court is cognizant that the Sixth Circuit has routinely upheld specific jurisdiction in cases where doing so forced the defendant to travel to the forum state, see, e.g., Lanier v. Am. Bd. of Endodontics, supra, 843 F.2d at 911-12 (upholding jurisdiction in Michigan over Illinois defendant); Am. Greetings Corp. v. Cohn, 839 F.2d 1164, 1170-71 (6th Cir.1988) (allowing jurisdiction in Michigan over California defendant), this is not a case where the exercise of jurisdiction comports with any notion of fair play.

16

Here, the Court find that it is reasonable to exercise personal jurisdiction over NCS. The burden on NCS is outweighed by Michigan's interest in protecting its citizens from tortious interference with their trademarks as well as Plaintiff's interest in "obtaining the most efficient resolution of controversies," id., as its principal place of business is in Michigan (Pl's Br. 2). "[W]here a defendant who purposefully has directed his activities at forum residents seeks to defeat jurisdiction, he must present a compelling case that the presence of some other considerations would render jurisdiction unreasonable." Burger King corp., 471 U.S. at 477. The fact that "Defendants conduct no business with Michigan residents with respect to the domain names at issue in this lawsuit" (see Def.'s Br. 15.), is not only too narrow a view, it sidesteps the effects test. The challenged conduct goes beyond the mere operation of a Web site that connects NCS to Michigan. This Court's finding of jurisdiction over NCS is not based on the mere fact that its Web sites can be viewed by residents of the forum state. Because this litigation arose from NCS's contacts with the state of Michigan, it is subject to specific personal jurisdiction in the courts of this state.

**B. Transfer of Venue**

In the alternative, Defendants request a change of venue. Under 28 U.S.C. § 1404(a), "For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district or division where it might have been brought."

Before the Court would deem transfer appropriate, it must assess whether this

action could "have been brought" in the proposed transferee district. There is no dispute that this matter could have been brought in the transferee district, the Central District of California. Accordingly, the Court directs its attention to the other considerations playing a role in the decision-making process: the parties' convenience; the convenience of the witnesses; the ease of access to sources of proof; the availability of process to compel witnesses' attendance; the cost of obtaining willing witnesses; the practical problem of trying the case most expeditiously and inexpensively; and the interests of justice. <u>Audi AG v. D'Amato</u>, 341 F. Supp. 2d 734, 749 (E. D. Mich. 2004).

Defendants' request focuses on convenience to witnesses, access to proof, and the availability of compulsory process. According to Defendants, members of Plaintiff's executive team live in California as do Defendant's witnesses. Defendants also assert that access to proof favors transfer because documentary evidence is located in California. Although Defendants fail to identify any nonparty witnesses whose testimony will be relevant to the case, they contend that they will be forced to submit testimony at trial through deposition rather than live testimony.

The Court finds the arguments advanced are neither specific nor persuasive. Upon balancing these factors, the Court concludes that Defendants have failed to carry their burden of showing that a transfer to the Central District of California is in the interests of justice. The plaintiff's choice of forum is given a great deal of weight in the balancing to determine if the case should be transferred, and Defendants have failed to come forward with strong reasons in favor of a transfer to California.

**IV. CONCLUSION**

For the reasons stated above, the Court **GRANTS in part and DENIES in part** Defendants' Motion to Dismiss for Lack of Personal Jurisdiction. The Court **DISMISSES** Connexus, Basic Fusion, and First Look. Further, the Court **DENIES** Defendants' request for transfer.

**IT IS SO ORDERED.**

s/Marianne O. Battani
MARIANNE O. BATTANI
UNITED STATES DISTRICT JUDGE

Date: November 13, 2009

**CERTIFICATE OF SERVICE**

A copy of this Order was mailed and/or electronically filed to counsel of record on this date.

s/Bernadette M. Thebolt
Case Manager