IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
    a Michigan corporation,

        Plaintiff,

vs.

NAVIGATION CATALYST SYSTEMS, INC.,
    a Delaware corporation; BASIC
    FUSION, INC., a Delaware corporation;
    CONNEXUS CORP., a Delaware
    corporation; and FIRSTLOOK, INC., a
    Delaware corporation,

        Defendants.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

---

| | |
|---|---|
| Anthony P. Patti (P43729)<br>HOOPER, HATHAWAY PRICE BEUCHE<br>    & WALLACE<br>Attorney for Plaintiff<br>126 S. Main Street<br>Ann Arbor, MI 48104<br>(734) 662-4426<br>apatti@hooperhathaway.com<br><br>Brian A. Hall (P70865)<br>Enrico C. Schafer (P43506)<br>Attorneys for Plaintiff<br>TRAVERSE LEGAL PLC<br>810 Cottagview Drive, Suite G-30<br>Traverse City, MI 49684<br>(231) 932-0636<br>brianhall@traverselegal.com<br>enrico@traverselegal.com | John P. Jacobs (P15400)<br>JACOBS AND DIEMER, P.C.<br>Local Counsel for Defendants<br>500 Griswold Street, Suite 2825<br>Detroit, MI 48226-3480<br>(313) 965-1900<br>jpj@jacobsdiemer.com<br><br>William A. Delgado<br>WILLENKEN WILSON LOH & LIEB LLP<br>Lead Counsel for Defendants<br>707 Wilshire Blvd., Suite 3850<br>Los Angeles, CA 90017<br>(213) 955-9240<br>williamdelgado@willenken.com |

# MOTION FOR RECONSIDERATION

TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Local Rule 7.1(g), Defendant Navigation Catalyst Systems, Inc. hereby moves this Court to reconsider its Order on Defendants' Motion to Dismiss dated November 13, 2009 ("Order"). Should the Court determine that it needs to further analyze whether Plaintiff's principal place of business is in California, NCS moves the Court to stay the matter until resolution of *Hertz Corp. v. Friend*, 297 Fed. Appx. 690 (9th Cir. 7008) *cert. granted* ___ U.S. ___, 129 S.Ct. 2766 (June 8, 2009) by the Supreme Court of the United States.

This Motion is based on the facts and arguments set forth in the accompanying Memorandum of Points and Authorities; to wit, that the Court should reconsider:

- Whether Michigan is Plaintiff's "principal place of business" such that NCS can be said to have "expressly aimed" its conduct at the state of Michigan and Plaintiff felt the "brunt of the harm" there for purposes of the "effects test" enunciated in *Calder v. Jones*, 465 U.S. 783 (1984).

- Whether the matter should be stayed until resolution of *Hertz Corp. v. Friend*, 297 Fed. Appx. 690 (9th Cir. 7008) *cert. granted* ___ U.S. ___, 129 S.Ct. 2766 (June 8, 2009) by the Supreme Court of the United States.

- Whether to transfer all Defendants to the Central District of California since doing so would be in the interests of justice and judicial economy.

This Motion is supported by the attached Memorandum of Points and Authorities, the case file, and the arguments of counsel that the Court would entertain at a hearing on this motion.

On or about November 18, 2009, there was a conference between William A. Delgado, counsel for NCS, and Enrico Schaefer, counsel for Plaintiff, in which NCS explained the nature of the motion, its legal basis and requested, but did not obtain, concurrence in the relief sought. Plaintiff's counsel noted that it may cross-move for relief.

RESPECTFULLY SUBMITTED this 25th day of November, 2009.

| | |
|---|---|
| /s/ William A. Delgado | /s/ John P. Jacobs |
| William A. Delgado | John P. Jacobs (P15400) |
| WILLENKEN WILSON LOH & LIEB LLP | JACOBS AND DIEMER, P.C. |
| Lead Counsel for Defendants | Local Counsel for Defendants |
| williamdelgado@willenken.com | jpj@jacobsdiemer.com |

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
a Michigan corporation,

    Plaintiff,

vs.

