IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
   a Michigan corporation,

      Plaintiff,

                                 Case No. 2:09-CV-10756

vs.                                Hon. Marianne O. Battani

NAVIGATION CATALYST SYSTEMS, INC.,
   a Delaware corporation; BASIC FUSION, INC.,
   a Delaware corporation; CONNEXUS CORP.,
   a Delaware corporation; and FIRSTLOOK, INC.,
   a Delaware corporation,

      Defendants.

_____

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI 49686
231-932-0411
enrico.schaefer@traverselegal.com
brianhall@traverselegal.com
Lead Attorneys for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI 48104
734-662-4426
apatti@hooperhathaway.com
Attorneys for Plaintiff

William A. Delgado (*pro hac vice*)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

John P. Jacobs (P15400)
JACOBS AND DIEMER, P.C.
500 Griswold Street, Suite 2825
Detroit, MI 48226-3480
(313) 965-1900
jpj@jpjpc.com
Local Counsel for Defendants

_____

## NAVIGATION CATALYST SYSTEMS, INC.'S PROPOSED DISCOVERY PLAN

      Defendant Navigation Catalyst Systems, Inc. ("NCS"), by and through its

counsel, Willenken Wilson Loh & Lieb, LLP files this proposed discovery plan.

**Meeting of Counsel.** A telephonic meeting was held on December 15, 2009. Enrico Schaefer participated in the meeting for Plaintiff; William Delgado participated for Defendants. During the conference, Defendant's counsel noted that he would review the draft Joint Discovery Plan to be sent by Plaintiff's counsel and that he would need to talk to his client to determine what would be a realistic set of dates. The day after receiving the draft plan from Plaintiff's counsel, Defendant's counsel reiterated his need to talk to his client who was out of the country (see Exhibit A hereto). At no point in time during the initial conference call (or thereafter) did Plaintiff's counsel state that Plaintiff was intending to serve a set of Initial Disclosures identifying 180 different persons and entities potentially having knowledge about this case. That information would have been useful to know as the number of potential deponents plays a significant role in determining the proper scope and timing of discovery.

After conferring with NCS and receiving Plaintiff's Initial Disclosures, Defendant's counsel continued the meet and confer process because he anticipated a significant disagreement as to timing (see Exhibits A to C to Plaintiff's Discovery Plan). However, Plaintiff ignored Defendant's counsel's letter of January 4, 2010, failed to explain how it planned to meaningfully handle discovery after disclosing 180 potential witnesses, unilaterally discontinued any further communication, and simply filed its own proposal on January 5, 2010.

Ostensibly, Plaintiff decided to foreclose the meet and confer process because of its belief that the Joint Plan was due on December 29, 2009. Defendant did not believe that to be the case because the Court's Notice of Scheduling Conference specifically

states that "[t]he joint discovery plan may be submitted to the Court ***at the conference*** or electronically filed as noted below. In the event the parties cannot agree on a plan, each side must submit a proposed plan ***at the conference***." (Emphasis added). Given this language in the Court's order and the fact that the parties were still meeting and conferring, Defendant's counsel anticipated continuing this process throughout the week. Ultimately, whatever agreements that were reached could be presented to the Court at the conference while at the same time explaining to the Court the basis for the parties' disagreements and their respective proposals.

Having that process foreclosed to it as a result of Plaintiff's filing, however, Defendant will simply submit its own proposal at this point and stand ready to answer any of the Court's questions as to timing and scope of discovery at the conference.

### 1. Initial Disclosures Required by Fed. R. Civ. P. 26(a)(1).

The parties agreed to provide such by January 4, 2010 to each other. Defendant timely served its Initial Disclosures on that date.

