IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
  a Michigan corporation,

       Plaintiff,

vs.

                              Case No. 2:09-CV-10756
                              Hon. Marianne O. Battani

NAVIGATION CATALYST SYSTEMS, INC.,
  a Delaware corporation; BASIC FUSION, INC.,
  a Delaware corporation; CONNEXUS CORP.,
  a Delaware corporation; and FIRSTLOOK, INC.,
  a Delaware corporation,

       Defendants.
_____

| | |
|---|---|
| Enrico Schaefer (P43506) | William A. Delgado (*pro hac vice*) |
| Brian A. Hall (P70865) | WILLENKEN WILSON LOH & LIEB LLP |
| TRAVERSE LEGAL, PLC | 707 Wilshire Boulevard, Suite 3850 |
| 810 Cottageview Drive, Unit G-20 | Los Angeles, CA  90017 |
| Traverse City, MI  49686 | (213) 955-9240 |
| 231-932-0411 | williamdelgado@willenken.com |
| enrico.schaefer@traverselegal.com | Lead Counsel for Defendants |
| brianhall@traverselegal.com | |
| Lead Attorneys for Plaintiff | Nicholas J. Stasevich (P41896) |
| | Benjamin K. Steffans (P69712) |
| Anthony P. Patti (P43729) | BUTZEL LONG, P.C. |
| HOOPER HATHAWAY, PC | 150 West Jefferson, Suite 100 |
| 126 South Main Street | Detroit, MI  48226 |
| Ann Arbor, MI  48104 | (313) 225-7000 |
| 734-662-4426 | stasevich@butzel.com |
| apatti@hooperhathaway.com | steffans@butzel.com |
| Attorneys for Plaintiff | Local Counsel for Defendants |

_____

**NAVIGATION CATALYST SYSTEMS, INC.'S MOTION FOR PROTECTIVE ORDER**

# MOTION FOR PROTECTIVE ORDER

TO THIS HONORABLE COURT, ALL PARTIES, AND THEIR ATTORNEYS OF RECORD:

PLEASE TAKE NOTICE THAT, pursuant to Fed. R. Civ. P. 26(c), Defendant Navigation Catalyst Systems, Inc. hereby moves this Court for a protective order prohibiting Plaintiff The Weather Underground, Inc. from sending out certain subpoenas to third party witnesses. This Motion is based on the facts and arguments set forth in the accompanying Memorandum of Points and Authorities; to wit, that the subpoenas issued by Plaintiff to third parties (and subpoenas to be issued) are overbroad, seek irrelevant documents, and are intended solely to embarrass and harass NCS.

This Motion is supported by the attached Memorandum of Points and Authorities, the Declaration of William A. Delgado filed concurrently herewith, the case file, and the arguments of counsel that the Court would entertain at a hearing on this motion.

On February 3, 2010, there was a conference between William A. Delgado, counsel for NCS, and Enrico Schaefer, counsel for Plaintiff, in which NCS explained the nature of the motion, its legal basis and requested, but did not obtain, concurrence in the relief sought.

RESPECTFULLY SUBMITTED this 8th day of February, 2010.

> /s/William A. Delgado
> William A. Delgado (admitted *pro hac vice*)
> WILLENKEN WILSON LOH & LIEB, LLP
> 707 Wilshire Boulevard, Suite 3850
> Los Angeles, CA 90017
> (213) 955-9240
> williamdelgado@willenken.com
> Lead Counsel for Defendants

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
   a Michigan corporation,

       Plaintiff,

vs.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

NAVIGATION CATALYST SYSTEMS, INC.,
   a Delaware corporation; BASIC FUSION, INC.,
   a Delaware corporation; CONNEXUS CORP.,
   a Delaware corporation; and FIRSTLOOK, INC.,
   a Delaware corporation,

