IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
   a Michigan corporation,

       Plaintiff,

vs.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

NAVIGATION CATALYST SYSTEMS, INC.,
   a Delaware corporation; BASIC FUSION, INC.,
   a Delaware corporation; CONNEXUS CORP.,
   a Delaware corporation; and FIRSTLOOK, INC.,
   a Delaware corporation,

       Defendants.

_____

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI 49686
231-932-0411
enrico.schaefer@traverselegal.com
brianhall@traverselegal.com
Lead Attorneys for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI 48104
734-662-4426
apatti@hooperhathaway.com
Attorneys for Plaintiff

William A. Delgado (*pro hac vice*)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

Nicholas J. Stasevich (P41896)
Benjamin K. Steffans (P69712)
J. Michael Huget (P39150)
BUTZEL LONG, P.C.
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
stasevich@butzel.com
steffans@butzel.com
Local Counsel for Defendants

_____

# PLAINTIFF'S RESPONSE TO NAVIGATION CATALYST SYSTEM'S MOTION FOR PROTECTIVE ORDER

Defendant Navigation Catalyst Systems, Inc. ("NCS") filed a Motion for Protective Order to prohibit Plaintiff from sending out certain subpoenas to third parties. For the reasons herein, Plaintiff requests that said Motion be DENIED in whole.

## STATEMENT OF THE ISSUE PRESENTED

Whether NCS, as movant, has established good cause supported by specific facts rather than conclusory and speculative statements so as to justify this Court's issuing of a protective order to preclude Plaintiff's subpoenas to non-party, third party entities that requests documents relevant to both Plaintiff's claim under the Anti-cybersquatting Consumer Protection Act (15 U.S.C. § 1125(d)) and NCS's defenses to the same.

Plaintiff submits the answer is no, and Plaintiff urges this Court to deny Defendant's Motion.

## STATEMENT OF FACTS

Defendant NCS is engaged in a mass typosquatting scheme that targets distinctive, famous, and registered trademarks, including Plaintiff's incontestable marks, such as THE WEATHER UNDERGROUND and WUNDERGROUND.COM. NCS profits by attracting consumers with poor typing abilities to websites that display pay-per-click ("PPC") advertisements that lead to Plaintiff's competitors and other third-party advertisers. In an effort to establish Plaintiff's claim under the ACPA, Plaintiff must establish NCS's bad faith, as guided by the non-exclusive Statutory Factors under 15

U.S.C §1125. Those factors specifically include whether Defendant violates third-party trademarks as part of a pattern of cybersquatting. 15 U.S.C §1125(d) provides:

(d) Cyberpiracy prevention

(1)

(A) A person shall be liable in a civil action by the owner of a mark, including a personal name which is protected as a mark under this section, if, without regard to the goods or services of the parties, that person—

(i) has a bad faith intent to profit from that mark, including a personal name which is protected as a mark under this section; and

(ii) registers, traffics in, or uses a domain name that—

(I) in the case of a mark that is distinctive at the time of registration of the domain name, is identical or confusingly similar to that mark;

(II) in the case of a famous mark that is famous at the time of registration of the domain name, is identical or confusingly similar to or dilutive of that mark; or

(III) is a trademark, word, or name protected by reason of section 706 of title 18 or section 220506 of title 36.

(B)
(i) **In determining whether a person has a <u>bad faith intent</u> described under subparagraph (A), a court may consider factors such as, but not limited to—**

(I) the trademark or other intellectual property rights of the person, if any, in the domain name;

(II) the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person;

(III) the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services;

(IV) the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name;

(V) the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site;

(VI) the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct;

(VII) the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct;

**(VIII) the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar <u>to marks of others</u> that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties;** and

(IX) the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c). (Emphasis Added)

In this case, Defendant has registered scores of domains which are typographical variations of third party trademarks such as Wikipedua.org, Wikiperdia.com, Ikipedia.com, Wikipedika.com, Wikipwdia.com, Wikioedia.com, Facebooko.com, Facevbook.com, Favebook.com and Facebhook.com, Flikckr.com, Yourube.com, Y6outube.com, Youtubge.com, Youtune.net, Youthbe.com, Tyoutube.com, Neftflix.com, Huffinftonpost.com and many others. *See* **Exhibit \*A** for Michigan Companies who have been typosquatted by Defendant.

It is Plaintiffs position that these third party domains are trademark protected, and that Defendant knew they were trademark protected when they registered the domains and/or specifically designed software to target and register trademark protected domain names. Defendant specifically denies these allegations, especially that it engages in a pattern of habitual cybersquatting third party trademarks under bad faith factor 15 U.S.C §1125(d)(VIII). This is perhaps the central issue in this lawsuit.

