THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
   a Michigan corporation,

        Plaintiff,

                                    Case No. 2:09-CV-10756
vs.                                     Hon. Marianne O. Battani

NAVIGATION CATALYST SYSTEMS, INC.,
   a Delaware corporation; BASIC FUSION, INC.,
   a Delaware corporation; CONNEXUS CORP.,
   a Delaware corporation; and FIRSTLOOK, INC.,
   a Delaware corporation,

        Defendants.
_____

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI  49686
231-932-0411
enrico.schaefer@traverselegal.com
brianhall@traverselegal.com
Lead Attorneys for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI  48104
734-662-4426
apatti@hooperhathaway.com
Attorneys for Plaintiff

William A. Delgado (*pro hac vice*)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA  90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

Nicholas J. Stasevich (P41896)
Benjamin K. Steffans (P69712)
BUTZEL LONG, P.C.
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000
stasevich@butzel.com
steffans@butzel.com
Local Counsel for Defendants
_____

**NAVIGATION CATALYST SYSTEMS, INC.'S REPLY MEMORANDUM IN SUPPORT
OF MOTION FOR PROTECTIVE ORDER**

Dockets.Justia.com

## REPLY MEMORANDUM

Plaintiff's opposition is primarily based on two things: sophistry and flawed argument. NCS will address both in turn.

I.     <u>PLAINTIFF ATTEMPTS TO DERAIL THE MOTION WITH SOPHISTRY</u>.

Plaintiff's attempt to derail NCS's motion with sophistry is transparent. For example, Plaintiff states that "[w]hile counsel for Defendant at one point suggested that he might stipulate to third party trademarks, he has never done so." Opp. at 8-9. But, as NCS pointed out in its opening brief, on January 14, 2010, NCS wrote to Plaintiff in advance of the issuance of the subpoenas *but received no response*. Declaration of William A. Delgado, dated February 8, 2010 at ¶ 4. Instead, NCS was served with the subpoenas weeks later. *Id*. at ¶ 5. Plaintiff *never* indicated that it would be willing to discuss the subpoenas in an attempt to avoid motion practice, never indicated it would be willing to accept a stipulation, and never indicated that NCS should prepare a draft stipulation for its review. The failure to reach an agreement on such a stipulation is on Plaintiff by virtue of its unwillingness to meet and confer and not on NCS who broached the topic in advance and in good faith.

Similarly, Plaintiff bolsters its need for third party information with the implicit suggestion that NCS's document production is deficient because "[t]o date, NCS has not provided any discovery responses." Opp. at 11. But, Plaintiff neglects to point out that it continued NCS's deadline to respond to Plaintiff's first set of written discovery (February 16, 2010) until February 26, 2010; or, in other words, until 4 days after NCS's opposition was due. It is not surprising, then, that NCS had not yet produced its documents. While NCS is appreciative of the professional courtesy in granting this 10-day extension, it is somewhat

troubled that Plaintiff now relies on that same extension of time to suggest that NCS has been

unable or unwilling to produce documents.  Professional courtesies should be just that:

courtesies, not the foundation for a future argument.

The Court should not be fooled with Plaintiff's attempts at revisionist history.  The

(undisputed) Delgado Declaration sets forth the chronology of facts that predated the filing of the

motion and shows that NCS attempted to resolve this motion, in good-faith, before any

subpoenas were issued.

II.     PLAINTIFF'S ARGUMENTS IN SUPPORT OF THEIR SUBPOENAS ARE
        FLAWED.

        A.      Document Request No. 1

Document Request No. 1 essentially calls for all documents related to the registration of

the third party's trademarks.  Plaintiff's argument as to why these documents are necessary is

somewhat difficult to understand.  It claims that it wants such documents because "Plaintiff

seeks to avoid any mini-trial over trademark ownership and the rights inherent thereto at trial."

Opp. at 11.  But, if Plaintiff truly wanted to avoid a mini-trial, then why not stipulate to such

registrations?  Stipulations *avoid* mini-trials.  Instead, Plaintiff wants to take up valuable trial

time introducing third-party documents (about trademarks that are *not* at issue in this case) and

authenticating such documents.  *That* process lends itself to a "mini-trial" (if, for example,

Plaintiff could not properly authenticate the documents, the documents contained hearsay, etc.).

        B.      Document Request No. 2

Document Request No. 2 calls for license agreements (or something similar) which give

NCS permission to register the domain names that Plaintiff claims violate the third party's

marks. In support of this request, Plaintiff essentially argues that NCS's document production cannot be trusted, and such documents needs to be obtained from the third party. So, this is what Plaintiff is really saying: "NCS *might* have permission to register these domain names that we believe violate the marks of third parties, but they might not retain the agreement granting them that permission." That is nonsensical. If NCS had license agreements granting it permission to register various domain names, it would be highly incentivized to retain and produce, not destroy, those agreements.[1]

C.    Document Request No. 3

Document Request No. 3 calls for documents related to the third party's knowledge of NCS. Plaintiff argues that these documents would be relevant to NCS's fifth affirmative defense (fair or nominative use) or its affirmative defenses of implied license, waiver or acquiescence. But, these affirmative defenses are specific to *Plaintiff*, making a third party's knowledge of NCS irrelevant. Assume that a third party knew of NCS and its alleged domain name registrations such that they would be barred from making a claim against NCS by virtue of a waiver or estoppel. Is it really Plaintiff's position that this estoppel as against a third party would also operate as an estoppel against Plaintiff? Of course not. Put simply, the third party's knowledge of NCS is not, at all, relevant in this case.

