**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WEATHER UNDERGROUND, INC., a Michigan corporation,

        Plaintiff,

v.

NAVIGATION CATAYLST SYSTEMS, INC., a Delaware corporation; BASIC FUSION, INC., a Delaware corporation; CONNEXUS CORP., a Delaware corporation; and FIRSTLOOK, INC., a Delaware corporation,

        Defendants.
_____/

CASE NO. 09-10756

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING NAVIGATION CATALYST SYSTEMS, INC.'S MOTION FOR SUMMARY JUDGMENT ON ITS AFFIRMATIVE DEFENSE OF LACK OF PERSONAL JURISDICTION**

This matter is before the Court on Defendant Navigation Catalyst Systems, Inc.'s Motion for Summary Judgment on its Affirmative Defense of Lack of Personal Jurisdiction (Doc. No. 122). The Court heard oral argument on January 13, 2011, and at the conclusion of the hearing took this matter under advisement. For the reasons that follow the motion is **DENIED**.

**I. INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiff, Weather Underground, Inc. ("Weather Underground") filed suit against several Defendants, alleging violations of federal and state law, including cybersquatting, trademark infringement, false designation of origin, trademark dilution, and unfair competition. According to Plaintiff, Defendants Navigation Catalyst Systems, Inc. ("NCS"),

Basic Fusion, Inc. ("Basic Fusion"), Connexus Corp. ("Connexus"), and Firstlook, Inc. ("Firstlook") registered domain names with various misspellings of Plaintiff's web properties, <weatherunderground.com>, and <wund.com> to redirect Plaintiff's customers to competitors and third-party advertisers.[1]

Defendant NCS seeks summary judgment on its affirmative defense of lack of personal jurisdiction. This is the third challenge to personal jurisdiction. The Court denied its previous request to dismiss it for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2); however, the Court dismissed Connexus, Basic Fusion, and FirstLook for lack of personal jurisdiction. Thereafter, NCS filed a Motion for Reconsideration of the decision or in the alternative to stay this matter pending the Supreme Court's decision in Hertz v. Friend, 130 S. Ct. 1181 (2010), which the Court likewise denied.     In deciding the merits of the first request for dismissal for lack of personal jurisdiction, the Court relied on Calder v. Jones, 465 U.S. 783 (1984), in holding that it could exercise specific jurisdiction over NCS. The Calder "effects" test allows a court to exercise personal jurisdiction over a nonresident defendant alleged to commit an intentionally tortious act outside the forum, expressly aimed at the forum state, which the defendant knows is likely to harm the plaintiff in the forum state. Euromarket Designs, Inc. v. Crate & Barrell Ltd., 96 F. Supp. 2d 824, 835 (N.D. Ill. 2000) (citing Calder, 465 U.S. 783).

---

[1] Connexus is the parent company of Firstlook, which in turn is the parent company of both NCS and Basic Fusion. NCS is a domain name holding company which acquires generic and descriptive domain names in bulk. Basic Fusion is a domain name registrar. Firstlook creates automatically generated web pages based on the text of the domain name.

In concluding that it could exercise personal jurisdiction over NCS, the Court found that the effects test as articulated in Calder, was satisfied by the facts of this case, and allowed the case to proceed in this forum.  The current motion challenges jurisdiction based upon the Hertz decision.

**II.    STANDARD OF REVIEW**

Federal Rule of Civil Procedure 56(c) authorizes the Court to grant summary judgment "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law."  There is no genuine issue of material fact if there is not a factual dispute that could affect the legal outcome on the issue.  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986).  In determining whether to grant summary judgment, this Court "must construe the evidence and draw all reasonable inferences in favor of the nonmoving party."  Hawkins v. Anheuser-Busch, Inc., 517 F.3d 321, 332 (6th Cir. 2008).

**III.   ANALYSIS**

To succeed, NCS must convince the Court (1) that the definition of principal place of business for purposes of diversity/subject matter jurisdiction should be applied to personal jurisdiction as assessed under Calder and (2) that Plaintiff's principal place of business is California.  Accordingly, the Court directs its attention to the Supreme Court's definition of principal place of business as set forth in Hertz Corp. v. Friend, 130 S. Ct. 1181 (2010).

3

In Hertz, the Court held that the phrase "principal place of business" as used in § 1332(c)(1) refers to a corporation's "nerve center." Id. at 1187 - 1195.

> We conclude that 'principal place of business' is best read as referring to the place where a corporation's officers direct, control, and coordinate the corporation's activities. It is the place that Courts of Appeals have called the corporation's 'nerve center.' And in practice it should normally be the place where the corporation maintains its headquarters-provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings (for example, attended by directors and officers who have traveled there for the occasion).

