**UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION**

WEATHER UNDERGROUND, INC., a Michigan corporation,

              Plaintiff,

v.

NAVIGATION CATAYLST SYSTEMS, INC., a Delaware corporation; CONNEXUS CORP., a Delaware corporation; FIRSTLOOK, INC., a Delaware corporation, and EPIC MEDIA GROUP, INC., a Delaware corporation,

              Defendants.

_____/

CASE NO. 09-10756

HON. MARIANNE O. BATTANI

**OPINION AND ORDER DENYING CONNEXUS CORPORATION,
FIRST LOOK, INC. AND EPIC MEDIA GROUP, INC.'S MOTION
TO DISMISS FOR LACK OF PERSONAL JURISDICTION**

This matter is before the Court on Defendant Connexus Corporation, Firstlook, Inc., and Epic Media Group, Inc.'s (hereinafter "Added Defendants") Motion to Dismiss for Lack of Personal Jurisdiction (Doc. No. 149). The Court has reviewed the relevant filings and finds oral argument is unnecessary. See E. D. Mich. LR 7.1(f)(2). For the reasons that follow, Defendants' motion is **DENIED**.

**I. INTRODUCTION AND PROCEDURAL BACKGROUND**

Plaintiff Weather Underground filed suit against several Defendants, alleging violations of federal and state law. According to Plaintiff, Defendants, who are in the business of domain monetizing,[1] had registered domain names with various misspellings

---

[1] Domain monetizing involves registering domain names that are variations of trademark protected domain names for the purpose of turning Internet traffic into

of Plaintiff's web properties to redirect its customers to competitors and third-party advertisers. (Doc. No. 1.) Specifically, Defendants registered, trafficked in, and used 264 domain names that are typographical or other deviations of Plaintiff's trademarks. (Doc. No. 147, Exs. T, U.)

In its initial complaint, Weather Underground included as defendants, Navigation Catalyst Systems, Inc. ("NCS"), Basic Fusion, Inc. ("Basic Fusion"), Connexus Corp. ("Connexus"), and Firstlook, Inc. ("Firstlook"). Defendants moved for dismissal, arguing lack of personal jurisdiction. The Court granted the motion in part, and dismissed Connexus, Basic Fusion, and FirstLook for lack of personal jurisdiction. The Court concluded that it could exercise personal jurisdiction over NCS, and allowed the case to proceed in this forum. (See Doc. No. 21.) NCS moved for reconsideration, which the Court denied. NCS also asked the Court to stay this matter pending the Supreme Court's decision in Hertz, Corp. v. Friend, 130 S. Ct. 1181 (2010), which the Court likewise denied. (Doc. No. 30.) After the Supreme Court decided Hertz, NCS moved for summary judgment on its affirmative defense of lack of personal jurisdiction based upon the Hertz decision. (Doc. No. 122.) Again, the Court denied the motion.

Thereafter, Plaintiff successfully sought leave to amend its complaint. The First Amended Complaint (FAC) again named Connexus and Firstlook as Defendants, and added as a Defendant, Epic Media Group, Inc., which acquired Connexus on May 4, 2010.

In the First Amended Complaint (FAC), Plaintiff alleges that the Court has personal

---

monetary gain or selling the domain to the trademark holder. (See Doc. No. 147, ¶¶ 60, 65); HCB, LLC v. Oversee.net, No. 2007-29, 2009 WL 2996578 at *2, n.1 (D. V.I. Sept. 16, 2009).

jurisdiction over Added Defendants because they have "(a) committed intentional and tortious acts within this State; (b) conducted substantial business within this State related to the unlawful activity at issue. . .; and (c) otherwise have availed themselves of this forum." (FAC, ¶ 22.)

## II. STATEMENT OF FACTS

Plaintiff, Weather Underground, Inc. ("Weather Underground"), is a weather service, incorporated in Michigan. (Doc. No. 147, FAC, ¶ 1.) It has developed "the world's largest network of personal weather stations," is multilingual, provides services through mobile devices, and its website attracts fourteen million visitors each month–eleven million from the United States. (FAC, ¶¶ 28-32.) It has registered over 125 domain names; the majority incorporate its trademarks and service marks. (FAC, ¶ 37.) Plaintiff has been in business via the Internet as a commercial entity since 1995. (FAC, ¶ 24.)

According to Plaintiff, typosquatting, a form of cybersquatting, relies on mistakes such as topographical errors made by Internet users when inputting a trademark protected website address into a web browser. Typosquatters use qwerty typos, letter swaps, and sticky keys to generate traffic on high traffic trademark-protected domain names. (FAC, ¶ 57.) These errors can be predicted through the use of error data, which show domain names that have not been registered, yet receive traffic. (FAC, ¶ 55.)

