IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
   a Michigan corporation,

      Plaintiff,

vs.

NAVIGATION CATALYST SYSTEMS, INC., a Delaware corporation; CONNEXUS CORP., a Delaware corporation; FIRSTLOOK, INC., a Delaware corporation; and EPIC MEDIA GROUP, INC., a Delaware corporation;

      Defendants.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

_____

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI  49686
231-932-0411
enrico.schaefer@traverselegal.com
brianhall@traverselegal.com
Lead Attorneys for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI  48104
734-662-4426
apatti@hooperhathaway.com
Attorneys for Plaintiff

Nicholas J. Stasevich (P41896)
Benjamin K. Steffans (P69712)
Bruce L. Sendek (P28095)
BUTZEL LONG, PC
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000
stasevich@butzel.com
steffans@butzel.com
sendek@butzel.com
Local Counsel for Defendants

William A. Delgado (admitted pro hac vice)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA  90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

_____

**PLAINTIFF'S RESPONSE TO DEFENDANTS CONNEXUS, FIRSTLOOK,
AND NCS'S MOTION FOR SUMMARY ADJUDICATION**

# TABLE OF CONTENTS

Table of Contents ................................................................................................. ii

Table of Authorities ............................................................................................ iii

Counter-Statement of the Issue Presented ......................................................... iv

Introduction .......................................................................................................... 1

Counter-Statement of Facts ................................................................................. 3

    A. The Undisputed Evidence Is that Defendants Meet All Nine Criteria Under the ACPA for Bad Faith Intent to Profit ................................... 4

    B. The Undisputed Evidence Is that Defendants Had Actual Notice Of Plaintiff's Marks ............................................................................... 7

    C. The Undisputed Evidence Is that Defendants Had Constructive Notice of Plaintiff's Marks ...................................................................... 8

    D. Willful Blindness Is Not a Defense to Bad Faith Intent ..................... 9

Conclusion ......................................................................................................... 10

# TABLE OF AUTHORITIES

**Cases**

*A Touch of Class Jewelry Co. v. J.C. Penney Co.*, No. CIV. A. 98-2949,
  2000 U.S. Dist. LEXIS 12898, 2000 WL 1224804, at *5 (E.D. La. Aug. 28, 2000) ....... 9
*Barmasters Bartending School, Inc. v. Authentic Bartending School, Inc.*,
  931 F. Supp. 377 (E.D. Pa. 1996) ................................................................................ 6
*Basic Books, Inc. v. Kinko's Graphics Corp*, 758 F. Supp. 1522, 1543
  (S.D. N.Y. 1991) ........................................................................................................... 9
*Berg v. Symons*, 393 F. Supp. 2d 525, 539-40 (S.D. Tex. 2005) ..................................... 9
*Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*,
  78 F.3d 1111, 1123 (1996) .......................................................................................... 8
*Franklin v. Kellogg Co.*, 619 F.3d 604 (6th Cir. 2010) ....................................................... 4
*Geisel v. Poynter Products Inc.*, 283 F. Supp. 261 (S.D.N.Y 1968) ................................. 6
*General Pool Corp. v. Hallmark Pool Corp.*, 259 F. Supp. 383, (N.D.Ill. 1966) ............... 6
*Harrods Ltd. v. Sixty Internet Domain Names*, 110 F. Supp. 2d 420, 427
  (E.D. Va. 2000) ............................................................................................................ 7
*Louis Vuitton S.A. v. Lee,* 875 F.2d 584, 590 (7th Cir. 1989) ............................................ 9
*Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004).......... 5
*Microsoft Corp. v. Wholesale Club, Inc.*, 129 F.Supp. 2d 995, 1007
  (S.D. Tex. 2000) .......................................................................................................... 9
*Securacomm Consulting Inc. v. Securacom,* 166 F.3d 182, 187 (3d Cir. 1999) .............. 9

**Statutes**

15 U.S.C. § 1072 ............................................................................................................... 8
15 U.S.C. § 1125(d) .......................................................................................................... 2
15 U.S.C. § 1125(d)(1)(B)(i) ......................................................................................... 4, 5
15 U.S.C. § 1702 ............................................................................................................... 3

**Treatises**

2A Sutherland Statutory Construction § 47:1 (7th ed.) ..................................................... 4

2:09-cv-10756-MOB-VMM   Doc # 203   Filed 08/15/11   Pg 4 of 16   Pg ID 5526

iv

## **COUNTER-STATEMENT OF THE ISSUE PRESENTED**

Whether this Court should deny the Connexus Motion for Summary Judgment on the "bad faith, intent to profit from the mark" element under the ACPA.

