IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
   a Michigan corporation,

       Plaintiff,

vs.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

NAVIGATION CATALYST SYSTEMS, INC.,
   a Delaware corporation; CONNEXUS CORP.,
   a Delaware corporation; FIRSTLOOK, INC.,
   a Delaware corporation; and EPIC MEDIA
   GROUP, INC., a Delaware corporation,

       Defendants.

_____

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI 49686
231-932-0411
enrico.schaefer@traverselegal.com
brianhall@traverselegal.com
Lead Attorneys for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI 48104
734-662-4426
apatti@hooperhathaway.com
Attorneys for Plaintiff

William A. Delgado
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

Nicholas J. Stasevich (P41896)
Benjamin K. Steffans (P69712)
BUTZEL LONG, P.C.
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
stasevich@butzel.com
steffans@butzel.com
Local Counsel for Defendants

_____

**DEFENDANTS THE EPIC MEDIA GROUP, INC.'S REPLY MEMORANDUM IN
SUPPORT OF MOTION FOR SUMMARY JUDGMENT**

1

**REPLY MEMORANDUM OF POINTS AND AUTHORITIES**

I. **ARGUMENT**

    A. <u>Plaintiff Misunderstands and Misapplies the Law With Respect to the Parent-Subsidiary Relationship.</u>

As a general matter, Plaintiff's opposition to Epic Media's Motion for Summary Judgment ("MSJ") (and its basis for imposing liability on Epic Media) rests on the fact that Epic Media "controls" Connexus, a refrain that is repeated throughout its brief. Notably, however, it does not support this conclusory assumption with any admissible evidence. Moreover, it is an irrelevant point. **Every** parent corporation "controls" its wholly-owned subsidiaries by virtue of owning 100% of the shares in the subsidiary. But, mere control is not sufficient to impose liability on a parent for the acts of its subsidiaries. *Cf.* Ruiz v. Sysco Corp. 2011 WL 3300098 * 4 (S.D. Cal. July 29, 2011) (to show "interrelation of operations" in a similar context, "plaintiff must show…that the parent has exercised control to a degree that exceeds the control normally exercised by a parent corporation."). Plaintiff presents no evidence of beyond-normal control.

Similarly, Plaintiff attempts to make hay about the existence of intercompany cash transfers between Epic Media and Connexus. But, cash transfers between parents and subsidiaries are entirely appropriate and entirely common. After all, parent corporations do not establish subsidiaries just so that transactional lawyers have something to do during the weekdays. Wholly-owned subsidiaries exist to benefit the parent in some way. *Trenswick Am. Lit. Trust v. Ernst & Young, LLP*, 906 A.2d 168 (2006) ("A wholly-owned subsidiary is to be operated for the benefit of its parent."). The real question is whether the formalities of the inter-company cash transfers were disregarded, resulting in a "comingling of funds," or whether the

transfers were recorded in a legitimate way. Here, contrary to Plaintiff's rhetoric that Epic Media "raided" Connexus of its cash, the uncontroverted evidence establishes that inter-company cash transfers are duly recorded as a "receivable" or "payable" and dealt with as a legitimate obligation.[1] Deposition Transcript of David Graff, taken June 24, 2011, at 84:20-88:4 ("Graff Dep."); *see also* Second Declaration of David Graff, dated August 30, 2011, at ¶¶ 4-6; *Sonora Diamond Corp. v. Sup. Ct.*, 83 Cal. App. 4th 523, 547 (2000) ("There is no evidence [parent] 'stripped' [subsidiary] of its assets. In this case, all financial transactions between [parent] and [subsidiary] were separately recorded, maintained in the records of each, documented as intercompany loans and similar arrangements, and dealt with as legitimate obligations. The fact that no interest was charged was immaterial…") (internal citations omitted).[2]

      B.    <u>Reverse Triangular Mergers Do Not Result in Liability</u>.

In its opposition, Plaintiff implicitly concedes that the reverse triangular merger protects Epic Media from liability. Realizing this, Plaintiff cites to the securities case of *In re McKesson* for the principle that the reverse triangular merger can be treated as a "de facto" merger if has been structured to disadvantage creditors or shareholders. Opp. at 7. Nevertheless, this case does not involve a securities claim, and Plaintiff is neither a creditor nor a shareholder of any of the defendants. Thus, as in *McKesson*, Plaintiff cannot show any facts to support the proposition that a creditor or shareholder has been disadvantaged.

