IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
    a Michigan corporation,

        Plaintiff,

vs.

NAVIGATION CATALYST SYSTEMS,
INC., a Delaware corporation;
CONNEXUS CORP., a Delaware
corporation; FIRSTLOOK, INC., a
Delaware corporation; and EPIC
MEDIA GROUP, INC., a Delaware
corporation;

        Defendants.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

_____

| | |
|---|---|
| Enrico Schaefer (P43506)<br>Brian A. Hall (P70865)<br>TRAVERSE LEGAL, PLC<br>810 Cottageview Drive, Unit G-20<br>Traverse City, MI  49686<br>231-932-0411<br>enrico.schaefer@traverselegal.com<br>brianhall@traverselegal.com<br>Lead Attorneys for Plaintiff | Nicholas J. Stasevich (P41896)<br>Benjamin K. Steffans (P69712)<br>BUTZEL LONG, PC<br>150 West Jefferson, Suite 100<br>Detroit, MI  48226<br>(313) 225-7000<br>stasevich@butzel.com<br>steffans@butzel.com<br>sendek@butzel.com<br>Local Counsel for Defendants |
| Anthony P. Patti (P43729)<br>HOOPER HATHAWAY, PC<br>126 South Main Street<br>Ann Arbor, MI  48104<br>734-662-4426<br>apatti@hooperhathaway.com<br>Attorneys for Plaintiff | William A. Delgado (admitted pro hac vice)<br>WILLENKEN WILSON LOH & LIEB LLP<br>707 Wilshire Boulevard, Suite 3850<br>Los Angeles, CA  90017<br>(213) 955-9240<br>williamdelgado@willenken.com<br>Lead Counsel for Defendants |

_____

**PLAINTIFF'S MOTION AND MEMORANDUM FOR RECONSIDERATION OR, IN THE ALTERNATIVE, CLARIFICATION OF ORDER REGARDING DEFENDANT'S MOTION TO STRIKE REPORT OF CHRISTOPHER SCHWERZLER AND PROHIBIT HIS TESTIMONY ON SAME AT TRIAL**

NOW COMES Plaintiff, The Weather Underground, Inc. ("Plaintiff"), by and through its counsel, Traverse Legal, PLC, and moves under FRCP 60 and Local Rule 7.1(g) for reconsideration or, in the alternative, clarification of the Court's September 21, 2011, Order regarding Defendant's Motion to Strike Report of Christopher Schwerzler and Prohibit His Testimony of Same at Trial.

### PROCEDURAL BACKGROUND

1.     On August 15, 2011, Defendant filed its *Daubert* Motion to Strike Report of Christopher Schwerzler and Prohibit His Testimony on Same at Trial (Dkt. No. 204) arguing that (1) specific opinions by Mr. Schwerzler about trademarks and intent be struck, (2) Mr. Schwerzler's trademark matching code and related testimony be struck, and (3) Mr. Schwerzler's code comparing third party domain names against Defendant's portfolio and related testimony be struck.  Defendant did not take issue with Mr. Schwerzler's report in other regards, such as his ability to write scripts to identify information in the terabyte drive produced by Defendant or identify registration dates, identify whether trademark registrations exist in the Defendant's database, etc.

2.     In fact, Defendant's Daubert Motion argued, "Schwerzler is simply not qualified to offer <u>all of the opinions</u> he wants to offer."  (Defendant's Reply Brief at Page 3.)  Defendant further states in its reply brief, "There's nothing in Plaintiff's opposition which even attempts to argue that Schwerzler is even qualified to opine <u>anything other than his ability to extract files from a database and run a query on those files</u>."  Id

ii

(emphasis added). Defendant goes on to state, "Perhaps it would be one thing if Mr. Schwerzler had been retained to simply discuss how he extracted information from a database." (Defendant's Reply Brief at Page 5.) .

3.      On August 30, 2011, Plaintiff filed its response to Defendant's *Daubert* motion (Dkt. No. 218).  That response is incorporated herein.

4.      On September 2, 2011, Defendant filed its Reply to its *Daubert* motion (Dkt. No. 221).

5.      A hearing was held on September 15, 2011, before the Honorable Judge Battani regarding this particular motion, where in the Court granted Defendant's *Daubert* Motion to Strike Report of Christopher Schwerzler and Prohibit His Testimony on Same at Trial.