NAVIGATION CATALYST SYSTEMS, INC.,
a Delaware corporation; BASIC
FUSION, INC., a Delaware corporation;
CONNEXUS CORP., a Delaware
corporation; and FIRSTLOOK, INC., a
Delaware corporation,

    Defendants.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

| Anthony P. Patti (P43729)<br>HOOPER, HATHAWAY PRICE BEUCHE<br>   & WALLACE<br>Attorney for Plaintiff<br>126 S. Main Street<br>Ann Arbor, MI 48104<br>(734) 662-4426<br>apatti@hooperhathaway.com<br><br>Brian A. Hall (P70865)<br>Enrico C. Schafer (P43506)<br>Attorneys for Plaintiff<br>TRAVERSE LEGAL PLC<br>810 Cottagview Drive, Suite G-30<br>Traverse City, MI 49684<br>(231) 932-0636<br>brianhall@traverselegal.com<br>enrico@traverselegal.com | John P. Jacobs (P15400)<br>JACOBS AND DIEMER, P.C.<br>Local Counsel for Defendants<br>500 Griswold Street, Suite 2825<br>Detroit, MI 48226-3480<br>(313) 965-1900<br>jpj@jacobsdiemer.com<br><br>William A. Delgado<br>WILLENKEN WILSON LOH & LIEB LLP<br>Lead Counsel for Defendants<br>707 Wilshire Blvd., Suite 3850<br>Los Angeles, CA 90017<br>(213) 955-9240<br>williamdelgado@willenken.com |
|---|---|

# INDEX OF PRINCIPAL AUTHORITIES CITED

*Budget Blinds v. White*, 536 F.3d 244, 255-56 (3d Cir. 2008) .................... 5

*Calder v. Jones,* 465 U.S. 783, 104 S.Ct. 1482, 79 L Ed. 2d 804 (1984) .................... 1, 3

*Capitol Indemnity, Corp. v. Russeville Steele Co., Inc.,* 367 P.33d 831 (8th Cir. 2004) .......... 7

*Cottman Transmission Sys., Inc. v. Martino,* 36 F.3d 291, 296 (3d Cir. 1994) ........... 9, 10

*Dole Food Co., Inc. v. Watts,* 303 F.3d 1104, 1114 (9th Cir. 2002) .................... 5

*Euromarket Designs, Inc. v. Crate & Barrel Ltd.,* 96 F. Supp. 2d 824, 835 (N.D. Ill. 2000) .... 3

*Fleck v. Titan Tire Corp.,* 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001) .................... 3

*Gafford v. General Electric Co.,* 997 F.2d 150, 163 (6th Cir. 1993) .................... 5, 6, 7

*Godlin v. Sybiron Int'l Corp.,* 222 F.3d 797, 799 (10th Cir. 2000) .................... 7

*Hadid v. Johnson Controls, Inc.,* 2005 WL 1630098 (E.D. Mich. 2005) .................... 2, 9

*Hertz Corp. v. Friend,* 297 Fed. Appx. 690 (9th Cir. 7008) *cert.* granted ___ U.S. ___, 129 S.Ct. 2766 (June 8, 2009) .................... 2, 7, 11

*Industrial Tectonics, Inc. v. Aero Alloy,* 912 F.2d 1090 (9th Cir. 1990) .................... 7

*Kelly v. U.S. Steel Corp.,* 284 F.2d 850, 854 (3d Cir. 1960) .................... 7

*MacGinntic v. Hobbs Group, L.L.C., 420 F.3d 1234, 1239 (11th Cir. 2005)* .................... 7

*Panavision Intern., L.P. v. Toeppen,* 141 F.3d 1316 (9th Cir. 1998) .................... 5

*Peterson v. Cooley,* 142 F.3d 181, 184 (4th Cir. 1998) .................... 7

*R.G. Barry Corp. v. Mushroom Makers, Inc.,* 612 F.2d 651,655 (2d Cir. 1979) .................... 7

*Teal Energy, U.S.A., Inc. v. G.T., Inc.,* 369 f.3D 873 (5th Cir. (2004) .................... 7

*Topp v. CompAir, Inc.,* 814 F.2d 830, 834 (1st Cir. 1987) .................... 7

*Tosco Corp. v. Communities for a Better Env't,* 236 F.3d 495 (9th Cir. 2001) .................... 7

*Wisconsin Knife Works v. National Metal Crafters,* 781 F.2d 1280, 1282 (7th Cir. 1986) ...... 7

*U.S. v. Johnson Controls, Inc. (Ex rel. Hadid),* 2005 WL 1630098 (E.D. Mich. 2005) .......... 9

U.S. E.D. Mich. Local Rule 7.1(g) .................... 2

# MEMORANDUM OF POINTS AND AUTHORITIES

## Statement of the Issues Presented

In this Motion for Reconsideration, Defendant Navigation Catalyst System ("NCS") respectfully requests that the Court reconsider two aspects of its order on Defendants' Motion to Dismiss:

1. Whether Michigan is Plaintiff's "principal place of business" such that NCS can be said to have "expressly aimed" its conduct at the state of Michigan and Plaintiff felt the "brunt of the harm" there for purposes of the "effects test" enunciated in *Calder v. Jones,* 465 U.S. 783, 104 S. Ct. 1482, 79 L.Ed. 804 (1984)?