### 2. Discovery Plan: Timing as to Commencement of Discovery.

On November 25, 2009, NCS timely filed its Motion for Reconsideration on the Court's Order on the NCS Defendants' Motion to Dismiss. That Motion for Reconsideration is still pending. NCS has not yet filed an Answer responding to the allegations in the Complaints nor has it set forth its Affirmative Defenses. In its Motion for Reconsideration, NCS requested that the Court fully analyze the question of whether Plaintiff's principal place of business is truly in Michigan before applying the "effects test" of personal jurisdiction or, in the alternative, transfer the entirety of this matter to

the Central District of California where jurisdiction exists as to all putative Defendants. As noted, below, Plaintiff itself admits (by identifying various employees as witnesses) that at least 11 of its employee-witnesses are employed in California and that it has documents relevant to this case in California.

NCS respectfully requests that no discovery take place until the Motion for Reconsideration is resolved and the pleadings in this matter are finalized. As pointed out in the Motion for Reconsideration, if the application of the "principal place of business" test results in Plaintiff having a principal place of business in CA, then there is no personal jurisdiction over NCS in Michigan and any discovery that would have taken place would be improper and objectionable. Rather than commit the parties to a vastly expensive enterprise, the Court should stay discovery until a resolution on the pleadings is reached.

**3.    Discovery Plan: Scope and Timing of Each Phase.**

NCS proposes to the Court the following discovery plan:

(a)    Discovery will be needed on the following subjects: (i) the validity of Plaintiff's trademarks; (ii) the likelihood of confusion between Plaintiff's marks and the accused domain names, an analysis which typically includes: the strength of Plaintiff's marks, the parties' marketing channels and the extent of overlap, if any; the relatedness of the parties' goods; evidence of actual confusion, if any; the degree of consumer care; the defendants' intent; and the likelihood of product expansion; and (iii) the Defendant's method of domain name registration.

(b)    Once fact discovery is permitted to commence, NCS proposes that the Court allow a period of twelve (12) months for fact discovery. While NCS understands that this period may, at first, seem significant, it becomes evident that, in fact, it is actually quite compact when one considers the breadth of the discovery proposed by Plaintiff.[1]

In its Initial Disclosures, attached hereto as Exhibit B, Plaintiff identifies one hundred eighty (180) individuals and entities that have knowledge relevant to this matter. These 180 witnesses are scattered across, approximately, 28 different states[2] in the United States of America, the United Kingdom, the Netherlands, and Cyprus. Obtaining discovery from these foreign witnesses is an exercise that, alone, will take months. In addition, Plaintiff identified 35 different *categories* of documents in its possession alone located in 4 different locations (including California).

Moreover, during the meet and confer process, Plaintiff indicated that it would petition the Court to permit as many written depositions of third parties as is "necessary" which essentially is limitless. In the Discovery Plan it ultimately submitted, Plaintiff has pared down this request to seventy-five (75) written depositions. While NCS would oppose either proposition, should the Court permit Plaintiff to conduct this discovery,

---

[1] Of course, to the extent that Plaintiff's attempt to take a significant amount of irrelevant third party discovery is foreclosed as NCS would prefer, then a smaller time period would be acceptable.

[2] Notably, nearly 50 witnesses are located in California. Of the witnesses listed that are Plaintiff's employees, at least 11 (Alan Steremberg, Chris Schwerzler, Richard Lowden, Chuck Prewitt, Brendan Hayes, Eric Strong, Aaron Cowdin, Elaine Yang, Jessica Parker, Shaun Tanner, and Todd Henry) appear to reside in California based on statements on Plaintiff's website.

there would be a significant number of potential fact witnesses and various documents, and it will require at least 12 months to sift through both.

(c)     The parties shall conduct discovery as provided in the Federal Rules of Civil Procedure with enlargements to be considered on a case-by-case basis.  NCS opposes Plaintiff's out-of-the-gate request for 75 written depositions of third parties. Plaintiff's focus on 15 USC § 1125(d)(1)(B)(i)(VIII) is divorced from the statute's legislative history which reveals that the intent of the statute is to deter cybersquatters holding domain names for ransom, i.e. for the sole purpose to profit from selling the domains back to the rightful owner, not to punish registrants using an automated process which did not exist and was not contemplated by Congress at the time of enactment of the statute.  Accordingly, holding a domain name for ransom might be evidence of "bad faith" under the statute, but the errant registration of a domain name would not be.  Indeed, for purposes of this case, discovery into the existence of third party marks which may or may not be generic, which may or may not be descriptive, which may or may not be abandoned, which may or may not have secondary meaning, which may or may not have a "fair use," etc. would be an expensive and utterly irrelevant exercise.