       Defendants.
_____

| | |
|---|---|
| Enrico Schaefer (P43506) | William A. Delgado (*pro hac vice*) |
| Brian A. Hall (P70865) | WILLENKEN WILSON LOH & LIEB LLP |
| TRAVERSE LEGAL, PLC | 707 Wilshire Boulevard, Suite 3850 |
| 810 Cottageview Drive, Unit G-20 | Los Angeles, CA 90017 |
| Traverse City, MI 49686 | (213) 955-9240 |
| 231-932-0411 | williamdelgado@willenken.com |
| enrico.schaefer@traverselegal.com | Lead Counsel for Defendants |
| brianhall@traverselegal.com | |
| Lead Attorneys for Plaintiff | Nicholas J. Stasevich (P41896) |
| | Benjamin K. Steffans (P69712) |
| Anthony P. Patti (P43729) | BUTZEL LONG, P.C. |
| HOOPER HATHAWAY, PC | 150 West Jefferson, Suite 100 |
| 126 South Main Street | Detroit, MI 48226 |
| Ann Arbor, MI 48104 | (313) 225-7000 |
| 734-662-4426 | stasevich@butzel.com |
| apatti@hooperhathaway.com | steffans@butzel.com |
| Attorneys for Plaintiff | Local Counsel for Defendants |

_____

**MEMORANDUM OF POINTS AND AUTHORITIES**

**Statement of the Issue Presented**

Whether Plaintiff should be permitted to issue subpoenas to third parties unrelated to this litigation where those subpoenas: (i) are overbroad, (ii) seek irrelevant documents, (iii) seek documents in Defendant's possession, and (iv) are intended to embarrass and harass Defendant? Defendant Navigation Catalyst Systems, Inc. ("NCS") respectfully submits that the answer is "no" and asks this Court to issue an order protecting NCS from such subpoenas.

## Controlling Authority

The controlling authority for this motion is Fed. R. Civ. P. 26(c) which permits a court to grant a protective order.

**Introduction**

This is a lawsuit for trademark infringement. At issue in this motion are six nearly-identical subpoenas issued to third parties. These subpoenas seek documents related to the third parties' trademarks, the third parties' knowledge of NCS, the third parties' communications with NCS, etc. Put simply, the documents are silent as to the facts of *this* case and whether NCS has violated *this particular Plaintiff's* trademarks.

To justify these overbroad and irrelevant subpoenas, Plaintiff relies on a statutory provision within the trademark statute. As explained below, however, even if that statutory provision were applicable in this case, the subpoenas, as drafted, go far beyond what the statute envisions.

Rather, the true purpose of these subpoenas is self-evident: they are suggestions to these third parties that NCS has also violated their trademarks and invitations to file suit against NCS as well. By maximizing the number of lawsuits against NCS, Plaintiff can deplete NCS's limited resources, thereby depriving it of the opportunity to defend itself in this case.

Because these subpoenas are overbroad, irrelevant, and harassing, NCS respectfully requests that the Court issue an order protecting NCS from the issued subpoenas and subpoenas contemplated by the Plaintiff that are similar in nature.

//

//

## Statement of Facts

Plaintiff has filed this trademark infringement lawsuit alleging that Defendant NCS (and other companies[1]) purposefully registered and monetized domain names that were similar to Plaintiff's trademarks with a "bad faith" intent to profit from those domain names, in violation of the Lanham Act and, particularly, the Anti-Cybersquatting Protection Act ("ACPA") (15 U.S.C. § 1125(d)).

At the scheduling conference in this matter on January 11, 2010, Plaintiff took the position that extensive third party discovery is required because one of the statutory factors that can be evidence of "bad faith" for purposes of the ACPA is the registration of multiple domain names that are identical or confusingly similar to the mark of others, citing 15 U.S.C. § 1125(d)(1)(B)(i)(VIII).[2] Declaration of William A. Delgado, dated February 8, 2010 ("Delgado Decl.") at ¶ 2. Defendant disagreed with the application of the Statutory Factors in a case such as this one where the domain name registration was the result of an automated computer system. *Id.* at ¶ 3.