Consistent with Rule 45, Plaintiff provided Notice of Intent to Serve Subpoenas to six different companies, including Facebook, Yahoo!, Netflix, Google, Wikimedia Foundation, and YouTube. *Id.* The subpoenas were substantially identical, with an example from Facebook below:

> 1. Any and all Documents which reflect or establish trademark registrations related to **facebook.com, facebook.org, and facebook.biz** and/or ***FACEBOOK*** and/or variations thereof.
>
> 2. Any and all Documents reflecting permission or license granted by You to NCS, which would (a) allow them to register/own the Typo Domains or (b) display paid advertisements on the web pages displayed on the Typo Domains.
>
> 3. Any and all Documents indicating whether You were aware of NCS's registration of the Typo Domains.
>
> 4. Any and all notice, cease and desist and/or threat letters sent by You to NCS regarding assertions or allegations of trademark rights, trademark infringement, trademark dilution or cybersquatting concerning the Typo Domains or any other domains registered by NCS.
>
> 5. Any and all Documents reflecting communication between you and NCS regarding any domain name or trademark issue.
>
> 6. Any and all lawsuits, arbitrations or other adversarial proceedings brought by You against NCS either related or unrelated to the Typo Domains.

*See* **Exhibit B: Example Subpoena sent to Facebook.** Plaintiff intends on sending further third party subpoenas to other companies being cybersquatted by Defendant in order to establish such key issues as third party trademark rights, Defendant's prior notice of third party trademark rights, dates of first use in commerce of third party trademarks in relation to domain registrations and habitual cybersquatting by Defendant. There is no limit on the number of subpoenas in the court rules. Nor should this court place artificial limits on the number of subpoenas which can be issued.

NCS's primary defenses pertain directly to the ACPA's requirement that NCS "has a bad faith intent to profit" from Plaintiff's marks. 15 U.S.C. § 1125(d)(1)(A)(i). To date, NCS's defenses include, without limitation:

(1) that the ACPA did not contemplate automated domain name registration software, and therefore, NCS could not have had a "bad faith intent to profit" (*See Def. Response to Motion to Compel Disclosures and for Sanctions*, p.3);

(2) NCS did not target trademarks (*See Def. Response to Motion to Compel Disclosures and for Sanctions*, p.3);

(3) NCS has taken efforts to prevent infringing domain name registrations, including the use of human screeners, the purchase of the United States Patent and Trademark Office database to screen against prior to registration, the use of compliance officers that blacklist particular brands, and the voluntary relinquishment of domain names upon request from trademark holders (***See Exhibit C,** Affidavit of Seth Jacoby, Case No. 2:08-CV-02463 ABC (Ex) June 16, 2008, ¶¶ 6-7, 17; see also NCS Answer ¶ 55*).

Despite Defendants denial of habitual 'bad faith' cybersquatting/Typosquatting of third party trademarks, Defendant appears to be arguing in this motion that it does not want third parties to be put on notice that it is violating their trademark rights. Arguing on one hand that it has done nothing unlawful and on the other for a protective order precluding third parties from receiving subpoenas which would put those third parties on notice that they were being cybersquatted is hard to reconcile.

Plaintiff has been forthright with its intention to utilize third party discovery to the extent necessary. In fact, in light of NCS's stated defenses, Plaintiff's undersigned counsel, Anthony Patti, provided one basis for the need for extensive third party discovery at the January 11, 2010 scheduling conference. In doing so, Plaintiff did not limit its basis for extensive third party discovery to Statutory Factor VIII. Moreover, Plaintiff's counsel has told counsel for Defendant its intention to a pattern of Typosquatting third party trademarks directly from third parties since the issue first arose.

## STANDARD OF REVIEW

Federal Rule of Civil Procedure 26 allows discovery of information that is relevant to a claim or defense. A court may limit discovery through a protective order, pursuant to Fed. R. Civ. P. 26(c) in order to protect "a party or person from annoyance, embarrassment, oppression, or undue burden or expense . . . ." However, in order to obtain a protective order, "the movant must establish good cause." *White Mule v. ATC Leasing Co. LLC*, 2008 U.S. Dist. LEXIS 51344 (D. Ohio 2008); *Nix v. Sword*, 11 F. App'x 498, 500 (6th Cir. 2001) (per curiam). "Good cause is established with "specific

facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements."" *Nix*, 11 F.App'x at 500 (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)); *see also Underwood v. Riverview of Ann Arbor*, 2008 U.S. Dist. LEXIS 107323 (D. Mich. 2008).