D.    Document Request No. 4

Document Request No. 4 calls for cease and desist letters sent by the third party. Plaintiff argues that Defendant's knowledge is at issue because Statutory Factor VIII refers to the registration or acquisition of domain names which the registrant *knows* are identical or

---

[1] This is somewhat beside the point. There are no such agreements and, therefore, no such agreements need be requested from any third party.

confusingly similar to a mark that is distinctive. But, that argument fails as a matter of chronology. Statutory Factor VIII focuses its inquiry on Defendant's knowledge *at the time of registration*. On the other hand, this request is calling for notice and cease-and-desist letters regarding the "Typo Domains." In other words, these are letters sent to NCS *after* it had registered the allegedly offending domains (or, otherwise, there would be no "Typo Domain" about which to correspond). As a result, they could not show that NCS knew, at the time of registration, that the domain names were confusingly similar to a distinctive mark. At best, they show that NCS was informed of that contention *after* registration.

E.      Document Request No. 5

This request calls for communications on *any* domain name or trademark issue. Plaintiff argues that this request relates to Statutory Factor VI (offer to transfer, sell, or otherwise assign a domain name). But, once again, Plaintiff did not wait to see if NCS could produce any documents with respect to this topic, even though it would be the transferor of such a domain name. And, despite Plaintiff's arguments to the contrary, the request is clearly overbroad as it would capture the patently irrelevant. For example, if NCS and the subpoenaed party corresponded about amendments to the Lanham Act, that correspondence would be captured by the request, despite the fact that such communications are not relevant.

F.      Document Request No. 6

This request calls for lawsuits, arbitrations, etc. brought by the third party against NCS for any reason whatsoever. Again, it is clear to see why this request is irrelevant and overbroad on its face. If the parties were engaged in a lawsuit wholly unrelated to domain names, there is no basis for seeking such documents whatsoever. And, even if the parties had only litigated

against each other in the domain name context, what would it matter what a third party complaint said?  A complaint can say anything the drafter wants.

III.    THE SUBPOENAS *ARE* HARASSING.

As NCS noted in its opening papers, Plaintiff's subpoenas are less discovery vehicle, more litigation-pot stirring.  Plaintiff re-characterizes NCS's arguments as an "admission" that NCS's business model is unlawful and that NCS is fearful that Plaintiff "will tell third parties they are being cybersquatted."  Opp. at 15.

To realize the flaw in this argument, one need only consider the flip-side of what Plaintiff is really saying: "If NCS has done nothing wrong, then it need not worry about these subpoenas." But anyone with litigation experience knows that argument is also sophistry.  Defending lawsuits, regardless of whether they are meritorious or meritless, costs money.  So, even if NCS ultimately prevailed on every lawsuit filed against it, its limited resources would be taxed fighting off meritless lawsuits.  The discovery rules were not meant to be used for "collateral attacks."  Plaintiff's subpoenas to third parties that have no bearing in this action are at best an unprofessional litigation tactic that seeks to add additional pressure on NCS through aditional lawsuits.  This conduct is nothing but pure harassment and has no place in our profession.

RESPECTFULLY SUBMITTED this 1st day of March, 2010.

*/s/William A. Delgado*
William A. Delgado (admitted *pro hac vice*)
WILLENKEN WILSON LOH & LIEB, LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA  90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

# CERTIFICATE OF SERVICE

I hereby certify that on March 1, 2010, I electronically filed the foregoing paper with the Court using the ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Enrico Schaefer (P43506) | Nicholas J. Stasevich (P41896) |
| Brian A. Hall (P70865) | Benjamin K. Steffans (P69712) |
| TRAVERSE LEGAL, PLC | BUTZEL LONG, P.C. |
| 810 Cottageview Drive, Unit G-20 | 150 West Jefferson, Suite 100 |
| Traverse City, MI  49686 | Detroit, MI  48226 |
| 231-932-0411 | (313) 225-7000 |
| enrico.schaefer@traverselegal.com | stasevich@butzel.com |
| brianhall@traverselegal.com | steffans@butzel.com |
| Lead Attorneys for Plaintiff | Local Counsel for Defendants |
| | |
| Anthony P. Patti (P43729) | William A. Delgado (admitted *pro hac vice*) |
| HOOPER HATHAWAY, PC | WILLENKEN WILSON LOH & LIEB LLP |
| 126 South Main Street | 707 Wilshire Boulevard, Suite 3850 |
| Ann Arbor, MI  48104 | Los Angeles, CA  90017 |
| 734-662-4426 | (213) 955-9240 |
| apatti@hooperhathaway.com | williamdelgado@willenken.com |
| Attorneys for Plaintiff | Lead Counsel for Defendants |

*/s/William A. Delgado*
William A. Delgado (admitted *pro hac vice*)
WILLENKEN WILSON LOH & LIEB, LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA  90017
(213) 955-9240
williamdelgado@willenken.com
*Lead Counsel for Defendants*