Hertz, 130 S. Ct. at 1192.

According to NCS, the Supreme Court's decision in Hertz requires this Court to revisit its earlier holding that NCS's conduct was expressly aimed at Michigan and that Plaintiff felt the brunt of harm in Michigan. Specifically, NCS asserts that Plaintiff's principal place of business is its "nerve center," located in San Francisco, California. Consequently, NCS cannot have "expressly aimed" its conduct at Michigan, nor can Plaintiff have felt the "brunt of the harm" in Michigan for proposes of the effects test articulated in Calder.

Defendant relies on a comparison of the number of employees in both states as well as the location of corporate officers in urging the Court to reject Plaintiff's assertion that Michigan is its principal place of business. Few of Plaintiff's employees work in Michigan. The President and director in charge of technology and operational issues work in California. In sum, the officers' direction, coordination, and control over Weather Underground's activities take place in San Francisco; and California, not Michigan is its principal place of business. Therefore, the Court's conclusion that the conduct at issue was expressly aimed at Michigan and felt in Michigan is wrong.

Without question, when the Court decided the initial motion, Jeff Ferguson, Plaintiff's

4

Director of Communications and Corporate Treasurer, identified Michigan as its place of incorporation and its principal place of business. Without question, the Court credited his affidavit, as required under Seras v. First Tennessee Bank Nat's Ass'n, 875 F.2d 1212, 1214-15 (6th Cir. 1989). Ferguson remains steadfast that Ann Arbor is the nerve center, despite Defendant's argument to the contrary. Plaintiff's business grew out of the creation of a real-time weather system at the University of Michigan, where it has established a scholarship. Its Director of Communications and Corporate Treasurer, and its Chief Meteorologist and co-founder direct the activities from that Ann Arbor office. Plaintiff is incorporated in Michigan--a fact undisputedly known to Defendant before several of the challenged web sites were registered.

Even if these facts do not establish Michigan as the principal place of business for purposes of diversity jurisdiction, they do demonstrate the facts needed to show that NCS aimed the allegedly tortious conduct at Michigan and that Michigan was the focal point of that activity. The brunt of any harm to Weather Underground certainly was felt in Michigan, where Weather Underground has a long established presence and association with the University of Michigan and where its trademarks are registered, and its finances are handled.

The Hertz decision does not alter this conclusion because Hertz addressed principal place of business for purposes of subject matter jurisdiction under the diversity statute, not personal jurisdiction. Defendant's argument equates the issue of personal jurisdiction-- whether a defendant has sufficient minimum contacts with a forum to be haled into court there--with diversity of citizenship for purposes of federal subject matter jurisdiction, exercised pursuant to 28 U.S.C. § 1332. Although the Court referred to Michigan as the

5

principal place of business in the opinion and order denying the initial motion for dismissal, the designation is by no means dispositive of the issue presented here. The Court rejects the notion that for purposes of the Calder effects test, the brunt of the injury must occur at the "nerve center." Calder does not require that the harm occur at the principal place of business, merely that the tortious conduct was "calculated to cause injury" to Weather Underground, the brunt of which was suffered in Michigan. Calder, 465 U.S. at 791.

To credit Defendant's argument, the Court has to conclude that a corporation can only suffer effects in one location. That cannot be the case. The bottom line here is that Michigan not only is the state of incorporation, it is a state with significant connection to Weather Underground. Plaintiff has asserted that its Director of Communications and Corporate Treasurer, and its Chief Meteorologist direct the activities of the business from the Ann Arbor office. The business grew out of the creation of a real-time weather system at the University of Michigan. Further, Plaintiff has provided documents to support its assertion that the challenged conduct was undertaken with knowledge that Plaintiff is a Michigan corporation with a self-deemed principal place of business in Ann Arbor, Michigan. Although NCS "cannot conceive of any reason. . .why a corporation's principal place of business for purposes of determining diversity jurisdiction would be different from its principal place of business for any other reason," (Doc. No. 141at 3-4), the Court observes it has provided no authority to support its view. In this case, due process is not offended by allowing this case to proceed in Michigan. Hertz provides no basis to reach a contrary conclusion.

## IV.  CONCLUSION

For the reasons stated above, Defendant's motion is **DENIED.**

**IT IS SO ORDERED.**

                                s/Marianne O. Battani
                                MARIANNE O. BATTANI
                                UNITED STATES DISTRICT JUDGE

Date:  March 24, 2011

## CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

                                s/Bernadette M. Thebolt
                                Case Manager