Defendants use software that generates a Parked Page that includes advertisements for other weather web sites and Plaintiff's competitors. "Defendants' business model is to monetize traffic of trademark protected domains, and when a trademark holder complains, sends a threat letter, or files a complaint, Defendants turn

over the infringing domains." (FAC, ¶ 65.)

NCS is the bulk registrant of domain names. Firstlook, which is the parent company of NCS, monetizes the domain names registered by NCS. Connexus is the parent company of Firstlook. According to Added Defendants, Epic operates Connexus as a wholly-owned subsidiary. (Doc. No. 149, Decl. of Charles Nowaczek at ¶¶ 2, 3.)

On August 18, 2008, Plaintiff filed a complaint against NCS with the National Arbitration Forum in accordance with ICANN's Uniform Domain Name Dispute Resolution policy. The panel ordered that forty-one domain names domain names be transferred to Plaintiff. (FAC, ¶76.) Thereafter, Plaintiff became aware of other infringing domains.

In the First Amended Complaint (FAC), Plaintiff alleges that Connexus and Firstlook provided NCS with the instrumentalities to accomplish the complained of acts. (FAC at ¶¶ 11-14.) Plaintiff alleges that NCS is a shell company with no employees, bank accounts, or tangible assets, (FAC, ¶ 6), that Epic has accepted the liabilities of Frirstlook, NCS, and Connexus, or is otherwise subject to liabilities under law (FAC, ¶ 9), that each is the "agent, servant, employee, partner, alter ego, subsidiary, or joint venture" of the other Defendants. (FAC ¶ 15.)

Added Defendants seek dismissal for lack of personal jurisdiction pursuant to FED. R. CIV. P. 12(b)(2).

## III. STANDARD OF REVIEW

Rule 12(b)(2) of the Federal Rule of Civil Procedure governs dismissal for lack of personal jurisdiction. As the party bringing suit in a Michigan forum, Weather Underground bears the burden of establishing that the Court may exercise personal jurisdiction over

each Defendant. See Neogen Corp. v. Neo Gen Screening, Inc., 282 F.3d 883, 887 (6th Cir. 2002). Because the Court is resolving this issue solely upon the written record, without an evidentiary hearing, Plaintiff "need only make a prima facie showing of jurisdiction." Neogen Corp., 282 F.3d at 887 (internal quotation marks and citation omitted).

To make this showing, Plaintiff must "establish[ ] with reasonable particularity sufficient contacts between Defendants and the forum state to support jurisdiction." Neogen Corp., 282 F.3d at 887 (internal quotation marks and citation omitted). More specifically, Plaintiff must demonstrate that the Court's exercise of personal jurisdiction over each Defendant is "both (1) authorized by the law of the [forum state, Michigan], and (2) in accordance with the Due Process Clause of the Fourteenth Amendment." Id. at 888. As the Court considers whether Plaintiff has met its burden, it does not "consider facts proffered by the defendant[s] that conflict with those offered by the plaintiff, and will construe the facts in the light most favorable to" Plaintiff as the non-moving party. Id. at 887.

**IV. ANALYSIS**

When a federal court's subject matter jurisdiction over a case stems from the existence of a federal questions, two requirements must be met for the court to exercise personal jurisdiction over a defendant: (1) the defendant must be amenable to service of process under the forum state's long-arm statute, and (2) the exercise of personal jurisdiction must not deny the defendant due process. Bird v. Parsons, 289 F.3d 865, 871 (6th Cir. 2002). In this case, the parties do not contest whether the first factor is met, only the second. Nor do the parties contend that the Court may exercise general jurisdiction. Accordingly, the Court directs its attention to whether the exercise of specific personal

5

jurisdiction over these Defendants would violate due process.

The Supreme Court has held that in order to subject a nonresident defendant to personal jurisdiction, due process requires that it must "have certain minimum contacts with [the forum state] such that the maintenance of the suit does not offend 'traditional notions of fair play and substantial justice.'" Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945) (quoting Milliken v. Meyer, 311 U.S. 457, 463 (1940)). Specific jurisdiction subjects the defendant to actions in the forum state arising out of or relating to the defendant's contacts with that state. Helicopteros Nacionales de Colombia v. Hall, 466 U.S. 408, 414 (1984). In determining whether the exercise of specific personal jurisdiction is proper, the Sixth Circuit follows the three-prong test originally articulated in S'ern Mach. Co. v. Mohasco Indus., Inc., 401 F.2d 374, 381 (6th Cir. 1968).

> First, the defendant must purposefully avail himself of the privilege of acting in the forum state or causing a consequence in the forum state. Second, the cause of action must arise from the defendant's activities there. Finally, the acts of the defendant or consequences cause by the defendant must have a substantial enough connection with the forum state to make the exercise of jurisdiction over the defendant reasonable.