Plaintiff respectfully submits that the answer is "yes."

## INTRODUCTION

In its Motion for Summary Adjudication, Defendants claim that their registration, use and trafficking of various domain names did not violate the ACPA because there is no evidence that they had a "bad faith intent to profit" as required by statute. Defendants claim that they were "not even aware of [Weather Underground] or its marks prior to registering the domain names." Pursuant to the plain language of the statute, admitted knowledge of a specific trademark is not a necessary factor to find bad faith intent on the part of an infringer. If it were, every cybersquatter could simply deny such knowledge, or otherwise insulate itself from knowledge in order to avoid liability.[1]

It is important to remember that this is not a case of a single, or even a dozen, infringing domains on a single trademark owner's registered marks. The undisputed fact that Defendants registered 288 variations of a single trademark owners registered marks really does say it all.[2] (See *Dkt No. 189, Plaintiff's Motion for Partial Summary Judgment, Memorandum in Support thereof, ¶21.*) Defendants also registered thousands of variations of other third party trademarks, receive a constant flow of threat

---

[1] Connexus did not keep, or otherwise destroyed, all records of which employees actually reviewed which domains for trademark issues prior to registration, or documents/data reflecting the outcome of any specific trademark review performed by Connexus. Employees who might have been involved in the registration and trademark review of the Subject Domains have testified that they subjectively had never heard of the company "Weather Underground" or "Wunderground" before this case, and despite the undisputed popularity of the web sites associated with these marks. (See *Dkt. No. 188, Declaration of William Delgado, Exhibits E and F.*) This self-serving testimony does not defeat Plaintiff's Motion for Summary Judgment, let alone support a counter-motion for Summary Judgment on the issue of bad faith.

[2] As of the time the Amended Complaint, Plaintiff had identified 264 domain names that were confusingly similar to Plaintiff's trademarks. After filing the Amended Complaint,

letters for trademark infringement and have been involved in numerous arbitrations and lawsuits on allegations of cybersquatting. (See *Dkt No. 189, Plaintiff's Motion for Partial Summary Judgment, Memorandum in Support thereof, ¶¶ 10 a-g, 11-15, 34-36.*) This is perhaps the most dramatic case of bad faith cybersquatting of any reported case under the ACPA to date.

15 U.S.C. § 1125(d) provides liability for any person who registers, uses or traffics in a domain which is similar to an established trademark if the Defendants have a "bad faith intent to profit from that mark." Nowhere under 15 U.S.C. § 1125(d) does it require "admitted" knowledge of Plaintiff's trademark. More importantly, Defendants intentionally omit the controlling paragraphs under the ACPA that set forth the indicia of "bad faith intent to profit from that mark" which Congress has instructed Courts to consider in analyzing bad faith intent. All nine factors weigh in favor of a finding of bad faith intent in this case. Summary Judgment is warranted under these facts <u>against Defendants</u> on the issue of bad faith cybersquatting.

Even if "admitted knowledge of the mark" was an enumerated "bad faith" factor under the ACPA, (a) the evidence is that Defendants reviewed registered trademarks prior to domain registration, use and trafficking of the subject domains, establishing that they did have actual knowledge of Plaintiff's trademarks (See *Dkt No. 189, Plaintiff's Motion for Partial Summary Judgment, Memorandum in Support thereof, ¶¶ 37-49.*), (b) the Defendants were on constructive notice of the existence of Weather

---

Plaintiff identified an additional 24 domain names that are confusingly similar to Plaintiff's trademarks. Thus, the total number of domain names at issue at present 288.

2

Underground's registered trademarks pursuant to 15 U.S.C. § 1702, and (c) willful blindness is never a defense to the element of intent under the Lanham Act.  For these reasons, and those set forth herein, Defendants' arguments fail in all regards, and we ask that its motion be DENIED.