---

[1] In its opposition, Plaintiff **concedes** the existence of a recorded receivable but simply argues it should be disregarded which would be contrary to law. See Opp. at 5.

[2] Plaintiff also erroneously argues that Epic Media intends to claim past net operating losses ("NOL") of Connexus to reduce Epic Media's own income. Opp. at p. 5. That is simply untrue as David Graff explained at deposition. Graff Depo. at 73:14-74:15.

   C. The "De Facto Merger" Doctrine Does Not Apply.

As Epic Media noted in its opening brief, the "de facto" merger doctrine does not apply because the transaction between Epic Media and Connexus Corporation was not a sale of assets.[3] Even if the doctrine applied, Plaintiff cannot show all four elements. Epic Media submitted uncontroverted evidence that Connexus and Firstlook are still in business and still operational which means that Plaintiff cannot meet, at least, the third element which requires the seller to cease operations. Realizing that, Plaintiff provides a tortured and altogether unclear interpretation of the doctrine as to why that third element should not apply. Nevertheless, the only citation in support of this tortured interpretation (*U.S. v. Gen. Battery Corp.*) actually supports Epic Media because in *General Battery*, the agreement between the seller and purchaser explicitly provided for the complete liquidation and dissolution of the seller corporation. *U.S. v. Gen. Battery Corp.*, 423 F.3d 294, 307-08 (3d Cir. 2005). That is the exact opposite of this case given that Connexus and Firstlook are still corporations in good standing, conduct business, pay debts, and have employees.

   D. Agency Theory Does Not Result in Liability Either.

Plaintiff's agency theory is also altogether flawed. The title of Section C of the Argument argues that "Epic has used the domains under the ACPA as agent or alter ego of Connexus." But, Plaintiff does not cite, and Defendants are not aware of, any case which stands for the proposition that an *agent* can be liable for the actions of its *principal*. To the extent that Plaintiff meant to argue that Connexus is an agent of Epic, it must show that Epic's control of Connexus is so pervasive that it has reduced Connexus to a mere instrumentality:

---

[3] As the Court can readily ascertain, the doctrine clearly anticipates a "sale" since each of the four factors refer to either a "purchaser" corporation or a "seller" corporation.

3

> The nature of the control exercised by the parent over the subsidiary necessary to put the subsidiary in an agency relationship with the parent must be over and above that to be expected as an incident of the parent's ownership of the subsidiary and must reflect the parent's purposeful disregard of the subsidiary's independent corporate existence. **The parent's general executive control over the subsidiary is not enough**; rather there must be a strong showing beyond simply facts evidencing "the broad oversight typically indicated by [the] common ownership and common directorship" present in a normal parent-subsidiary relationship. As a practical matter, the parent must be shown to have moved beyond the establishment of general policy and direction for the subsidiary and in effect taken over performance of the subsidiary's *day-to-day* operations in carrying out that policy.

*Sonora Diamond*, 83 Cal. App. 4th at 542 (citations omitted) (bold added).  Plaintiff has not and cannot make that significant showing.[4]

      E.      <u>Plaintiff Has Not Pleaded Any Facts to Support a Conspiracy Cause of Action</u>.

Plaintiff boldly claims that its conspiracy claims are sufficiently pleaded.   This begs the question: where?  It certainly is not in the FAC even though a conspiracy claim, like a fraud claim, requires pleading with specificity.  *See Phoenix Life Ins. Co. v. LaSalle Bank N.A.*, 2009 WL 877684 *12 (E.D. Mich. Mar. 30, 2009).  Moreover, there is not a single citation to admissible evidence in Plaintiff's opposition that would support a conspiracy cause of action.