6.      The basis of the Court's ruling was as follows and went well beyond the relief actually and requested and specifically argued by Defendant:

> "THE COURT:  Let me say on the expert, I agree, this gentleman is way too far involved in this case – in this business to be unbiased which, of course every expert has a certain bias or he wouldn't be selected as an expert, we all know this, but this person has a bias that is beyond the subject, it is an interest in the outcome of the case, and because he has an interest in the outcome of this case the Court is not going to allow him to testify as an expert." (*Exhibit A*, 9-15-11 Hearing Transcript, pp. 68:25-69:7).

7.      On September 21, 2011, this Court issued its Order granting Defendant's *Daubert* Motion regarding Chris Schwerzler (Dkt. No. 222). Specifically, the Order grants Defendant's [Motion] to Strike Report of Christopher Schwerzler and Prohibit his Testimony at Trial."

8.      The ruling has created ambiguity about: (1) the fact that the portions of Mr. Schwerzler's testimony which were contested as beyond his expertise were limited, yet the Court order suggests that Mr. Schwerzler can not testify to other unchallenged portions of his report; and (2) what Mr. Schwerzler can, in fact, testify to at trial as a fact witness, as law opinion or as an expert.

9.      Mr. Schwerzler's 2011-10-10 Report at issue[1] is attached as *Exhibit B*.  As noted on Page 2 of Mr. Schwerzler's 2110-10-10 Report, "I will be prepared to testify as to the contents of these data production or further analysis of the data in rebuttal to Defendants' testimony." Other matters that were not challenged by Defendants are noted therein.

10.      The subjective (opinion) portions of Mr. Schwerzler's report where he draws subjective conclusions based on extracted information from the terabyte drive are marked in yellow on *Exhibit B*.  The portions highlighted in yellow are the portions which Plaintiff believes the Court intended to be struck based on the Daubert Motion and arguments at hearing and which Plaintiff indicated it would not seek to introduce through Mr. Schwezler.  The remaining (un-highlighted) portions of Mr. Schwerzler's report were never specifically challenged in Defendant's Daubert Motion and, in any event, should

/

/

---

[1] Defendant only provided an unsigned draft version of the Report. Mr. Schwerzler's actual signed report is included as Exhibit B herein.  Mr. Schwerzler's 08-09-2010 Initial Report became moot once Defendant thereafter produced the terabyte drive at issue in this case, and his 2011-10-10 Report was issued.

be allowed into evidence either as expert testimony under FRE 702 and 703 (Expert Opinion), FRE 701 (Lay Opinion) or as otherwise relevant testimony based on Mr. Schwerzler's observations and queries on the terabyte drive under FRE 401.

11.     Plaintiff also requests the Court reconsider it's ruling to the extent it has ruled that Mr. Schwerzler is disqualified from offering any information contained in his report under FRE 702, based on bias.  Mr. Schwerzler's report contains objective analysis of the terabyte drive that is disclosed, 100% testable and verifiable and for which the issue of bias is wholly irrelevant. Examples of these items include, but are not limited to:

> a.     Identification of the contents of the database and hard drive.
>
> b.     Trademarks included in the trademark database loaded by Defendants into their system, including the existence of the Plaintiff's marks in that database.
>
> c.     Dates the trademark database and other databases were loaded into Defendant's system.
>
> d.     Contents of table "search_algo_client_data_trademark" which is the output file for Defendant's trademark matching tool.
>
> e.     Examples of how Defendants' trademark matching software scores example domains registered by Defendants.
>
> f.     Contents of table "dp_tasting_queue_complete_previous_20081103" also known as the Domain-park table that shows domains tasted and then deleted or kept.

v

(This database included another 77 tasted domains similar to Plaintiff's trademarks that Defendants have failed to previously identify).

g.      Dates upon which privacy services were added to domains.

h.      The number of domains in certain tables.

i.      How alternative scripts would match against trademarks compared to the ones used by Defendant.

j.      A comparison of known web sites against Defendants' portfolio and the list of typo-versions of typographically similar domains registered by Defendant.