2. Whether a transfer to the Central District of California is in the interests of justice given that the Court's order essentially results in *two* lawsuits requiring the litigation of the same exact issues?

## Introduction

NCS respectfully submits that the Court should reconsider its Order for two simple reasons.

First, the Court found that NCS's conduct was "expressly aimed" at Michigan and that Plaintiff felt the "brunt of the harm" in Michigan because Plaintiff's principal place of business is in Michigan. While the Court relied on certain cherry-picked facts set forth in the Ferguson Affidavit to make this determination, the Court did not analyze other facts relevant to this inquiry which establish that Plaintiff's principal place of business is actually in California (e.g., Plaintiff corporation's "nerve center" is in San Francisco). The failure to do so is not in accordance with

1

the Sixth Circuit's "total activity test" for determining where a corporation has its principal place of business. Further, the U.S. Supreme Court is presently hearing the case of *Hertz Corp. v. Friend*, 297 Fed. Appx. 690 (9th Cir. 7008) *cert. granted* ___ U.S. ___, 129 S.Ct. 2766 (June 8, 2009), in which it will decide how a corporation's principal place of business is to be determined. Thus, the application of the "total activity test" (or whatever test the Supreme Court ultimately enunciates) may result in a finding that Plaintiff's principal place of business is where its management team resides and operates - in *California*. If that is the case, then for purposes of the "effects test," NCS's alleged conduct would be deemed as "expressly aimed" at California, not Michigan, and Plaintiff would feel the brunt of the harm in California. Thus, asserting personal jurisdiction over NCS in Michigan would be improper.

Second, by dismissing certain Defendants but ultimately refusing to transfer the entire case, the Court's order effectively creates the necessity for *two* different lawsuits. The interests of justice are not served by having two different lawsuits on the same set of facts and law. Two lawsuits (as opposed to one) increase the burden on all parties and create the possibility of inconsistent judgments. As this Court previously recognized in *Hadid v. Johnson Controls, Inc.*, 2005 WL 1630098 (E.D. Mich. 2005) (Honorable Marianne O. Battani, presiding) when a group of Defendants are as intertwined as the Defendants in this case, the preferred practice is to transfer the entire case to a court having jurisdiction.

**Argument**

I. **THE COURT SHOULD RECONSIDER WHETHER MICHIGAN IS PLAINTIFF'S PRINCIPAL PLACE OF BUSINESS AND, IF IT IS NOT, DISMISS NCS.**

Local Rule 7.1(g) permits a party to move for reconsideration if the movant "can demonstrate a palpable defect by which the court and the parties have been misled" and the "correcting the defect will result in a different disposition of the case." A "palpable defect" is an error "which is obvious, clear, unmistakable, manifest, or plain." *Fleck v. Titan Tire Corp.*, 177 F. Supp. 2d 605, 624 (E.D. Mich. 2001). Here, correcting the defects discussed below will result in either complete dismissal of NCS or a transfer of this case outside of this district; either result, therefore, will result in a different disposition of the case.

### A. The Court Did Not Look at the "Total Activity" of the Plaintiff When Determining Plaintiff Has Its Principal Place of Business in Michigan.

In its Order, the Court held that the first prong of the test in *Southern Machine Co. v. Mohasco Indus., Inc.*, 401 F2d 374, 381 (6th Cir.) could be satisfied if all three prongs of the "effects" test of *Calder v. Jones* were met. The three prongs of the "effects test" are: (i) the commission of an intentionally tortuous action; (ii) expressly aimed at the forum state; (iii) which caused harm to the plaintiff in the forum state which the defendant knows is likely to be suffered. Order at 7 *citing Euromarket Designs, Inc. v. Crate & Barrel Ltd.*, 96 F. Supp. 2d 824, 835 (N.D. Ill. 2000) (*citing Calder*). The Court found that NCS satisfied all three prongs of the effects test.