(d)     Expert Discovery:

Each party should provide Initial Expert Disclosures and Reports on issues on which they carry the burden of proof within 14 days of the fact discovery cut-off.

Expert Depositions will take place within 30 days following initial expert disclosures or as agreed upon by the parties.

Rebuttal expert disclosures are due within 14 days following the close of expert depositions.

Rebuttal Expert depositions will take place within 30 days following rebuttal expert disclosures or as agreed upon by the parties after which expert discovery will be deemed closed.

**(3)    Other Items:**

(a)    Parties should be allowed until two months after the pleadings are finalized to join additional parties and to amend the pleadings.

(b)    All potentially dispositive motions should be filed within 30 days of the close of expert discovery.

(c)    Jury Trial:  A jury trial was timely demanded.  NCS estimates trial will occupy seven (7) days, provided there is a reasonable limitation on the presentation of evidence.

**(4)  Fed. R. Civ. P. 26(f)(4).  Any other orders that should be entered by the court under Rule 26(c) or under Rule 16(b) and (c).**

The parties contemplate proposing entry of a discovery protective order governing confidentiality in this action.  The parties will exchange drafts of a proposed order to be submitted to the Court.

**(5)  Case Evaluation under L.R. 16.3.**

A Case Evaluation Form will be filed with the Court. NCS elects facilitative mediation to be completed by July 1, 2010.

**(6) Electronic Discovery**

Counsel have discussed the disclosure and preservation of electronically stored information, including but not limited to, the form or forms in which such data will be produced. The parties agree to the following procedures for preservation, disclosure and management of electronically stored information: The parties shall take all reasonable steps to ensure the preservation of electronically stored information; such information shall be considered encompassed within the parties' propounded discovery requests; in the event that any propounded discovery request is alleged to be burdensome by virtue of the need to search, review, and/or produce electronically stored information, the parties agree to attempt to work together in good faith to formulate cost-effective alternatives (including, but not limited to, the use of appropriate search terms); and the parties agree to confer in good faith on an appropriate, cost-effective form (i.e., electronic or hard-copy) and format for making productions. To the extent either party chooses to produce discovery information in electronic form, said information shall be produced in html, jpg, doc, pdf, txt or other comparable format on CDs, DVDs or external hard drives. Either party may request that data also be produced in its native format if reasonable and appropriate subject to court order. All documents produced by either party whether electronic or otherwise will contain a unique bates stamp for identification.

The parties are to preserve evidence material to the litigable issues in the above case and properly discoverable. This includes both paper and electronically stored information.

Dated this 6th day of January, 2010.

/s/William A. Delgado
William A. Delgado (admitted *pro hac vice*)
WILLENKEN WILSON LOH & LIEB, LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
*Lead Counsel for Defendants*

## <u>CERTIFICATE OF SERVICE</u>

   I hereby certify that on January 6, 2010, I electronically filed the foregoing paper with the Court using the ECF system which will send notification of such filing to the following:

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI  49686
231-932-0411
enrico.schaefer@traverselegal.com
brianhall@traverselegal.com
Lead Attorneys for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI  48104
734-662-4426
apatti@hooperhathaway.com
Attorneys for Plaintiff

John P. Jacobs (P15400)
JACOBS AND DIEMER, P.C.
500 Griswold Street, Suite 2825
Detroit, MI  48226-3480
(313) 965-1900
jpj@jpjpc.com
Local Counsel for Defendants

William A. Delgado (admitted *pro hac vice*)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA  90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants


/s/William A. Delgado
William A. Delgado (admitted *pro hac vice*)
WILLENKEN WILSON LOH & LIEB, LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA  90017
(213) 955-9240
williamdelgado@willenken.com
*Lead Counsel for Defendants*