Notwithstanding Defendant's position as to the non-applicability of the Statutory Factors, on January 14, 2010, Defendant's counsel reached out to Plaintiff's counsel to offer a plan by which Defendant could provide the information Plaintiff sought for purposes of Statutory Factor 8 (either because it was in NCS's possession, custody, and/or control or easily stipulated to)

---

[1] These other companies—FirstLook, Basic Fusion, and Connexus Corporation—have all been dismissed from this case because there is no personal jurisdiction over them in this judicial district.

[2] For ease of reference, NCS will refer to the factors set forth in 15 U.S.C. § 1125(d)(1)(B) as the "Statutory Factors" and will refer to the particular factor at issue here (15 U.S.C. § 1125(d)(1)(B)(i)(VIII)) as "Statutory Factor 8."

without having Plaintiff send out a set of burdensome subpoenas to third parties. *Id*. at ¶ 4. Defendant's counsel received no reply whatsoever. *Id*.

On February 1, 2010, Plaintiff served Defendant with a Notice of Intent to Serve Subpoena for six different companies: Facebook, Yahoo! (for the mark Flickr), Netflix, Google (for the mark Orkut), Wikimedia Foundation (for the mark Wikipedia), and YouTube. *Id.* at ¶ 5. Each of the subpoenas is essentially the same. It identifies a domain name(s) that Plaintiff defines as a "Typo Domain" and then enumerates six (6) requests for documents:

1. Any and all Documents which reflect or establish trademark registrations related to <third party's domain name> and/or <third party's trademark> and/or variations thereof.

2. Any and all Documents reflecting permission or license granted by You to NCS, which would (a) allow them to register/own the Typo Domains or (b) display paid advertisements on the web pages displayed on the Typo Domains.

3. Any and all Documents indicating whether You were aware of NCS's registration of the Typo Domains.

4. Any and all notice, cease and desist and/or threat letters sent by You to NCS regarding assertions or allegations of trademark rights, trademark infringement, trademark dilution or cybersquatting concerning the Typo Domains or any other domains registered by NCS.

5. Any and all Documents reflecting communication between you and NCS regarding any domain name or trademark issue.

6. Any and all lawsuits, arbitrations or other adversarial proceedings brought by You against NCS either related or unrelated to the Typo Domains.

After receiving the Notices of Intent to Serve Subpoena, Defendant's counsel informed Plaintiff that it would bring this motion and met and conferred regarding same. *Id*. at ¶ 6.

**Argument**

I. **NCS MERITS AN ORDER PROTECTING IT FROM THE SUBPOENAS ISSUED BY PLAINTIFF.**

   A. **NCS Can Seek a Protective Order Against Overbroad, Irrelevant, and Harassing Subpoenas.**

"A party…may move for a protective order in the court where the action is pending… The court may, for good cause, issue an order to protect a party or person from annoyance, embarrassment, oppression, or undue burden or expense, including one or more of the following:…(D) forbidding inquiry into certain matters, or limiting the scope of disclosure or discovery to certain matters." Fed. R. Civ. P. 26(c)(1).

"A party can move for a protective order in regard to a subpoena issued to a non-party if it believes its own interests are jeopardized by discovery sought from a third party and has standing under Rule 26(c) to seek a protective order regarding subpoenas issued to non-parties which seek irrelevant information." *In re Remec, Inc. Securities Lit.*, 2008 WL 2282647 *1 (S.D. Cal.)[3]; *see also In re: Ashworth, Inc. Securities Lit.*, 2002 WL 33009225 *1 (S.D. Cal.) (finding that defendants can seek "protective order against plaintiffs' attempts to obtain overbroad and irrelevant discovery from third parties based on their status as parties"); *Auto-*

---

[3] Unpublished opinions have been attached as exhibits to this document.

*Owners Ins. Co. v. Southeast Floating Docks, Inc.*, 231 F.R.D. 426, 429 (M.D. Fla. 2005) ("As parties, Defendants clearly have standing to move for a protective order if the subpoenas seek irrelevant information.").