## **ARGUMENT**

At the outset, it should be noted that it is up to the parties receiving the subpoenas to object based on being overly broad or harassing. If these third parties have issues with the subpoenas they receive, they are the ones who are entitled to object. For this reason alone, the protective order requested by Defendant should be denied.

### I. The Subpoenas are Relevant to Plaintiff's Claims and Not Overbroad

Each of the six items Plaintiff requested as part of its subpoenas are relevant to either Plaintiff's ACPA claim or Defendant NCS's defenses. NCS's entire argument, as it relates to the documents subject to the subpoenas being irrelevant, pertains to Statutory Factor VIII. However, Plaintiff's subpoenas are neither required to be nor intended to be limited to Statutory Factor VIII. Rather, Plaintiff is entitled to the information requested as it is relevant to its claim, including all of the nine non-exclusive bad faith factors. In fact, Plaintiff is entitled to information that may not necessarily be one of the nine non-exclusive factors but otherwise supports its claims against NCS. *DaimlerChrysler v. Net Inc.*, 338 F.3d 201, 206 (6th Cir. 2004) ("The ACPA provides a list of nine non-exclusive factors that a court may consider in determining whether a bad faith intent to profit is established."). While counsel for Defendant at one point

facts showing 'clearly defined and serious injury' resulting from the discovery sought and cannot rely on mere conclusory statements."" *Nix*, 11 F.App'x at 500 (quoting *Avirgan v. Hull*, 118 F.R.D. 252, 254 (D.D.C. 1987)); *see also Underwood v. Riverview of Ann Arbor*, 2008 U.S. Dist. LEXIS 107323 (D. Mich. 2008).

## **ARGUMENT**

At the outset, it should be noted that it is up to the parties receiving the subpoenas to object based on being overly broad or harassing. If these third parties have issues with the subpoenas they receive, they are the ones who are entitled to object. For this reason alone, the protective order requested by Defendant should be denied.

### I. The Subpoenas are Relevant to Plaintiff's Claims and Not Overbroad

Each of the six items Plaintiff requested as part of its subpoenas are relevant to either Plaintiff's ACPA claim or Defendant NCS's defenses. NCS's entire argument, as it relates to the documents subject to the subpoenas being irrelevant, pertains to Statutory Factor VIII. However, Plaintiff's subpoenas are neither required to be nor intended to be limited to Statutory Factor VIII. Rather, Plaintiff is entitled to the information requested as it is relevant to its claim, including all of the nine non-exclusive bad faith factors. In fact, Plaintiff is entitled to information that may not necessarily be one of the nine non-exclusive factors but otherwise supports its claims against NCS. *DaimlerChrysler v. Net Inc.*, 338 F.3d 201, 206 (6th Cir. 2004) ("The ACPA provides a list of nine non-exclusive factors that a court may consider in determining whether a bad faith intent to profit is established."). While counsel for Defendant at one point

suggested that he might stipulate to third party trademarks, he has never done so. Even if so willing, it would not resolve the issue. The suggestion that Plaintiff should be forced to 'trust' Defendant to provide notice letters received from third parties is unfounded in law and, given Defendant's assertion that it has no employees, without credibility.

Before addressing NCS's arguments for each of the six items requested in the subpoenas, it is worth noting that NCS was defined to include Connexus, Basic Fusion, and Firstlook, all of whom were originally named defendants and have since been dismissed solely for lack of personal jurisdiction. NCS's Eleventh Affirmative Defense notes that any injury or damage was proximately caused by third parties over whom NCS had no authority or control. As such, it is entirely proper for Plaintiff to list companies with whom NCS has an apparent business relationship. The subpoenad documents rightfully include any party related to NCS that perpetrated the domain registration, website parking, domain optimization, or related action and may have communicated with the third party regarding the same. The definition is intended to make the third party's search for documents easier and ensure documents are not missed due to one of the apparently related companies acting on behalf of NCS's business.

    a. Document Request 1

The trademarks owned by third parties, including registrations pertaining thereto, are relevant to the bad faith factor VIII. For instance, if the company "Facebook" has a trademark registration for "Facebook", the 'distinctive element under factor VIII will be

met. These trademark registrations will provide not only registration dates but also first use in commerce dates that can be entered into evidence and used to controvert any attempt by NCS to claim that its use of the domains incorporating typos such as facebooko.com, facevbook.com, favebook.com and facebhook.com predated the trademark rights of the third parties. Finally, these registrations directly controvert NCS's defense that it did not target trademarks.