Calphalon Corp. v. Rowlette, 228 F.3d 718, 721 (6th Cir. 2000) (citing Mohasco, 401 F.2d at 381).

### A. Purposeful Availment.

"[P]urposeful availment" means that the defendant's "contacts proximately result from the actions by the defendant *himself* that create a 'substantial connection' with the forum State. Burger King Corp. v. Rudzewicz, 471 U.S. 462, 475 (1985) (emphasis in original) (quoting McGee v. Int'l Life Ins. Co., 355 U.S. 220, 223 (1957)). This purposeful availment requirement "ensures that a defendant will not be haled into a jurisdiction solely

6

as a result of 'random,' 'fortuitous,' or 'attenuated' contacts, or of the 'unilateral activity of another party or a third person.'" Id. at 475 (quoting Keeton v. Hustler Magazine, 465 U.S. 770, 774 (1984)).

In Hanson v. Denckla, 357 U.S. 235, 250-51 (1958), the Supreme Court recognized that the duty of a federal court in assessing personal jurisdiction must be sensitive to changes in technology. Here, the Court must consider whether to exercise jurisdiction over Added Defendants, who did not physically enter Michigan, but used the Internet to commit the challenged conduct. Although the Supreme Court has never adopted a specialized test to assess personal jurisdiction in light of Internet activity, in Zippo Mfg. Co. v. Zippo Dot Com, Inc., 952 F. Supp. 1119, 1124 (W.D. Pa. 1997), the district court concluded that "the likelihood that personal jurisdiction can be constitutionally exercised is directly proportionate to the nature and quality of commercial activity that an entity conducts over the Internet." In Zippo, the court introduced a "sliding scale" approach, or the "Zippo test."

> At one end of the spectrum are situations where a defendant clearly does business over the Internet. If the defendant enters into contracts with residents of a foreign jurisdiction that involve the knowing and repeated transmission of computer files over the Internet, personal jurisdiction is proper. At the opposite end are situations where a defendant has simply posted information on an Internet Web site which is accessible to users in foreign jurisdictions. A passive Web site that does little more than make information available to those who are interested in it is not grounds for the exercise of personal jurisdiction. The middle ground is occupied by interactive Web sites where a user can exchange information with the host computer. In these cases, the exercise of jurisdiction is determined by examining the level of interactivity and commercial nature of the exchange of information that occurs on the Web site.

Id. at 1124. The Sixth Circuit has used the sliding scale approach. See Neogen Corp.,

282 F.3d at 890 ("A defendant purposefully avails itself of the privilege of acting in a state through its website if the website is interactive to a degree that reveals specifically intended interaction with residents of the state.").

The parties disagree as to how to characterize Defendant's websites under the Zippo test. Added Defendants admit that NCS owns various domain names where it hosts various websites and that Michigan residents can view the websites. Nevertheless, they conclude that the websites are passive because no commercial activity occurs. Instead, the web sties contain hyperlinks to other third-party web sites. Therefore, Added Defendants conclude that there is no personal jurisdiction over Firstlook, Connexus, or Epic under Zippo. The Court disagrees.

First, the mere designation of a website as passive, does not resolve the issue, it merely aids the analysis. Even if the websites were deemed passive, the considerations that drive the analysis are whether those websites share a nexus to the cause of action, and more particularly, whether they were used to intentionally harm the plaintiff in the forum. Second, the Court finds the characterization of the websites as passive defies the means by which Defendants conduct their domain monetizing business. They establish and register domain names for the purpose of turning Internet traffic into monetary gain through the use of click through traffic. In monetizing a domain, advertisements are placed on "parked" domain names as a means by which to "generate revenue for both the party that owns the domain and the party that places the advertisement." HCB, LLC v. Oversee.net, No. 2007-29, 2009 WL 2996578 at *2, n.1 (D. V.I. Sept. 16, 2009). "When an internet user visits the 'parked' domain name, he or she is shown advertisements

provided by search engines and other providers of pay-per-click advertising. These advertisers pay the domain monetizing specialists, who in turn pay the owner of the 'parked' domain name." Id. Thus, when a visitor comes to a website on a NCS-owned domain and clicks on a hyperlink, the visitor is transported away from the NCS domain.

Here, Defendants are alleged to have carefully selected "keyword optimizers" to maximize profits. The more relevant the keywords, the more likely the user will stay put and use the links on the parking page. Thus, the Court, which must accept the allegation in the light most favorable to Weather Underground, is satisfied that Defendants clearly do business over the Internet. Further, Defendants' business does not involve a fortuitous contact with a Michigan resident. They traded on Weather Underground trade and service marks, and according to Plaintiff, knowingly redirected income from Plaintiff's domain names to their own. Here, a nexus exists between the website and the cause of action in that defendants used their typosquatted website with the intent to harm Plaintiff in Michigan. Under these facts, the Court concludes that Added Defendants purposefully availed the forum, and were on notice that they may be subject to suit in Michigan.