### **COUNTER-STATEMENT OF FACTS**

Defendants' arguments in support of this motion are more than a little confusing, and clearly inconsistent with the undisputed facts.  In order to show that they are "trying hard" to avoid trademarks, Defendants provide testimony that they perform trademark review of the USPTO database before registering, using and trafficking in each and every domain.  (See *Dkt No. 189, Plaintiff's Motion for Partial Summary Judgment, Memorandum in Support thereof, ¶ 37.*)  Directly contrary to this defense, Defendants now apparently argue that there is no direct evidence that a specific employee actually reviewed Plaintiff's longstanding registered trademarks or its popular web sites prior to registration, use and trafficking in the 288 Subject Domain Names. It is impossible to square Defendants' testimony that they reviewed registered trademarks with the USPTO prior to registering any domain name, with their current argument that there is no evidence they reviewed Plaintiff's registered marks prior to registering or renewing the subject Domain Names or of any time during which they were listed as the registrant.[3]

---

[3] Defendants developed a system that (a) fails to log or document which employee reviewed any Defendants registered domain, or (b) documents or records what was actually reviewed in any specific instance, thereby setting up the defenses we see here.

3

### A. The Undisputed Evidence Is that Defendants Meet All Nine Criteria Under the ACPA for Bad Faith Intent to Profit

As noted below, an admission that Defendants have actual knowledge of Plaintiff's trademark is not mentioned, let alone required, under the ACPA. Instead, the ACPA lists nine objective behaviors as indicia of bad faith intent.[4] "The starting point in statutory construction is to *read* and examine the text of the act and draw inferences concerning the meaning from its composition and structure." 2A Sutherland Statutory Construction § 47:1 (7th ed.) (emphasis added). Defendants claim that the language "bad faith intent to profit," when interpreted within the plain meaning of the words, would require the Defendants to have had admitted knowledge of the marks' existence. In support of their argument, Defendants cites *Franklin v. Kellogg Co.*, which states: "unless otherwise *defined*, words will be interpreted as taking their ordinary, contemporary, common meaning." *Franklin v. Kellogg Co.*, 619 F.3d 604 (6th Cir. 2010) (emphasis added). Defendants' case law is sound, but it ultimately hurts Defendants' own case, because the ACPA indeed *defines* various factors to be considered in finding "bad faith intent to profit from the mark." The ACPA sets forth the non-exhaustive list of objective behaviors which support a finding of "bad faith intent to profit" in 15 U.S.C. § 1125(d)(1)(B)(i):

> In determining whether a person has a bad faith intent described under subparagraph (a), a court may consider factors such as, but not limited to
>
> **(I)** the trademark or other intellectual property rights of the person, if any, in the domain name;

---

[4] The ninth indicia of bad faith deals with the registration of personal names and thus is not relevant to either plaintiff's case, nor Defendants'' defenses.

4

| | |
|---|---|
| **(II)** | the extent to which the domain name consists of the legal name of the person or a name that is otherwise commonly used to identify that person; |
| **(III)** | the person's prior use, if any, of the domain name in connection with the bona fide offering of any goods or services; |
| **(IV)** | the person's bona fide noncommercial or fair use of the mark in a site accessible under the domain name; |
| **(V)** | the person's intent to divert consumers from the mark owner's online location to a site accessible under the domain name that could harm the goodwill represented by the mark, either for commercial gain or with the intent to tarnish or disparage the mark, by creating a likelihood of confusion as to the source, sponsorship, affiliation, or endorsement of the site; |
| **(VI)** | the person's offer to transfer, sell, or otherwise assign the domain name to the mark owner or any third party for financial gain without having used, or having an intent to use, the domain name in the bona fide offering of any goods or services, or the person's prior conduct indicating a pattern of such conduct; |
| **(VII)** | the person's provision of material and misleading false contact information when applying for the registration of the domain name, the person's intentional failure to maintain accurate contact information, or the person's prior conduct indicating a pattern of such conduct; |
| **(VIII)** | the person's registration or acquisition of multiple domain names which the person knows are identical or confusingly similar to marks of others that are distinctive at the time of registration of such domain names, or dilutive of famous marks of others that are famous at the time of registration of such domain names, without regard to the goods or services of the parties; and |
| **(IX)** | the extent to which the mark incorporated in the person's domain name registration is or is not distinctive and famous within the meaning of subsection (c) of this section. |

15 U.S.C. § 1125(d)(1)(B)(i). The first four of these factors are "those that militate against a finding of bad faith…," while the remaining five "are indicative of the presence of bad faith on the part of the defendant." *Lucas Nursery & Landscaping, Inc. v. Grosse*, 359 F.3d 806, 809 (6th Cir. 2004). The statutory factors to be considered are clear and do not require admitted knowledge of Plaintiff or its marks. In fact, it is clear that