      F.      <u>Epic Media Merits Summary Judgment Not More Cost and Expense</u>.

Realizing that it has no facts which can rebut Epic Media's MSJ, Plaintiff essentially asks this Court to "punt" on the Motion until after trial and further discovery.  First, that would violate Local Rule 16.1(f) which requires a decision on all pending dispositive motions before the pretrial order is lodged with the Court.  More importantly, Plaintiff has not met the requisite showing for additional discovery.  To be sure, Plaintiff attacks certain witnesses for lacking

---

[4] The failure to show that Epic Media has reduced Connexus Corporation to a "mere instrumentality" also precludes a finding that Epic Media is an alter ego of Connexus as Epic Media explained in its opening brief.

4

knowledge on some isolated questions, but Plaintiff fails to acknowledge the responses to its written discovery it received (where such questions were answered) or Epic Media's document production. *See* Second Declaration of William A. Delgado, dated August 30, 2011, at ¶¶ 2-6.

Indeed, Plaintiff makes absolutely **no** showing of what additional discovery it could conduct that would change the outcome of this motion. Certain facts (e.g., that Epic Media acquired Connexus through a reverse triangular merger) are immutable and dispositive. "Bare allegations of the need for discovery are not enough under Rule 56(f). To fulfill the requirements of Rule 56(f), [plaintiff] (through counsel) had to describe with some precision the materials he hopes to obtain with further discovery, and exactly how he expects those materials would help him in opposing summary judgment." *Everson v. Leis*, 556 F.3d 484, 493 (6th Cir. 2009)[5]; *Jocham v. Tuscola County*, 239 F. Supp. 2d 714, 734 (E.D. Mich. 2003) ("Rule 56(f) may be invoked only when the plaintiff has been unable to acquire needed discovery through due diligence, not to permit further discovery when the plaintiff had failed to thoroughly examine her opportunities in the time available to her.").

RESPECTFULLY SUBMITTED this 30th day of August, 2011.

                                    */s/William A. Delgado*
                                    William A. Delgado
                                    WILLENKEN WILSON LOH & LIEB LLP
                                    707 Wilshire Boulevard, Suite 3850
                                    Los Angeles, CA 90017
                                    (213) 955-9240
                                    williamdelgado@willenken.com
                                    Lead Counsel for Defendants

---

[5] Effective December 1, 2010, Rule 56(f) is now Rule 56(d) but the requirements remain the same. Here, Plaintiff did not even meet the procedural requirement of filing the requisite affidavit that would be required to request additional discovery. Fed. R. Civ. P. 56(d); *Cacevic v. City of Hazel Park*, 226 F.3d 483, 488 (6th Cir. 2000).

## **CERTIFICATE OF SERVICE**

      I hereby certify that on August 30, 2011, I electronically filed the foregoing paper with the Court using the ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Enrico Schaefer (P43506)<br>Brian A. Hall (P70865)<br>TRAVERSE LEGAL, PLC<br>810 Cottageview Drive, Unit G-20<br>Traverse City, MI  49686<br>231-932-0411<br>enrico.schaefer@traverselegal.com<br>brianhall@traverselegal.com<br>Lead Attorneys for Plaintiff | Nicholas J. Stasevich (P41896)<br>Benjamin K. Steffans (P69712)<br>BUTZEL LONG, P.C.<br>150 West Jefferson, Suite 100<br>Detroit, MI  48226<br>(313) 225-7000<br>stasevich@butzel.com<br>steffans@butzel.com<br>Local Counsel for Defendants |
| Anthony P. Patti (P43729)<br>HOOPER HATHAWAY, PC<br>126 South Main Street<br>Ann Arbor, MI  48104<br>734-662-4426<br>apatti@hooperhathaway.com<br>Attorneys for Plaintiff | William A. Delgado<br>WILLENKEN WILSON LOH & LIEB LLP<br>707 Wilshire Boulevard, Suite 3850<br>Los Angeles, CA  90017<br>(213) 955-9240<br>williamdelgado@willenken.com<br>Lead Counsel for Defendants |

    */s/William A. Delgado*
    William A. Delgado
    WILLENKEN WILSON LOH & LIEB LLP
    707 Wilshire Boulevard, Suite 3850
    Los Angeles, CA  90017
    (213) 955-9240
    williamdelgado@willenken.com
    *Lead Counsel for Defendants*