12.      As to the above and similar items, Mr. Schwerzler's expertise to write such scripts and run comparisons is not in question. Since all of the scripts are disclosed and unchallenged, the issue of bias is irrelevant.  Because the primary piece of evidence in this case is the terra byte drive produced by Defendants, the parties require clarification of the Court's ruling and an early determination of what Mr. Schwerzler will be allowed to testify on at trial.

13.      This motion is supported by the attached Memorandum of Points and Authorities, the case file, and the arguments of counsel that the Court would entertain at a hearing on this motion.

14.      On October 4, 2011, there was as conference between Enrico Schaefer, counsel for The Weather Underground, and William A. Delgado, counsel for Navigation Catalyst Systems, Inc., in which The Weather Underground explained the nature of this Motion for Reconsideration or, in the Alternative, Clarification of the Court's September

21, 2011 Order regarding Defendant's Motion to Strike Report of Christopher

Schwerzler and Prohibit His Testimony of Same at Trial and its legal basis and

requested, but did not obtain, concurrence in the relief sought. Counsel did indicate that

he was open to the proposition that Mr. Schwerzler could run scripts on the terabyte

drive and indicate what is contained therein but has not stipulated to the same.  Counsel

further indicated that he would be arguing enforcement of the Court's September 21,

2011 Order to broadly preclude the testimony of Chris Schwerzler about the subject

terabyte drive and its contents.

WHEREFORE, Plaintiff requests reconsideration or clarification of the Court's

September 21, 2011 Order.

Respectfully submitted this 7th day of October, 2011.

/s/Enrico Schaefer
Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI  49686
231-932-0411
enrico.schaefer@traverselegal.com


*Lead Counsel for Plaintiff*

## TABLE OF AUTHORITIES

**Cases**

*Coal Resources, Inc. v. Gulf & Western*,
865 F.2d 761, 775 (6th Cir.1989) ................................................................... 4, 5

*Conde v. Velsicol Chem. Corp.*,
804 F. Supp. 972 (S.D. Ohio 1992) aff'd, 24 F.3d 809 (6th Cir. 1994) ........................... 4

*General Mills Supply Co. v. SCA Services, Inc.*,
697 F.2d 704, 713 (6th Cir.1982) ................................................................... 4

*Glosband v Watts Detective Agency, Inc.*,
21 BR 963, 10 Fed Rules Evid Serv 1341 (1981, DC Mass) ........................................ 5

*Gravely v Providence Partnership,*
549 F2d 958 (1977 CA4 Va) ......................................................................... 5

*In re Air Crash at Detroit Airport*,
737 F. Supp. 427 (E.D. Mich. 1989) ................................................................. 4

*In re Commercial Money Center*,
737 F. Supp. 2d 815 (N.D. Ohio 2010) ............................................................... 4

*United States v. Cican*,
156 F.Supp.2d 661, 668 (E.D.Mich.2001) ............................................................ 2

*United States v. Lockett*,
328 F.Supp.2d 682, 684 (E.D.Mich.2004) ........................................................... 2

**Rules**

E.D. Mich. LR 7.1(g)(3) ............................................................................. 2

FRCP Rule 60 ....................................................................................... 3

FRE 701 ............................................................................................ 2

## MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

Plaintiff requests that this Court reconsider its September 21, 2011, Order Striking Mr. Schwerzler's Report and related testimony or, in the alternative, clarify its ruling so that the parties know how to present the key digital evidence at issue in this case, at trial.  This evidence is not available to jurors on any other basis.

In Defendant's *Daubert* Motion, Defendants' took issue with a relative few of the statements made by Mr. Schwerzler in his report and related deposition testimony. These generally included (a) Mr. Schwerzler's 'opinions' related to Defendants'' bad faith intent to violate trademarks and his opinion that they did not try very hard to avoid trademarks, (b) Schwerzler's trademark matching script (detailed in his report) which compares a domain name to the trademark database downloaded off Defendant's terabyte drive, and (c) Schwerzler's script which compared a list of existing third party web sites from various sources to Defendants' portfolio, the output of which was included as Exhibit L to his report.  As to these specific items only, Defendants argued:

(1) Mr. Schwerzler was unqualified as an expert to render opinions;

(2) Schwerzler's opinions are unreliable because if his extreme bias;

(3) Schwerzler's methodology is unreliable;

(4) Schwerzler's report will not assist the trier of fact.