As to the first prong, there was no intent to commit a tort here – NCS's registration of domains is done by an automated computer that locates unregistered domains with user traffic. As to the second and third prongs, the Court found that "NCS knew of Plaintiff and its mark as well as Plaintiff's location" and "[b]ecause Weather Underground's principal place of business is in Ann Arbor, Michigan...the Court finds for purposes of this motion that the injury occurred in Michigan." Order at 7-8. This finding was based on the Affidavit of Jeff Ferguson which

3

essentially stated that Plaintiff: (i) employs students from the University of Michigan on a routine basis, (ii) has its "principal office" in Michigan; (iii) derives more than a quarter of its revenue from Michigan, and (iv) originated in Michigan. *Id.* at 8.

*Not* considered were several facts before the Court that indicated Defendant's business is principally located in California and not Michigan, including that: (i) Plaintiff maintains a significant office in San Francisco, California[1]; (ii) Plaintiff's business is managed by an executive management team (its "nerve center") in San Francisco[2]; (iii) Plaintiff's website receives the most amount of visitors from California (1,229,866 unique visits as opposed to 363,280 unique clicks from Michigan—nearly **4 times** as much).[3] The Court did not analyze how many total employees are employed in San Francisco (as opposed to Ann Arbor) or where the other three-quarters of Plaintiff's revenues come from. Indeed, it stands to reason that if nearly four times more residents of California visit the Plaintiff's website than residents of Michigan, and Plaintiff generates revenues by selling memberships (Complaint at ¶ 14) and having advertisements on its website (i.e., sponsored links) (Complaint at ¶ 22), then a significant amount of revenue is generated as a result of visitors from *California*. That Plaintiff's response to Defendants' Motion was silent as to all of this—who is in California, what is done there, and how much revenue is generated as a result of California visitors—should serve as a "silent scream" to the Court that any inquiry into such facts would be fatal to Plaintiff.

---

[1] Declaration of William A. Delgado In Support of Defendants' Motion to Dismiss at ¶ 4 and Exhibit C thereto.

[2] *Id.*

[3] This information was submitted by Plaintiff and contained in Exhibit B of its Response to the Motion.

NCS respectfully submits that the Court should have analyzed the question of principal place of business in further detail, particularly with an eye to the facts just stated above. When determining principal place of business for purposes of diversity, the Sixth Circuit employs the "total activity test."[4] *Gafford v. General Electric Co.*, 997 F.2d 150, 163 (6th Cir. 1993) ("[W]e take this opportunity to direct courts in this circuit to employ the total activity test, taking into consideration all relevant facts and weighing them in light of the facts of each case."). Pursuant to the "total activity test," the Court must consider the location of the corporation's nerve center (here, San Francisco), as well as the location of its business activities (which, at a minimum, also includes San Francisco), and such other things as the character of the corporation and the kind of business in which it is engaged. *See, e.g., Gafford*, 997 F.2d at 161.

At a minimum, NCS respectfully submits that the Court should have examined *all* the facts before it as to Plaintiff's business dealings or, alternatively, called for an evidentiary hearing as to facts not before it that are necessary to a full analysis of the "total activity test." *See, e.g., Budget Blinds v. White*, 536 F.3d 244, 255-56 (3d Cir. 2008) (concluding that

---

[4] NCS can think of no good reason why a corporation's place of business for purposes of the diversity statute is different than its principal place of business for any other reason including for purposes of the "effects test." Indeed, courts typically look to a corporation's principal place of business when looking at whether the "effects test" applies. *Dole Food Co., Inc. v. Watts*, 303 F.3d 1104, 1114 (9th Cir. 2002) ("[W]hen a forum in which a plaintiff corporation has its principal place of business is in the same forum toward which defendants expressly aim their acts, the 'effects' test permits that forum to exercise personal jurisdiction."); *Panavision Intern., L.P. v. Toeppen*, 141 F.3d 1316 (9th Cir. 1998) ("Toeppen knew Panavision would likely suffer harm there because, although at all relevant times Panavision was a Delaware limited partnership, its principal place of business was in California, and the heart of the theatrical motion picture and television industry is located there."). Thus, the fact that the case arises in the diversity context is of no consequence.