The scope of discovery is governed by Rule 26 which allows "discovery regarding any matter, not privileged, which is relevant to the subject matter of the litigation." Fed. R. Civ. P. 26(b)(1). However, "[d]iscovery of matter 'not reasonably calculated to lead to discovery of admissible evidence' is not within the scope of Rule 26(b)(1)." *Oppenheimer Fund v. Sanders*, 437 U.S. 340, 351-52, 98 S. Ct. 2380, 57 L. Ed. 2d 253 (1978). And even as to those matters which are relevant, "[d]iscovery requests that are otherwise reasonable may also be limited for the following reasons: (i) the discovery sought is unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Auto-Owners*, 231 F.R.D. at 430.

### B. The Issued Subpoenas Are Overbroad and Irrelevant and Seek Information More Easily Obtained Elsewhere.

Since Plaintiff's desire for third-party discovery is premised on the Statutory Factors of the ACPA, it is important to understand what Statutory Factor 8 actually says:

> In determining whether a person has a bad faith intent described under subparagraph (A), a court may consider factors such as, but not limited to— (viii) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at

> the time of registration of such domain names, without regard to the goods or services of the parties.

15 U.S.C. § 1125(d)(1)(B)(viii). As the statute makes clear, this is one factor that the Court *may*—but is not required to—take into account in determining "bad faith" under the ACPA. Although Defendant intends to argue that this factor is inapplicable in this case, for purposes of this motion, Defendant will assume that this factor *is* applicable. Even so, Statutory Factor 8 only requires two things: (i) that NCS have registered multiple domain names and (ii) that these domain names are identical or confusingly similar to a distinctive or famous mark of another. Neither of these elements requires Plaintiff to send a subpoena to a third party. Plaintiff can obtain information as to the domain names registered by NCS *from* NCS. And, the owner of a registered mark is a matter of public record obtainable from the United States Patent and Trademark Office.

Not surprisingly, therefore, the document requests in the issued subpoenas are objectionable for a variety of reasons. Before examining each document request in turn, however, it is important to note that for purposes of the subpoena, Plaintiff defined "NCS" to include NCS and *other* companies (Connexus, Basic Fusion, and Firstlook) which have been dismissed from this case. That fact alone creates a set of document requests that are, on their face, overbroad and irrelevant, and merely intended to harass.

   1. <u>Document Request No. 1.</u>

Document Request No. 1 in the issued subpoenas calls for the production of "[a]ny and all Documents which reflect or establish trademark registrations related to <third party's domain name> and/or <third party's trademark> and/or variations thereof."

This request is objectionable for various reasons.  First, it is overbroad and irrelevant. Plaintiff could have simply asked these third parties for documents evidencing the trademarks in which they have rights.  Instead, it has asked for "any and all" documents which reflect or establish trademark registrations.  Such a request could needlessly require the production of irrelevant numerous documents.  Second, the United States Patent and Trademark Office maintains a public database of trademarks that have been applied for or registered, and it can be easily searched from an internet browser.  Delgado Decl. at ¶ 7.  There is no need to subpoena a third party for information that is publicly available and easily obtained.  Third, the parties could have easily worked out a stipulation as to whether a third party owns a particular mark or domain name, as NCS suggested to Plaintiff.  As stated, above, that information is public record and not subject to dispute.

    2.   Document Request No. 2.

Document Request No. 2 in the issued subpoenas calls for the production of "[a]ny and all Documents reflecting permission or license granted by You to NCS, which would (a) allow them to register/own the Typo Domains or (b) display paid advertisements on the web pages displayed on the Typo Domains."

The problem with this request is obvious.  Since it seeks an agreement between the third party and NCS, NCS (a party to the lawsuit) would have that agreement.  Indeed, Plaintiff has *already* asked NCS for such documents in Plaintiff's First Set of Requests for Production. Delgado Decl. at ¶ 8.  Clearly, then, this request should be prohibited because it is "unreasonably cumulative or duplicative, or is obtainable from some other source that is more convenient, less burdensome, or less expensive." *Auto-Owners*, 231 F.R.D. at 430.