Plaintiff is not required to rely upon a publicly available database that may not be accurate or up to date. For example, a registration may appear as DEAD due to an inadvertent failure to file a required document with the USPTO when in fact the trademark owner still owns and uses the mark. Moreover, the subpoenad companies, many of which are large corporations with legal departments that include trademark specialists, readily possess a Schedule of Trademarks, or a list of all trademark registrations, registration numbers, location of registration, and commentary about the marks. It would be impossible, and burdensome, for Plaintiff to contemplate all trademark variations, phonetic or otherwise, and identify other applicable trademark registrations. For this reason, Plaintiff included the "any and all" language so as to incorporate foreign trademark registrations that, among other things, can help establish the fame of the marks and its widespread use. Finally, these trademark registrations need to come from the companies themselves in order to be admissible evidence at trial.

It is important to recognize that NCS's counsel did not suggest any stipulation as it relates to the subpoenas until February 3, 2010, after the first set of subpoenas had

issued. Even so, Plaintiff seeks to avoid any mini-trial over trademark ownership and the rights inherent thereto at trial or partake in any stipulation that to date appears inadequate.

      b. Document Request 2

Plaintiff does not have to rely upon documents within NCS's possession. To date, NCS has not provided any discovery responses. More importantly, to date, Plaintiff is entirely unaware of any, let alone adequate, document retention policies/procedures implemented by NCS that would ensure the ability to produce the documents requested. A company's document retention practices, which has no employees, would be suspect at best.

      c. Document Request 3

A third parties' knowledge of the Typo Domains is relevant to NCS's Fifth Affirmative Defense. It is relevant to any defense by NCS of implied license, waiver, or acquiescence by these third parties, which could then be argued to vest NCS with justification for registration and use under the ACPA's safe harbor provision, 15 U.S.C. 1125(d)(1)(B)(ii), or otherwise.

      d. Document Request 4

NCS's knowledge of third parties, their trademarks, and their claims relating to the same is relevant to Statutory Factor VIII. Statutory Factor VIII states specifically refers to Defendant's knowledge.[1] A letter or other notice document that identifies the

---

[1] 15 U.S.C. § 1125(d)(1)(B)(viii) (the person's registration or acquisition of multiple domain names **which the person knows** are identical or confusingly similar to marks of others that are distinctive …) (emphasis added).

third party and/or its trademark rights would be actual knowledge of trademark rights. Subsequent registration of more typo domains infringing third party marks after notice or threat letters have been sent goes directly to the heart of establishing bad faith cybersquatting.

This request also goes directly to three of NCS's defenses. First, it helps establish the truth or falsity of NCS's defense that it did not target trademarks. Second, it tests the adequacy and success of NCS's alleged efforts to cure its registration of typo domains relating to trademarks, and therefore, avoid bad faith intent cybersquatting liability. Finally, NCS' Eight Affirmative Defense claims no malice and no infringement or confusion. However, the fact that domain registration continued after receiving such notice from a trademark owner would be relevant to its claim of no malice and/or no infringement or confusion.

Any argument relating to the requests being overbroad are wholly unsupported, especially in light of the evidence that suggests a relation between the companies.

    e.    Document Request 5

This particular request is poignantly relevant to Factor VI, which would evidence any offer by NCS to transfer, sell, or otherwise assign the domain name to the trademark owner identified in the subpoena. Again, any document reflecting communication from a trademark owner is relevant to NCS's actual knowledge of third party trademark rights, and thus Statutory Factor 8. Finally, this information would be relevant to NCS's position, as stated by Seth Jacoby in a prior affidavit, that NCS

transfers domain names to complaining parties. *See **Exhibit C**, Affidavit of Seth Jacoby*, Case No. 2:08-CV-02463 ABC (Ex) June 16, 2008, ¶ 17.

Besides being relevant, this request is not overbroad. The request is not limited to specific domain names because Plaintiff is not aware, at this point, which domain names are owned by, or have been owned by, NCS that could qualify as typos of the subpoenad party's trademark. As noted above, in light of communications pertaining to NCS's domain names originating from the related companies, it is not overbroad to include those companies in order to ensure all documents related to domain name and trademark issues are identified.

    f.   Document Request 6

Again this request is relevant to NCS's knowledge of the third party and/or its trademarks. For example, NCS's involvement in a dispute, unrelated to trademarks and domain names, such as a contract dispute, would still be relevant NCS's knowledge of the thirty or its trademarks.

It is also relevant to NCS's Fifth Affirmative Defense, Eighth Affirmative Defense, and other primary defenses in this matter. With regard to the Fifth Affirmative Defense, the result of any adversarial proceeding may be the basis upon which NCS claims its use of the domains is lawful. With regard to the Eighth Affirmative Defense, proof of an adversarial proceeding by the third party against NCS is relevant to NCS's claim that it acted without malice. Finally, these adversarial proceedings are relevant to NCS's claims that it acts with good faith, does not target trademarks, and has taken efforts to reduce or prevent infringing domain name registrations.