In the alternative, the exercise of personal jurisdiction based on the effects test articulated in Calder v. Jones, 465 U.S. 783 (1984), is appropriate under these facts for the reasons stated in the Court's Opinion and Order Granting in Part and Denying in Part Defendants' motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(6) or, in the Alternative, Transfer (Doc. No. 23), and Opinion and order Denying Navigation Catalyst Systems, inc.'s Motion for Summary Judgment on its Affirmative Defense of Lack of Personal Jurisdiction (Doc. No. 169).

In their motion, Added Defendants raise an argument specific to the issue of whether Epic could have "expressly aimed its conduct" at Michigan inasmuch as Epic did not acquire Connexus until after the conduct giving rise to the claims. It is undisputed that the most recent registration of a challenged domain name occurred March 26, 2009, but Epic only acquired Connexus on May 4, 2010. The timing is not dispositive in light of the allegations in the First Amended Complaint. Although Added Defendants assert that Plaintiff's unsubstantiated allegations about the relationship of the Defendants to each other to be "of no moment," (Doc. No. 149, p. 12), courts acknowledge that due process is not violated when a court exercises personal jurisdiction over a corporation that ordinarily would not be subject to personal jurisdiction in that court, provided the corporation is an alter ego or successor of a corporation that would be subject to personal jurisdiction in that court. Estate of Thomson ex rel. Estate of Rakestraw v. Toyota Motor Corp. Worldwide, 545 F.3d 357, 362 (6th Cir. 2008).

Here, because there is no evidentiary hearing, Plaintiff meets its burden with a prima facie showing. Consequently, the Declaration of Nowaczek, offered by Added Defendants, which asserts that Epic operates Connexus as a subsidiary, does not undermine Plaintiff's allegations. Even if it did, Plaintiffs have offered some evidence that casts doubt on the declaration, including press releases and testimony of employees. (See Doc. No. 162, Exs. C, D.) The relationship between the parties is fact driven and exceeds the scope of analysis required to resolve this motion. Accordingly, the Court finds all Added Defendants purposefully availed themselves of the privilege of acting in Michigan or causing a consequence in Michigan.

### B. Arising out of Activities in the Forum

Next, the Court must consider whether the claims arise from forum-related activities. Added Defendants contend that they do not conduct activity in Michigan.

In assessing the second prong, courts do not construe the requirement that Plaintiff's cause of action arises from Defendant's activities in the forum state in a restrictive fashion. "Only when the operative facts of the controversy are not related to the defendant's contact with the state can it be said that the cause of action does not arise from that [contact]." Mohasco, 401 F.2d at 384 n.29. In other words, as long as the cause of action has "[a] substantial connection with defendant's in-state activities," it is not necessary that the suit formally arise from defendant's contacts with the forum state. See Third Nat'l Bank in Nashville v. WEDGE Group, Inc., 882 F.2d 1087, 1091 (6th Cir. 1989) (quoting Mohasco, 401 F2d at 384 n.27).

The Court is satisfied that the claims advanced in the First Amended Complaint are related to conduct that targeted Michigan.

### C. Nature of the Connection

Finally, Added Defendants argue the exercise of jurisdiction over them in Michigan would be unreasonable. According to Added Defendants, the most efficient resolution of Plaintiff's claims would be obtained in California, not Michigan. Added Defendants' argument is unpersuasive.

Notably, when the first two requirements under Mohasco are met, "[a]n inference arises that the third factor is satisfied." Bird, 289 F3d at 875; CompuService, Inc., 89 F.3d at 1268. Nevertheless, courts look at several factors when examining the requirement of

reasonableness, including "the burden on the defendant, the interest of the forum state, the plaintiff's interest in obtaining relief, and the interests of other states in securing the most efficient resolutions of controversies." Am. Greetings Corp. v, Cohn, 839 F. 2d 1164, 1169-70 (6th Cir. 1988) (quoting Asahi Metal Indus. v. Superior Court, 480 U.S. 102, 113 (1987)).

This case has proceeded in this forum for two years. Both Plaintiff and Michigan have an interest in the matter before this Court. The fact that Added Defendants are citizens of California and would prefer to litigate this matter in that forum does not render this forum unreasonable.

## V. CONCLUSION

For the reasons discussed, Added Defendants' motion is **DENIED**.

**IT IS SO ORDERED.**

        s/Marianne O. Battani
        MARIANNE O. BATTANI
        UNITED STATES DISTRICT JUDGE

Date: June 10, 2011

## CERTIFICATE OF SERVICE

Copies of this Order were mailed and/or electronically filed to counsel of record on this date.

        s/Bernadette M. Thebolt
        Case Manager