5

Congress created a list of factors in anticipation of subjective denials of knowledge of a particular trademark. As noted in Plaintiff's Motion for Partial Summary Judgment on the same issue of bad faith, knowledge all of the specified bad faith factors exist in this case and support a finding of bad faith intent to profit as a matter of law. (See *Dkt No. 189, Plaintiff's Motion for Partial Summary Judgment, Memorandum in Support thereof,* ¶¶ 7-15.) The undisputed facts are that Defendants violated each criteria for "bad faith intent to profit" under the ACPA.

Defendants urge this Court to construe the ACPA narrowly, but courts have consistently opined that the remedial nature of section 1125 of the Act is paramount, and therefore must be construed broadly and read within the context of Chapter 22, Trademarks. See *Barmasters Bartending School, Inc. v. Authentic Bartending School, Inc.*, 931 F. Supp. 377 (E.D. Pa. 1996) (provision of Lanham Act prohibiting false designations of origin and false descriptions is traditionally construed broadly, so as to protect remedial nature of Act); *Geisel v. Poynter Products Inc.*, 283 F. Supp. 261 (S.D.N.Y 1968) (this section is remedial and should be broadly construed); *General Pool Corp. v. Hallmark Pool Corp.*, 259 F. Supp. 383, (N.D.Ill. 1966) (this section must be read in context of this chapter). In support of its position that the ACPA should be construed narrowly, the Defendants rely heavily on dicta within *Harrods Ltd. v. Sixty Internet Domain Names*, a case which is easily distinguished from the case at bar. In Harrods, an *in rem* proceeding, the district court dismissed the Plaintiff's ACPA claim, not because the court determined that actual knowledge was needed to establish bad faith, but because "Plaintiff neither explicitly nor implicitly alleged bad faith intent to profit

6

[in the complaint]." *Harrods Ltd. v. Sixty Internet Domain Names*, 110 F. Supp. 2d 420, 427 (E.D. Va. 2000).

Courts are in agreement that to protect the remedial nature of the statute, the language of the Lanham Act, and thus the ACPA, must be construed broadly, within the context of trademark law. In this case, Defendants have created a business model with the obvious effect of mass typosquatting, and are using the shear volume of their unlawful model as a shield against a finding of bad faith intent. What Defendants have done here is far worse than the cybersqauatter who registers a small number of infringing domains against a single trademark holder. Defendants have created a business model to profit off trademarks in hope they won't be noticed, and the expectation that few, if any, trademark holders will sue if Defendants quickly agree to transfer infringing domains. Defendants keep the profit until the date of transfer and for all domains where trademark holders remain unaware of their activities.

### B. The Undisputed Evidence Is that Defendants Had Actual Notice of Plaintiffs Marks

Even if a subjective admission of actual knowledge of a particular trademark was required or even a key factor under the ACPA, Defendants have testified that they review trademark registrations with the USPTO prior to registering every domain. (See *Dkt No. 189, Plaintiff's Motion for Partial Summary Judgment, Memorandum in Support thereof, ¶ 37.*) There are literally no facts in this record to support Defendant's current argument that Plaintiff's marks were somehow not reviewed per standard procedures prior to registration, use and trafficking of the Subject 288 Domain Names.

### C. The Undisputed Evidence Is that Defendants Had Constructive Notice of Plaintiffs Marks

Defendants do not contest that Plaintiff's trademarks were registered at the USPTO well prior to all of the 288 Subject Domains being registered, used and trafficked. (See *Dkt No. 189, Plaintiff's Motion for Partial Summary Judgment, Memorandum in Support thereof, ¶¶ 1-2.*) Defendants do not contest the fact that Plaintiff's web sites were among the most popular in the United States at the time they registered, used and trafficked in the 288 Subject Domains. (See *Dkt No. 189, Plaintiff's Motion for Partial Summary Judgment, Memorandum in Support thereof, ¶¶ 3-6.*) Section 1072 of the U.S. Code states, "[r]egistration of a mark on the principal register provided by this chapter or under the Act of March 3, 1881, or the Act of February 20, 1905, **shall** be constructive notice of the registrant's claim of ownership thereof." 15 U.S.C. § 1072. The Sixth Circuit confirmed that even accidental infringers are nevertheless treated as having knowledge under the statute. "After registration, there can be no new "innocent" users, and even an innocent prior user cannot expand the area of its use, because Lanham Act registration puts all would-be users of the mark (or a confusingly similar mark) on constructive notice of the mark." *Champions Golf Club, Inc. v. The Champions Golf Club, Inc.*, 78 F.3d 1111, 1123 (1996) (citing § 1072). The undisputed facts are that Defendants were on constructive notice of Plaintiff's registered marks at the time of their unlawful acts.