The Court ruled that Mr. Schwerzler's opinions and his report were inadmissible on the single issue of 'bias.  Defendants are now expected to argue that the Court's Order precludes all of Mr. Schwerzler's report, including those items which were not the

1

subject of their *Daubert* Motion, and potentially his ability to testify as to the contents of the terabyte drive.

The Court left open the issue of whether or not Mr. Schwerzler could testify as a fact witness on certain issues, and perhaps even as lay opinion under FRE 701. However, it is unclear what portions of Mr. Schwerzler's testimony might be considered 'fact' or 'opinion' under the Federal Rules of Evidence.  Moreover, just because Mr. Schwerzler is precluded from offering opinions about 'intent' based on his analysis does not mean he should be precluded from offering the underlying data. Because the primary piece of evidence in this case is the terra byte drive database produced by Defendants, the parties require clarification of the Court's ruling and an early determination of what Mr. Schwerzler will be allowed to testify on at trial. Specifically, the juror needs access to the information on the terabyte drive.  Without immediate clarification, counsel for Plaintiff will be unable to prepare for trial in a reasonable, cost-effective way.

## ARGUMENT

Eastern District of Michigan Local Rule 7.1(g) provides that a motion for reconsideration shall be granted only if the movant can (1) "demonstrate a palpable defect by which the court and the parties have been misled," and (2) show that "correcting the defect will result in a different disposition of the case." E.D. Mich. LR 7.1(g)(3). "A 'palpable defect' is 'a defect that is obvious, clear, unmistakable, manifest, or plain.' *United States v. Lockett*, 328 F.Supp.2d 682, 684 (E.D.Mich.2004) (citing *United States v. Cican*, 156 F.Supp.2d 661, 668 (E.D.Mich.2001)). In this case, the

Court entered an order that appears to be beyond what was intended.  To the extent,

the Court intended to preclude all of Mr. Schwerzler's testimony as included in his

report, Plaintiff argues that a palpable defect has occurred and would affect the

outcome of the case.

FRCP Rule 60 provides relief from a court order as follows:

(a) Corrections Based on Clerical Mistakes; Oversights and Omissions.  The

court may correct a clerical mistake or a mistake arising from oversight or

omission whenever one is found in a judgment, order, or other part of the record.

The court may do so on motion or on its own, with or without notice. But after an

appeal has been docketed in the appellate court and while it is pending, such a

mistake may be corrected only with the appellate court's leave.

(b) Grounds for Relief from a Final Judgment, Order, or Proceeding. On motion

and just terms, the court may relieve a party or its legal representative from a

final judgment, order, or proceeding for the following reasons:

(1) mistake, inadvertence, surprise, or excusable neglect;

…..

(6) any other reason that justifies relief.

FRCP 60 provides the relief requested herein.

A.   **This Court Should Reconsider it's Ruling that Mr. Schwerzler Is**
     **Precluded from Certain Testimony Based on Bias**.

In support of Defendant's contention that on certain specific issues like

Defendants' intent, Chris Schwerzler's bias precluded him from offering expert opinions.

3

Defendants cited two cases in support of their argument that bias precluded the noted testimony, *In re Commercial Money Center*, 737 F. Supp. 2d 815 (N.D. Ohio 2010) and *In re Air Crash at Detroit Airport*, 737 F. Supp. 427 (E.D. Mich. 1989). Neither case set forth a per se rule of disqualifications for experts who were also parties or limited testimony that was otherwise reliable. It is clear that the Court is compelled to determine what the opinions are, the support for those opinions, and whether bias is so extreme as to make those specific opinions unhelpful to the jury.