allegation that "brunt of the harm" was felt in California because California was principal place of business could not be resolved without more evidence.). The Court did not examine where the "nerve center" was or where Plaintiff has its business activities. By not doing so, the Court incorrectly determined, we believe, that Plaintiff is in Michigan and that the harm is felt in Michigan without even considering the "total activities" of the Plaintiff which are principally in California. NCS submits that a consideration of Plaintiffs' "total activities"—as opposed to the most favorable facts specifically culled for the Ferguson Affidavit—will confirm what is already apparent: Plaintiff's principal place of business is in *California* and the harm, if any, is felt in *California*. As a result, it would be proper (indeed essential in light of Sixth Circuit precedent) to reconsider its Order on this point, particularly since NCS would not be subject to jurisdiction in Michigan if, in fact, Plaintiff's principal place of business is in California. And, if Plaintiff's principal place of business is in California, then dismissal of NCS would be required because the second and third prong of the "effects test" could not be met.

### B. The Court Should Stay the Case Until the Supreme Court Provides Guidance as to What Constitutes a Principal Place of Business and, Then, Reconsider Its Order.

As explained, above, NCS seeks reconsideration on the issue of whether Plaintiff has its principal of business in Michigan such that NCS's conduct can be deemed as "expressly aimed" at Michigan, and Plaintiff suffers the "brunt of the harm" in Michigan. But a corollary question arises: W*hen* should the Court reconsider this issue? The answer is: as soon as the Supreme Court of the United States has spoken on the issue.

While the Sixth Circuit in *Gafford* (and other Circuits, including the Fifth[5], Eighth[6], Tenth[7], and Eleventh[8]) have adopted the "total activity test" to determine a corporation's place of business, other circuits have adopted different tests. The Seventh Circuit, for example, uses the "nerve center" test which it considers a "simpler" test. *Wisconsin Knife Works v. National Metal Crafters*, 781 F.2d 1280, 1282 (7th Cir. 1986). The Third Circuit uses the "center of corporate activities test" which looks for the location of the corporation's "headquarters of day-to-day corporate activity and management." *Kelly v. U.S. Steel Corp.*, 284 F.2d 850, 854 (3d Cir. 1960). The Ninth Circuit considers the "place of operations" and considers the location of the corporation's plants, employees, and assets.[9] *Industrial Tectonics, Inc. v. Aero Alloy*, 912 F.2d 1090 (9th Cir. 1990); *Tosco Corp. v. Communities for a Better Env't*, 236 F.3d 495 (9th Cir. 2001). The First, Second, and Fourth Circuits have not formally recognized any test but simply provide guidance as to when the "nerve center test" should control and when the "place of operations" test should control. *See, e.g., Topp v. CompAir, Inc.*, 814 F.2d 830, 834 (1st Cir. 1987); *R.G. Barry Corp. v. Mushroom Makers, Inc.*, 612 F.2d 651, 655 (2d Cir. 1979); *Peterson v. Cooley*, 142 F.3d 181, 184 (4th Cir. 1998). As a result of this four-way circuit split, the Supreme Court recently granted *certiorari* in the case of *Hertz Corp. v. Friend*, Case No. 08-

---

[5] *Teal Energy, U.S.A., Inc. v. G.T., Inc.*, 369 F.3d 873 (5th Cir. (2004).

[6] *Capitol Indemnity, Corp. v. Russeville Steele Co., Inc.*, 367 F.3d 831 (8th Cir. 2004).

[7] *Godlin v. Sybiron Int'l Corp.*, 222 F.3d 797, 799 (10th Cir. 2000).

[8] *MacGinntic v. Hobbs Group, L.L.C.*, 420 F.3d 1234, 1239 (11th Cir. 2005).

[9] While plants, employees and assets are the things *considered*, the *application* of the test itself is far more complex. Ultimately, a dissertation on how the Ninth Circuit test works is not necessary for purposes of this motion.

1107, 297 Fed. Appx. 690 (9th Cir. 7008) *cert. granted* ___ U.S. ___, 129 S.Ct. 2766 (June 8, 2009).[10] Oral arguments in the matter were recently heard on November 10, 2009.[11]

Ultimately, the Supreme Court will decide how the courts of this country determine where a corporation's "place of business" is located. NCS respectfully submits that the Court ought to stay this matter until the Supreme Court has decided this question and, then, thereafter, reconsider its Order in light of the Supreme Court's opinion. Certainly this Court could simply apply the Sixth Circuit test and proceed with the case (as noted above). That avenue, however, is fraught with potential peril should the Supreme Court of the United States opt for a different test which commands a different result. The better course is to issue a decision that is evaluated with guiding principles having the finality that only the Supreme Court can provide.