3. Document Request No. 3.

Document Request No. 3 in the issued subpoenas calls for the production of "[a]ny and all Documents indicating whether You were aware of NCS's registration of the Typo Domains." This request is patently irrelevant. Statutory Factor 8 does not turn on whether the third party *knew* of NCS's registration of domain names. A *third party's* knowledge (or lack thereof) of these registrations is not at issue in this lawsuit, even when one considers Statutory Factor 8.

4. Document Request No. 4.

Document Request No. 4 in the issued subpoenas calls for the production of "[a]ny and all notice, cease and desist and/or threat letters sent by You to NCS regarding assertions or allegations of trademark rights, trademark infringement, trademark dilution or cybersquatting concerning the Typo Domains or any other domains registered by NCS."

This request is objectionable for various reasons. First, this request is irrelevant. Statutory Factor 8 does not turn on whether the third party sent a letter or not, whether NCS received the letter or not, or how, if it did receive a letter, NCS responded to that letter. Second, to the extent that the request calls for a letter sent to NCS, Plaintiff can ask NCS for such a letter. Lastly, to the extent that the request calls for letters sent to one of the other companies captured by the overbroad definition of "NCS" (i.e., Connexus, Firstlook and Basic Fusion), it is even more irrelevant since these parties not in this lawsuit.

5. Document Request No. 5.

Document Request No. 5 in the issued subpoenas calls for the production of "[a]ny and all Documents reflecting communication between you and NCS regarding any domain name or trademark issue."

Once again, this request is objectionable for various reasons.  <u>First</u>, this request is irrelevant.  Statutory Factor 8 does not turn on whether the third party and NCS communicated about "domain names" or "trademark issues."  <u>Second</u>, to the extent that the request calls for communications with NCS, Plaintiff can ask NCS for such communication.  <u>Third</u>, the request is overbroad since it asks for communications as to "all domain names" and "trademark issues" and not just the domain name that Plaintiff claims is confusingly similar to the subpoenaed party's mark.  <u>Lastly</u>, to the extent that the request calls for communications between the subpoenaed party and one of the other companies captured by the overbroad definition of "NCS" (i.e., Connexus, Firstlook and Basic Fusion), it is even more irrelevant since these parties not in this lawsuit.

    6.  <u>Document Request No. 6</u>.

Document Request No. 6 in the issued subpoenas calls for the production of "[a]ny and all lawsuits, arbitrations or other adversarial proceedings brought by You against NCS either related or unrelated to the Typo Domains."

This request is also objectionable for various reasons.  <u>First</u>, this request is irrelevant.  Statutory Factor 8 does not turn on whether the third party filed a lawsuit or not.  It is particularly irrelevant if the third party has filed a lawsuit against NCS that is "unrelated to the Typo Domains."  <u>Second</u>, and for the same reason, the request is overbroad.  If the parties had been involved in a breach of contract dispute, for example, this request would capture documents related to that lawsuit even though such documents would not be useful in this lawsuit at all.  <u>Third</u>, to the extent that the request calls for lawsuits filed against NCS, Plaintiff can ask NCS for such documents about such lawsuits.  <u>Fourth</u>, lawsuits and UDRP proceedings are a matter of

publicly record and can be researched through publicly-available databases that can be accessed through the Internet (e.g., PACER).  <u>Lastly</u>, to the extent that the request calls for lawsuits between the subpoenaed party and one of the other companies captured by the overbroad definition of "NCS" (i.e., Connexus, Firstlook and Basic Fusion), it is even more irrelevant since these parties not in this lawsuit.