NCS's argument that this request is overbroad must also fail for reasons set forth above. More specifically, Plaintiff can not identify which domains may have been subject to claims in the past and are no longer registered or used by NCS. Similarly, Plaintiff should not have to rely upon NCS's record-keeping as the sole source for these documents. Finally, contrary to NCS's claim that all of this information is publicly available, UDRP arbitration Complaints, for example, are not publicly available and there is no other way for Plaintiff to acquire them.

II. The Subpoenas are Relevant to Defendant NCS's Primary Defense and Not Overbroad

As noted above, NCS has noted three primary defenses to Plaintiff's ACPA claim thus far. When taken as a whole, NCS's defenses all implicate its Fifth Affirmative Defense: "Plaintiff's claims or recovery thereon are barred, in whole or in part, because NCS believed and had reasonable grounds to believe that any use of Plaintiff's marks was a fair use, nominative use, comparative use, or otherwise lawful." This defense, or exception, is specifically codified under the ACPA. The exception under the ACPA, 15 U.S.C. § 1125(d)(1)(B)(ii), also known as the safe harbor provision, requires a reasonable belief that the registration/use was lawful. *See Audi AG v. D'Amato*, 469 F.3d 534, 549 (6th Cir. 2006) (holding that the court should focus "primarily upon the objective reasonableness and credibility of the defendant's proposed ignorance of the fact that its conduct was unlawful."); *see also Ford Motor Co. v. Great Domains.com, Inc.*, 177 F. Supp. 2d 628, 634 (D. Mich. 2001) (citing *Virtual Works Inc. v. Volkswagen of Am., Inc.*, 238 F.3d 264, 270 (4th Cir. 2001) ("A defendant who acts even partially in

bad faith in registering a domain name is not, as a matter of law, entitled to benefit form the Act's safe harbor provision.").

Plaintiff can use these subpoenas to test the reasonableness and sufficiency of that belief by, among other things, documentation from third parties establishing the strength of that third-party's trademark rights (Request 1), the existence of explicit or implied permission to register Typo Domains (Requests 2 and 3), and actual notice of the company's existence and/or trademarks (Requests 4, 5, and 6). As such, the requests are all relevant and specifically tailored to the bad faith factors of the ACPA.

### III. The Subpoenas are Not Harrassing

NCS wants this Court to rule that the subpoenas are harmful to NCS, essentially because they will tell third parties they are being cybersquatted. This is an incredible admission by NCS that its business model is unlawful. Regardless, NCS' argument that Plaintiff should not be able to subpoena third parties because it might create problems for NCS is their own problem, created exclusively by NCS.

There can be no annoyance, oppression, or undue burden or expense to NCS because they have no obligation as it relates to these subpoenas. They are not required to identify documents or produce documents. Instead, the third party recipients of the subpoenas have the sole obligation to produce the requested documents. If any limitation by this Court is warranted, it would be as a result of a motion to quash the subpoena by a party subject to the subpoena rather than as a result of this motion by NCS.

**CONCLUSION**

Plaintiff's subpoenas include document requests that go the heart of Plaintiff's ACPA claim and NCS's primary defenses. NCS has failed to show good cause as to why this Court should issue any protective order precluding or otherwise limiting the subpoenas. As such, Plaintiff requests that NCS's motion be DENIED.

Respectfully submitted this 22nd day of February, 2010.

/s/Enrico Schaefer_____
Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI 49686
231-932-0411
enrico.schaefer@traverselegal.com

Lead Counsel for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI 48104
734-662-4426
apatti@hooperhathaway.com

Attorneys for Plaintiff

# CERTIFICATE OF SERVICE

I hereby certify that on the 22nd day of February, 2010, I electronically filed the foregoing paper with the Court using the ECF system which will send notification of such filing to the following:

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI 49686
231-932-0411
enrico.schaefer@traverselegal.com
brianhall@traverselegal.com
Lead Attorneys for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI 48104
734-662-4426
apatti@hooperhathaway.com
Attorneys for Plaintiff

William A. Delgado (admitted pro hac)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

Nicholas J. Stasevich (P41896)
Benjamin K. Steffans (P69712)
J. Michael Huget (P39150)
BUTZEL LONG, PC
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
stasevich@butzel.com
steffans@butzel.com
Local Counsel for Defendants

/s/Enrico Schaefer
Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI 49686
231-932-0411
enrico.schaefer@traverselegal.com
Lead Counsel for Plaintiff