8

### D. Willful Blindness Is Not a Defense to Bad Faith Intent

For "willful" and "intentional" trademark infringement cases, conduct can be deemed willful where the Defendants acted with "willful blindness." *Louis Vuitton S.A. v. Lee,* 875 F.2d 584, 590 (7th Cir. 1989). Courts have easily found willful conduct where a Defendant acts with "'reckless disregard for, or [with] willful blindness'" toward a trademark owner's rights. *Berg v. Symons*, 393 F. Supp. 2d 525, 539-40 (S.D. Tex. 2005). See also *Microsoft Corp. v. Wholesale Club, Inc.*, 129 F.Supp. 2d 995, 1007 (S.D. Tex. 2000) ("A finding of willfulness can be willful blindness."); *A Touch of Class Jewelry Co. v. J.C. Penney Co.*, No. CIV. A. 98-2949, 2000 U.S. Dist. LEXIS 12898, 2000 WL 1224804, at *5 (E.D. La. Aug. 28, 2000) (quoting *Securacomm Consulting Inc. v. Securacom,* 166 F.3d 182, 187 (3d Cir. 1999)) ("Knowing or willful infringement . . . involves an intent to infringe or a deliberate disregard of the mark holder's rights."). A plaintiff sustains its burden of proving willfulness "by showing [the] Defendant knew or should have known it infringed [the plaintiff's] copyrights. . . . Willful does not mean malicious, rather, it means with knowledge, whether actual or constructive." *Basic Books, Inc. v. Kinko's Graphics Corp*, 758 F. Supp. 1522, 1543 (S.D. N.Y. 1991).

It is easy to lose perspective given the astounding number of infringing domains on this Plaintiff's marks, let alone the number of third party trademarks being infringed by Defendants, and near endless stream of trademark threat letters received by Defendants each month. Even if Defendants had not testified that they review for registered trademarks prior to registration, use and trafficking, the best defense they

could muster would amount to little more than willful blindness. No reasonable jury could find anything but 'bad faith intent' under these facts.

## **CONCUSION**

The Court could easily conclude on the present record that Defendants' business was set up in order to provide superficial and unsupportable defenses in anticipation of ACPA litigation by plaintiffs such as The Weather Underground.  Regardless, the ACPA specifically anticipates the defense of "I did not know" and sets forth nine factors to be considered in determining "bad faith intent to profit from that mark." Neither the statute itself nor the specific bad faith factors mention "admitted knowledge" of a specific trademark by Defendants.

WHEREFORE, for the reasons set forth herein, Plaintiff Weather Underground respectfully opposes Defendants' Motion for Summary Adjudication and asks that the Motion be DENIED.

/

/

/

/

/

/

/

/

/

Respectfully submitted this 15th day of August, 2011.

/s/Enrico Schaefer
Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI  49686
231-932-0411
enrico.schaefer@traverselegal.com

Lead Counsel for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI  48104
734-662-4426
apatti@hooperhathaway.com

Attorneys for Plaintiff

## CERTIFICATE OF SERVICE

I hereby certify that on 15th day of August, 2011, I electronically filed the foregoing paper with the Court using the ECF system which will send notification of such filing to the following:

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI  49686
231-932-0411
enrico.schaefer@traverselegal.com
brianhall@traverselegal.com
Lead Attorneys for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI  48104
734-662-4426
apatti@hooperhathaway.com
Attorneys for Plaintiff

William A. Delgado (admitted pro hac)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA  90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

Nicholas J. Stasevich (P41896)
Benjamin K. Steffans (P69712)
Bruce L. Sendek (P28095)
BUTZEL LONG, PC
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000
stasevich@butzel.com
steffans@butzel.com
sendek@butzel.com
Local Counsel for Defendants

/s/Enrico Schaefer
Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI  49686
231-932-0411
enrico.schaefer@traverselegal.com
Lead Counsel for Plaintiff