In *Conde v. Velsicol Chem. Corp*., 804 F. Supp. 972 (S.D. Ohio 1992) aff'd, 24 F.3d 809 (6th Cir. 1994), the district court rejected the idea that there is a per se rule against a plaintiff providing expert testimony. *Id*. at 985, and that such expert testimony may be admitted but accorded lesser weight or credibility. *Id*. In *Conde*, the district court ultimately allowed the plaintiff-expert's testimony because, "[j]uries are not as stupid as it pleases some people to believe." *Id*. at 985-86 (quoting *General Mills Supply Co. v. SCA Services, Inc*., 697 F.2d 704, 713 (6th Cir.1982)). The court went on to declare,

> "[i]t is the province of the jury to weigh the credibility of witnesses,
> including witnesses testifying as experts." Id. at 986 (quoting *Coal
> Resources, Inc. v. Gulf & Western*, 865 F.2d 761, 775 (6th Cir.1989)).
> Thus, the court concluded,  [A]lthough an expert may ostensibly be
> clothed with the added credibility which inures to experts testifying at trial,
> juror common sense, cross-examination, argument by the party-
> opponent's attorneys, the testimony of the party-opponent's own expert

4

witnesses, and a cautionary instruction from the Court, if required, will normally assure that the jury fairly evaluates the expert's testimony. *Id*.

For instance, in *Gravely v Providence Partnership,* 549 F2d 958 (1977 CA4 Va), Plaintiff brought an action by a hotel guest against the architect of a spiral stairway on which the guest was injured.  The Appellate Court affirmed the District Court's admission of testimony by the spiral stairway manufacturer's president (despite clear bias) who expressed the opinion that the degree of safety of spiral and conventional stairways was relatively equal. The court weighed the witness' qualifications as well justifying an opinion since his experience with stairway construction embraced some 26 years.

Similarly, in *Glosband v Watts Detective Agency, Inc.*, 21 BR 963, 10 Fed Rules Evid Serv 1341 (1981, DC Mass), the District Court allowed the President and majority stockholder of bankrupt corporation to offer his opinion as to value of business in action by trustee in bankruptcy of corporation to recover value of certain of bankrupt's assets that allegedly were misappropriated since owner's testimony as to value of his property can be admitted as opinion by lay witness based on personal perception.

The clear approach under these cases is to analyze specifically the testimony being offered and to only strike that portion of the testimony where an opinion based on the analysis/output is highly suspect because of actual bias.  While Plaintiff believes that the Court's ruling was more limited than what is suggested by the record and the Order, clarification is needed so both parties can prepare for trial and preserve judicial resources for the real issues in play.

5

There is little doubt the trial court has substantial leeway to permit witnesses to testify in terms of opinions, provided that opinions are rationally based on perception of witnesses and helpful to clear understanding of testimony or to determination of fact in issue.

Recall that no meet and confer occurred prior to Defendants' *Daubert* Motion, so there has been no attempt to narrow the issues. Plaintiff has indicated that it will not be offering testimony or those portions of the report that went to issues of Defendant's intent, Mr. Schwerzler's conclusions on bad faith or whether a domain third party name was, in fact, trademark protected.[2] Plaintiff is sensitive to the Court's concern about this sort of pure "opinion" testimony based on the output of his queries and examination of the database. Further, much of his report contains his "opinion" about what is contained on the terabyte drive based on query. There are two areas of Mr. Schwerzler's report which should be admissible as expert testimony irrespective of any claimed bias: (a) Mr. Schwerzler's own trademark matching script and its output as compared to Defendant's tool; and (b) the PHP trademark script prepared by Mr. Schwerzler to test the domain portfolio against a database of known third party domain names, such as Microsoft.

/

/

/

---

[2] Whether a trademark exists in the trademark database or foundation evidence concerning Quantcast, Alexa or other sources is a distinct issue from whether Schwerzler is qualified as an expert and for what purpose. Those evidentiary issues will be handled through other witnesses and at trial.

Mr. Schwerzler has included his domain name/ trademark database matching script in his report. (*Exhibit B*; Report at page 12, Appendix B of the Report) and the output when that script is compared to (a) Defendants' domain portfolio and (b) various list of third party web sites.  These scripts are simple, visible, testable and verifiable, as is the output.  Mr. Schwerzler is certainly qualified to write simple script.  The output is unquestionably helpful to the jury  On these issues, bias is irrelevant since Schwerzler is not drawing any conclusions about the output itself (output means Defendants were not trying very hard).  It is analogous to a math problem.  While not everyone on the jury may be able to do the math, there is no subjective element to the formula used or the solution that the formula spits out.   It does not matter who Mr. Schwerzler is and thus bias is irrelevant.