## II. THE COURT SHOULD RECONSIDER WHETHER TO TRANSFER THE ENTIRETY OF THIS ACTION TO THE CENTRAL DISTRICT OF CALIFORNIA.

NCS respectfully submits that the Court should also reconsider its decision not to transfer the entire action. Pursuant to the Court's order, three defendants (Connexus, Firstlook and Basic Fusion) have been dismissed for lack of personal jurisdiction, which means that Plaintiff is free to file a second lawsuit against these Defendants in a proper jurisdiction. NCS remains in the action. The Court's Order creates a situation where, now, the parties must litigate on two fronts: in California *and* in Michigan. Absent some sort of consolidation, they must now produce witnesses twice, produce duplicative documents twice, issue their own redundant discovery

---

[10] The petition for *certiorari* in *Hertz*, which discussed the circuit split and respective tests in more detail, can be found at 2009 WL 559328.

[11] A copy of the transcript of the oral argument can be found at 2009 WL 3750778.

8

twice, and so on. And, of course, Plaintiff can arrange to have two bites at the proverbial apple. It can simply wait to file the second lawsuit until this case is completed if *res judicata* and collateral estoppel are ignored. And, should it lose this case, it can simply tweak its trial strategy and try again despite issue preclusion rules. None of the foregoing facts are in the interest of justice.

> The Third Circuit explains why this is so:
>
> In the situation where venue is proper for one defendant but not for another and dismissal is inappropriate, the district court has a choice. One option is to transfer the entire case to another district that is proper for both defendants. Another alternative is to sever the claims, retaining jurisdiction over one defendant and transferring the case as to the other defendant to an appropriate district. In *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.* [], we adopted the position "that [the court] should *not* sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places." When the conduct of a co-defendant as to whom venue is proper is central to the issues raised by the plaintiff against those subject to transfer, the grant of a severance would *not* ordinarily be consistent with the sound exercise of discretion.

*Cottman Transmission Sys., Inc. v. Martino*, 36 F.3d 291, 296 (3d Cir. 1994) (emphasis added). Notably, this very Court previously relied on *Cottman* to transfer a case where venue was proper for one defendant but not another. *U.S. v. Johnson Controls, Inc. (Ex rel. Hadid)*, 2005 WL 1630098 (E.D. Mich. 2005) (noting that conduct of RMS was central to the claims raised in the complaint and transferring the entire action to the Northern District of Florida).

Unfortunately, the Order in this case runs directly contrary to the principles established in *Cottman* and acknowledged by this very Court in *Hadid*. This action is the prototype for a full transfer. First, this is a case about the registration and use of domain names, and the Complaint alleges that NCS is the registrant of the domain names, FirstLook is the monetization company for the domain names, and Basic Fusion is the registrar of the domain names. Complaint at ¶¶

48-55. Plaintiff plans to conduct discovery as to each of these entities to prove its case. Moreover, Plaintiff's claims and theories of recovery are identical as to all Defendants.

Second, Plaintiff has already alleged that all Defendants are inexorably intertwined so it ought not now be able to argue that its claims as to NCS are different in nature or scope as its claims to the remaining defendants. *See, e.g.,* Complaint at ¶ 58 ("Defendants are working together or have worked together to conceive, design, conspire and commit the unlawful activities complained of in this Complaint.") and Complaint at ¶ 59 (pleading alter ego and aiding and abetting). In fact, Plaintiff believes that the actions of the Defendants are *so* intertwined that it attempted to get jurisdiction over all the Defendants through a theory of "conspiracy jurisdiction" which would have allowed the Court to get jurisdiction over a defendant that has no relationship with Michigan whatsoever, merely because of its relationship with another defendant. Plaintiff's Response to Motion at 16-17. If the Defendants are that intertwined, then a transfer of the entire case is in order simply as a matter of judicial economy.

Third, as explained, above, retaining jurisdiction over NCS will simply result in requiring the exact same issues to be litigated in two different forums. As the Third Circuit noted, allowing that negation of issue preclusion to happen "would not ordinarily be consistent with the sound exercise of discretion." *Cottman*, 36 F.3d at 296.