## II.     PLAINTIFF'S SUBPOENAS ARE ACTUALLY MEANT TO HARASS.

As noted, above, as a party to this lawsuit, NCS can prevail on its request for a protective order by showing that Plaintiff's subpoenas are irrelevant and/or overbroad.  That is clearly the case.  But, it is also the case that Plaintiff's subpoenas are harmful to NCS.

The true purpose of these subpoenas is to harass NCS and the related entities which have been dismissed by the Court.  Statutory Factor 8 does not care about whether the subpoenaed parties knew of NCS, sent NCS a letter, or sued NCS.  And, even if it did, Plaintiff could have, and should have, simply asked NCS for such documents.  But, doing so would have prevented Plaintiff from achieving its true goal: instigating further lawsuits against NCS.  Plaintiff did not issue those subpoenas to aid in its search for truth. (After all, do you really need to subpoena Facebook to determine that the company has a mark, FACEBOOK?)  Rather, Plaintiff issued those subpoenas as a "Hey, thought you might like to know…" to these third parties, undoubtedly hopeful that at least some of them might conclude "Well, we haven't sued NCS but maybe we should."  If such lawsuits were filed, NCS's limited resources would be further consumed, thereby depriving it of its ability to defend itself in *this* lawsuit.  And, of course, if

Plaintiff's counsel were asked to bring such a suit (since they are the ones that "sounded the alarm"), then so much the better for them.

The Court should not permit this. Discovery is intended to aid in the discovery of truth, not as a mechanism to instigate other lawsuits against your opponent or as a clever marketing device for lawyers. Allowing these issued subpoenas to stand will unnecessarily embarrass and harass NCS (and the entities that Judge Battani dismissed prior to the issuing of such subpoenas) without aiding in the resolution of a single issue in this case.

## Conclusion

Plaintiff has issued six subpoenas that are overbroad, irrelevant, and harassing. The Court should issue a protective order requiring Plaintiffs to withdraw the subpoenas or, at a minimum, limiting the subpoenas to Document Request No. 1 and further prohibiting Plaintiff from issuing subpoenas of this nature to third parties again.

RESPECTFULLY SUBMITTED this 8th day of February, 2010.

*/s/William A. Delgado*
William A. Delgado (admitted *pro hac vice*)
WILLENKEN WILSON LOH & LIEB, LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

**CERTIFICATE OF SERVICE**

      I hereby certify that on February 8, 2010, I electronically filed the foregoing paper with the Court using the ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Enrico Schaefer (P43506) | Nicholas J. Stasevich (P41896) |
| Brian A. Hall (P70865) | Benjamin K. Steffans (P69712) |
| TRAVERSE LEGAL, PLC | BUTZEL LONG, P.C. |
| 810 Cottageview Drive, Unit G-20 | 150 West Jefferson, Suite 100 |
| Traverse City, MI 49686 | Detroit, MI 48226 |
| 231-932-0411 | (313) 225-7000 |
| enrico.schaefer@traverselegal.com | stasevich@butzel.com |
| brianhall@traverselegal.com | steffans@butzel.com |
| Lead Attorneys for Plaintiff | Local Counsel for Defendants |
| | |
| Anthony P. Patti (P43729) | William A. Delgado (admitted *pro hac vice*) |
| HOOPER HATHAWAY, PC | WILLENKEN WILSON LOH & LIEB LLP |
| 126 South Main Street | 707 Wilshire Boulevard, Suite 3850 |
| Ann Arbor, MI 48104 | Los Angeles, CA 90017 |
| 734-662-4426 | (213) 955-9240 |
| apatti@hooperhathaway.com | williamdelgado@willenken.com |
| Attorneys for Plaintiff | Lead Counsel for Defendants |

                                                  */s/William A. Delgado*
                                                  William A. Delgado (admitted *pro hac vice*)
                                                  WILLENKEN WILSON LOH & LIEB, LLP
                                                  707 Wilshire Boulevard, Suite 3850
                                                  Los Angeles, CA 90017
                                                  (213) 955-9240
                                                  williamdelgado@willenken.com
                                                  *Lead Counsel for Defendants*