The jury should have evidence about how Defendants trademark matching tool works and alternatives, which would deliver different matching results. Mr. Schwerzler should be allowed to testify about his script with a different matching query and its output.

B.      **This Court Should Clarify and Limit It's Ruling to Those Items Identified in Defendants' Motion Only Or As Otherwise justified under the Rules of Evidence**.

Defendant did not take issue with much of what was contained in the expert report (all portions not highlighted in Yellow).  Defendant's Motion and brief argued, "Schwerzler is simply not qualified to offer <u>all of the opinions</u> he wants to offer." Defendant further states in its reply brief, "There's nothing in Plaintiff's opposition which

7

even attempts to argue that Schwerzler is even qualified to opine <u>anything other than his ability to extract files from a database and run a query on those files</u>." (Defendant's Reply Brief at Page 3). Defendant goes on to state, "Perhaps it would be one thing if Mr. Schwerzler had been retained to simply discuss how he extracted information from a database." (Defendant's Reply Brief at Page 5.) .  The Court should clarify its ruling to identify what is and is not admissible within Schwerzler's Report either as expert testimony or otherwise.  In the alternative, the Court should order a Daubert hearing so that the parties can determine what evidence can come in through Mr. Schwerzler and on what basis.

### CONCLUSION

The main piece of evidence produced by Defendants in this case is a terabyte drive of data, queries and stored procedures. Most of Mr. Schwerzler's testimony recounts what is included in that production based on search queries designed to pull data, dates contained therein and code produced by Defendant. Mr. Schwerzler pulls out key dates from the production and includes them in a timeline attached as Appendix F to his report.  Mr. Schwerzler runs Defendant's "Algo" tool to determine how Defendant' software matches the USPTO database loaded into Defendant's system. These and other portions of Schwerzler's report are and should be admissible, even if his opinions about what the output means (i.e defendants did not really try) (a third party domain name is a valid trademark) is precluded.  There is no way for the jury to see the evidence in the terabyte drive without an expert such as Mr. Schwezler, examining the code, writing scripts and pulling data. The alternative is for Plaintiff to call Defendants'

8

senior programmer to the stand (or more likely at their place of operation since the database could not be accessed from Detroit) and ask one domain at a time whether it was registered to NCS, how Defendants' trademark matching tool scored a domain, the dates of registration, whether it was tasted, and a host of other issues. Such and effort could take months without Mr. Schwerzler creating summaries, providing examples and helping the jury understand dates and sequences.  While the Court appeared receptive to accepting this evidence from Mr. Schwerzler as a fact witness, or perhaps as lay opinion, Defendants will no doubt argue a complete preclusion of such testimony from Mr. Schwerzler based on this Court's order.

Respectfully submitted this 7th day of October, 2011.

/s/Enrico Schaefer
Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI  49686
231-932-0411
enrico.schaefer@traverselegal.com

*Lead Counsel for Plaintiff*

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI  48104
734-662-4426
apatti@hooperhathaway.com

*Attorneys for Plaintiff*

## CERTIFICATE OF SERVICE

I hereby certify that on the 7th day of October, 2011, I electronically filed the foregoing paper with the Court using the ECF system which will send notification of such filing to the following:

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI  49686
231-932-0411
enrico.schaefer@traverselegal.com
brianhall@traverselegal.com
Lead Attorneys for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI  48104
734-662-4426
apatti@hooperhathaway.com
Attorneys for Plaintiff

William A. Delgado (admitted pro hac)
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA  90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

Nicholas J. Stasevich (P41896)
Benjamin K. Steffans (P69712)
Bruce L. Sendek (P28095)
BUTZEL LONG, PC
150 West Jefferson, Suite 100
Detroit, MI  48226
(313) 225-7000
stasevich@butzel.com
steffans@butzel.com
sendek@butzel.com
Local Counsel for Defendants

/s/Enrico Schaefer
Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI  49686
231-932-0411
enrico.schaefer@traverselegal.com
*Lead Counsel for Plaintiff*

10