## Conclusion

Plaintiff did not meet its burden of proving that the effects test was met. Both the law and equity make clear that NCS cannot be forced to defend itself in Michigan when NCS did not expressly aim its conduct at Michigan, nor know that its conduct would cause harm in Michigan.

Transferring this entire case to the Central District of California represents a solid alternative for the Court. It avoids duplicative litigation and allows the case to proceed on the merits as quickly as possible. The Court may also elect to wait until the Supreme Court decides *Hertz* to see if jurisdiction over NCS is proper; and *Hertz* may require that this entire matter be transferred to California.

For the foregoing reasons, NCS respectfully requests that the Court reconsider its Order on the Motion to Dismiss and either (i) dismiss NCS should the Court determine that Plaintiff's principal place of business is in California or (ii) transfer the entire action to the Central District of California.

RESPECTFULLY SUBMITTED this 25th day of November, 2009.

/s/ William A. Delgado
William A. Delgado
WILLENKEN WILSON LOH & LIEB LLP
Lead Counsel for Defendants
williamdelgado@willenken.com

/s/ John P. Jacobs
John P. Jacobs (P15400)
JACOBS AND DIEMER, P.C.
Local Counsel for Defendants
jpj@jacobsdiemer.com

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
a Michigan corporation,

    Plaintiff,

vs.

NAVIGATION CATALYST SYSTEMS, INC.,
a Delaware corporation; BASIC
FUSION, INC., a Delaware corporation;
CONNEXUS CORP., a Delaware
corporation; and FIRSTLOOK, INC., a
Delaware corporation,

    Defendants.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

| | |
|---|---|
| Anthony P. Patti (P43729)<br>HOOPER, HATHAWAY PRICE<br>BEUCHE & WALLACE<br>Attorney for Plaintiff<br>126 S. Main Street<br>Ann Arbor, MI 48104<br>(734) 662-4426<br>apatti@hooperhathaway.com<br><br>Brian A. Hall (P70865)<br>Enrico C. Schafer (P43506)<br>Attorneys for Plaintiff<br>TRAVERSE LEGAL PLC<br>810 Cottageview Drive, Suite G-30<br>Traverse City, MI 49684<br>(231) 932-0636<br>brianhall@traverselegal.com<br>enrico@traverselegal.com | John P. Jacobs (P15400)<br>JACOBS AND DIEMER, P.C.<br>Local Counsel for Defendants<br>500 Griswold Street, Suite 2825<br>Detroit, MI 48226-3480<br>(313) 965-1900<br>jpj@jacobsdiemer.com<br><br>William A. Delgado<br>WILLENKEN WILSON LOH & LIEB LLP<br>Lead Counsel for Defendants<br>707 Wilshire Blvd., Suite 3850<br>Los Angeles, CA 90017<br>(213) 955-9240<br>williamdelgado@willenken.com |

**PROOF OF SERVICE**

# PROOF OF SERVICE

STATE OF MICHIGAN )
                  )SS
COUNTY OF WAYNE   )

    This will certify that on November 25, 2009, John P. Jacobs electronically filed the Motion for Reconsideration and Memorandum of Points and Authorities with the Clerk of the Court using the ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Anthony P. Patti (P43729)<br>HOOPER, HATHAWAY PRICE BEUCHE<br>    & WALLACE<br>Attorney for Plaintiff<br>126 S. Main Street<br>Ann Arbor, MI 48104<br>(734) 662-4426<br>apatti@hooperhathaway.com | William A. Delgado<br>WILLENKEN WILSON LOH & LIEB LLP<br>Lead Counsel for Defendants<br>707 Wilshire Blvd., Suite 3850<br>Los Angeles, CA 90017<br>(213) 955-9240<br>williamdelgado@willenken.com |
| Brian A. Hall (P70865)<br>Enrico C. Schafer (P43506)<br>TRAVERSE LEGAL PLC<br>Attorneys for Plaintiff<br>810 Cottagview Drive, Suite G-30<br>Traverse City, MI 49684<br>(231) 932-0636<br>enrico@traverselegal.com<br>brianhall@traverselegal.com | |

                                          SO CERTIFIED.

                                          Respectfully submitted,

                                          /s/John P. Jacobs
                                          John P. Jacobs (P15400)
                                          JACOBS AND DIEMER, P.C.
                                          Local Counsel for Defendants
                                          500 Griswold Street, Suite 2825
                                          Detroit, MI 48226-3480
                                          (313) 965-1900
                                          jpj@jacobsdiemer.com