IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
   a Michigan corporation,

       Plaintiff,

vs.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

NAVIGATION CATALYST SYSTEMS, INC.,
   a Delaware corporation; CONNEXUS CORP.,
   a Delaware corporation; FIRSTLOOK, INC.,
   a Delaware corporation; and EPIC MEDIA
   GROUP, INC., a Delaware corporation,

       Defendants.
_____

| | |
|---|---|
| Enrico Schaefer (P43506) | William A. Delgado |
| Brian A. Hall (P70865) | WILLENKEN WILSON LOH & LIEB LLP |
| TRAVERSE LEGAL, PLC | 707 Wilshire Boulevard, Suite 3850 |
| 810 Cottageview Drive, Unit G-20 | Los Angeles, CA 90017 |
| Traverse City, MI 49686 | (213) 955-9240 |
| 231-932-0411 | williamdelgado@willenken.com |
| enrico.schaefer@traverselegal.com | Lead Counsel for Defendants |
| brianhall@traverselegal.com | |
| Lead Attorneys for Plaintiff | Nicholas J. Stasevich (P41896) |
| | Benjamin K. Steffans (P69712) |
| Anthony P. Patti (P43729) | BUTZEL LONG, P.C. |
| HOOPER HATHAWAY, PC | 150 West Jefferson, Suite 100 |
| 126 South Main Street | Detroit, MI 48226 |
| Ann Arbor, MI 48104 | (313) 225-7000 |
| 734-662-4426 | stasevich@butzel.com |
| apatti@hooperhathaway.com | steffans@butzel.com |
| Attorneys for Plaintiff | Local Counsel for Defendants |

_____

### DEFENDANTS CONNEXUS CORPORATION, FIRSTLOOK, INC., AND NAVIGATION CATALYST SYSTEMS, INC.'S MOTION TO CONTINUE TRIAL DATE

124592.1

# NOTICE OF MOTION AND MOTION

TO THIS HONORABLE COURT, PLAINTIFF, AND ITS ATTORNEYS OF RECORD:

Connexus, Inc., Firstlook, Inc., and Navigation Catalyst Systems, Inc. (collectively the "Defendants") hereby move this court for an order continuing the trial date.

The bases for this Motion are set forth in the Memorandum of Points and Authorities; to wit, the Court's recent change to the trial date has prejudiced Defendants' ability to present its defense in full. Given that Plaintiff is seeking nearly $30 million in statutory damages and that the change in trial date was not Defendants' fault, Defendants should not be prejudiced in its defense of this matter.

On February 29, 2012, Defendants informed Plaintiff's counsel of this motion by e-mail and the basis for this motion. Defendants did not obtain Plaintiff's concurrence for the relief requested.

RESPECTFULLY SUBMITTED this 5th day of March, 2012 (Pacific Time).

/s/William A. Delgado
William A. Delgado
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

124592.1

## STATEMENT OF THE ISSUE PRESENTED

Whether a continuance of the trial date is merited to ensure that Defendants, out-of-state companies that have to coordinate the travel schedules of out-of-state counsel and witnesses, can present their defense without prejudice? Defendants respectfully submit that the answer is yes, particularly when a continuance would not prejudice Plaintiff.

## CONTROLLING AUTHORITY

The Court has the inherent power to control its own schedule to promote fair and efficient adjudication. *Gold v. Johns-Manville Sales Corp.*, 723 F.2d 1068, 1077 (3d Cir. 1983).

**MEMORANDUM OF POINTS AND AUTHORITIES**

I.     **INTRODUCTION**

It is with great reluctance that Defendants bring this motion. It is true that, when asked if the new trial date worked for the parties during the pretrial conference, Defendants' lead counsel, William Delgado, answered "I think so." That response, however, was based on the only calendar available to him: his own. However, upon consulting with others (including his co-counsel and witnesses), it became apparent that Defendants' ability to present its case during that time period would be hampered. For that reason, Defendants bring the present motion for a brief continuance of the trial date.

Plaintiff will undoubtedly oppose this motion, arguing that Defendants are simply seeking to delay trial. And, Plaintiff will undoubtedly argue that, so long as lead counsel can attend trial, everything else can be resolved through deposition testimony.

However, as detailed, below, this is not an improper attempt to delay trial. Had this motion been filed in advance of the pretrial conference, Plaintiff's argument might be more persuasive. To the contrary, though, Defendants had made numerous reservations and preparations so that they could proceed with trial on March 12th as originally scheduled. Indeed, Defendants' pretrial filings included motions in *limine*, an exhibit list, a witness list, jury instructions, and a verdict form. Defendants were ready for trial to start on March 12th.

As to Plaintiff's argument that scheduling difficulties can be resolved through deposition testimony, that is simply untrue and unfair. Defendants spent weeks making every attempt to line up their attorneys and witnesses—all of whom are coming from out-of-state—to attend trial in person. Now, through no fault of Defendants, the schedule has changed, and attendance of

124592.1

various individuals is jeopardized. Defendants and their counsel know that last-minute changes in trial schedules can happen because of the deference owed to criminal matters, but, at the same time, civil parties should not be prejudiced as a result thereof.

Plaintiff has sued Defendants for nearly *$30 million*. In light of the damages requested by Plaintiff and the allegations leveled against Defendants about acting in "bad faith," Defendants should be afforded every opportunity to put forward their best possible case, unhampered by a last minute change in the trial date. Defendants should not be forced to litigate this case with one proverbial hand tied behind its back.

For the reasons set forth below, Defendants respectfully request that the Court continue the trial in this matter to a date and time sufficiently in the future that will allow the parties, their attorneys, and their witnesses to attend trial in person to the greatest extent possible.

## II.   ARGUMENT

### A.   Defendants Were Ready to Proceed With Trial on March 12, 2012.

During the meet-and-confer process, Plaintiff's primary objection to a continuance appeared to be that "[w]e believe that Defendants have every incentive to delay and will make vigorous arguments to that effect." Exhibit A to the Declaration of William A. Delgado, dated March 5, 2012. That argument is immediately rebuffed by an immutable fact: Defendants had made significant preparations to proceed with trial on March 12th. Details of those preparations are provided below. These details underscore the unassailable truth: Defendants did not come into the Pretrial Conference *seeking* a continuance such that Plaintiff's accusations might ring true. To the contrary, Defendants were preparing to proceed with trial on March 12, 2012. Defendants are only now seeking a continuance after receiving the new trial date from the Court

because of the scheduling difficulties that have arisen and the prejudice to Defendants' ability to present their defense in the best light possible.

Indeed, counsel for Defendants spent much time in February 2012 making arrangements for the March 12-23, 2012 trial. The Court should consider:

1. On February 6, 2012, Mr. Delgado e-mailed John Berryhill, one of Defendants' expert witnesses, to make certain that he would be available the week of March 19, 2012 (i.e., anticipating Plaintiff's case would proceed the week of March 12th and that Defendants' case would proceed the week of March 19th). Mr. Berryhill acknowledged his availability and, on February 14, 2012, booked a non-refundable plane ticket to Detroit from his home in Philadelphia. Delgado Decl. Ex. B (Mr. Berryhill's USAir ticket from PHL to DTW, leaving March 18th and returning March 21st).

2. On February 6, 2012, Mr. Delgado also e-mailed Professor Rich Korf, another expert witness for Defendants, to confirm his availability. *Id*. at ¶ 4. On February 7, 2012, Mr. Korf acknowledged his availability for the entirety of the trial but asked whether he would be needed the week of March 26th because he wanted to go on vacation that week. Delgado Decl. Ex. C. Assuming that the trial was going to end on March 23, 2012, Mr. Delgado responded "We will not need you the following week so you can look forward to your vacation." *Id*.

3. On February 14, 2012, Mr. Delgado's assistant booked two rooms at the Westin Cadillac in downtown Detroit for the dates March 11, 2012 through March 24, 2012. Delgado Decl. Ex. D. One room was intended for himself, and the other room was intended for Carlos Singer (*see infra*).

3

4. On February 23, 2012, Carlos Singer—Mr. Delgado's colleague at the firm of Willenken Wilson Loh & Lieb LLP who was asked to try this case with Mr. Delgado—booked his non-refundable ticket to Detroit, Michigan. Declaration of Carlos Singer, dated March 5, 2012, ¶¶ 3-5 and Ex. E (AA ticket from LAX to DTW, leaving March 11, 2012 and returning March 24, 2012).[1]

5. On February 27, 2012, David Graff, General Counsel for The Epic Media Group, booked two flights to Detroit (March 11 through March 16 and March 18 through March 23, 2012). Declaration of David Graff, dated March 5, 2012, Ex. G.

All of these arrangements were made prior to the Pretrial Conference on February 28, 2012. Together, they evidence the fact that Defendants were getting ready to go to trial not seeking delay. Ironically, about the only person who had *not* made travel arrangements was lead counsel, William Delgado, and, then, only because he was too busy preparing the numerous pre-trial filings that were filed on February 24th and 27th. These pretrial filings included motions in *limine*, *voir dire* questions, an exhibit list, a witness list, jury instructions, and proposed verdict forms. Or, put differently, the filings included all of the documents that someone ready to go to trial would submit. The filings did not include a motion for continuance.

Lastly, to the extent that Defendants wanted to delay, lead counsel could have simply relied on his own calendar to argue that the new trial date did not work for him. The new two week trial date of March 26-April 6 coincides exactly with his childrens' Spring Break from their school. Delgado Decl. at ¶ 6. As they do not have childcare during those two weeks, Mr.

---

[1] Additionally, Mr. Singer had earlier asked his parents-in-law (Leo and Valerie Uzcategui) to book tickets to come to Los Angeles during the two weeks of trial so that his wife would have help with their two young daughters despite his absence. Those tickets were booked on February 22, 2012. *See* Singer Decl. ¶ 6, Ex. F.

4

Delgado and his wife had planned on taking alternating days off of work so that someone could watch the kids while the other person worked. *Id*. at ¶ 7. The change in trial date has left the Delgado family with unresolved childcare issues during various days over the course of two weeks. *Id*. In addition, Mr. Delgado has a hearing on a Motion to Dismiss a class action case on behalf of Microsoft Corporation, scheduled to be heard on April 2, 2011 in Los Angeles, as well as an opposition to a motion for summary judgment that is due in a different case on the same date. *Id*. at ¶ 8. And, he also has a meeting of the Los Angeles Police Commission Police Permit Review Panel (where he serves as a Commissioner) on April 4, 2012 in Los Angeles. *Id*. Nevertheless, Mr. Delgado was obviously willing to perform some calendar-gymnastics to try to accommodate the new trial date. That said, the inability of others to perform those gymnastics is an altogether different question.

      B.     <u>The New Trial Date Prejudices Defendants' Ability to Vigorously Defend Themselves</u>.

Although the change in trial date will result in additional costs for Defendants because non-refundable airfare for various people will have to be changed, Defendants realize that the new trial date is, essentially, nobody's fault. At the same time, precisely because it is not *Defendants*' fault, they should not be penalized for it. Yet, the new trial date presents various challenges that prejudice Defendants' ability to defend itself against a $28 million claim. Consider:

      1.     Mr. Singer was appointed a 2012 Fellow of the Leadership Council on Legal Diversity, one of about 30 individuals selected from across the country to speak on the developing role of women and minorities in the legal profession. Singer Decl. at ¶ 7. The first

5

and only fellows-only meeting takes place in Philadelphia from March 27 to March 29, and Mr. Singer has already registered for that meeting and secured a hotel room in Philadelphia. *Id*. at ¶ 8. The purpose of the organization is to bring emerging leaders together to generate and exchange ideas, and the inability to attend the conference would essentially gut the value of the fellowship. *Id*. at ¶ 9.[2]

Mr. Singer's absence would leave Defendants with a single attorney (Mr. Delgado) during the first week of trial. So, according to Plaintiff, Plaintiff is entitled to have three attorneys during trial (Enrico Schaefer, Brian Hall, and Anthony Patti) but Defendants should have to make due with just one.[3]

2. One of Defendants' potential witnesses, Dennis Rhee, has made clear that he absolutely cannot take time from his job to travel to Detroit for trial during March 27-April 6, 2012 because he has a deliverable for his new employer that is due on or about April 11, 2012. Graff Decl. at ¶ 4. While Mr. Rhee had indicated willingness to attend the earlier trial date despite his pending project, by pushing the trial *closer* to the deadline, his inability to attend has been guaranteed. Of course, a continuance beyond April 11, 2012 eliminates the problem and clears the path for him to attend trial in person. In fact, Mr. Rhee has informed Defendants he

---

[2] Willenken Wilson Loh & Lieb is a 100% minority-owned law firm and a member of the National Association of Minority and Women Owned Law Firms (NAMWOLF) and, as such, is committed to participating in events such as this one.

[3] Plaintiff's response to Mr. Singer's scheduling conflict was simply that "as of Tuesday's hearing you were not planning on bringing your co-counsel to trial Carlos Singer." Delgado Decl. Ex. A. Mr. Singer's plane ticket was booked on February 23rd—five days ***prior*** to the conference and clearly evidences Defendants' intentions to have him appear at trial and immediately refutes Plaintiff's erroneous statement.

6

124592.1

would be able to personally attend the trial in the future (absent a work conflict, of course), despite being under no obligation to so. *Id*. at ¶ 5.

Notably, Mr. Rhee is an important witness. Starting in 2009, he was the individual who was responsible for receiving and sorting through the list of all potential domain names, eliminating the unprofitable ones, submitting the potentially profitable ones to the trademark analysis tool, and then comparing the domain name against the results of the trademark tool. Mr. Rhee would then pass along the potential candidates for registration to David Hull for a second trademark review, who would then send the list to Lily Stevenson for a third trademark review. Ms. Stevenson would return the list to Mr. Rhee who would then register the subset of domain names that had been cleared.

In short, Mr. Rhee was the person driving the registration and trademark review process on a daily basis, and he can authenticate various registration spreadsheets that Defendants need to submit into evidence to prove their defense. Indeed, to the extent Plaintiff is going to argue that Mr. Rhee performed his job with the "bad faith intent to profit" off of trademarks, Mr. Rhee's attendance at trial is critical to establish that he was attempting to avoid the registration of problematic domain names—not trying to affirmatively register such domain names.

3. Defendants' expert witness Rich Korf, who is a professor at the University of California—Los Angeles will be on vacation the first week of trial since that first week corresponds with the university's Spring Break. Declaration of Richard Korf, dated May 5, 2012, at ¶ 4. The following week is the first week of the Second Quarter, and Professor Korf teaches on Mondays and Wednesdays and has a department seminar that he is hosting for a

7

124592.1

colleague from the University of Southern California on Tuesday. Korf. Decl. at ¶¶ 5-6. That leaves April 5th and April 6th as potential dates for Mr. Korf to attend trial.

Neither date is workable. April 5th does not work because, even if Mr. Korf flew from Los Angeles to Detroit after his class on April 4th and arrived in Detroit the night of April 4th, Defendants would not have the ability to prepare Mr. Korf for trial before he took the stand on April 5th. In theory, Mr. Korf could fly to Detroit on April 4th, spend time preparing for his testimony on April 5th, and testify on April 6th. But, April 6th would be the last day of trial. Given that the jury would need to be instructed on the law, and each side would be presenting closing arguments, leaving Mr. Korf's direct and cross examination to April 6th would almost certainly guarantee a time crunch on the last day of trial, which would jeopardize the parties' ability to finish in time.

Moreover, the foregoing assumes that trial *lasts* until April 6th, i.e., there were other things to do in the interim. However, the parties had been planning on completing the case in 10 half days or, put differently, 5 full days. Using that estimate, if trial started on March 27th, the presentation of evidence (other than Korf) would be complete by Monday April 2, 2012. That would mean that there would be three days of "dead air" between the last witness and the time Mr. Korf took the stand on April 6th.

    C.    <u>Plaintiff's Proposed "Solutions" Are Sub-Optimal</u>.

In response to Defendant's concerns, Plaintiff will undoubtedly offer solutions that are clearly sub-optimal.

As to Mr. Singer's absence, Plaintiff offers no solution other than for Mr. Delgado to soldier on. And, while Mr. Delgado has handled a vast majority of this case by himself, handling

8

the first week of a jury trial by himself is an altogether different story. Indeed, examinations would be difficult to administer (to Plaintiff's joy and the jury's dismay). With a two person team, one person can examine the witness while the other person manipulates exhibits using Trial Director for the benefit of the jury. With only one attorney, the same attorney must question the witness while simultaneously manipulating the exhibit on Trial Director. Even if it can be done, it cannot be done well, and it cannot be done quickly and efficiently.

As to Mr. Rhee's absence, to the extent that Plaintiff argues that Mr. Rhee can be deposed in advance of trial, there are two problems. <u>First</u>, caselaw is clear that live testimony is preferable to video tape. *See, e.g., In re Aredia and Zometa Products Liability Litigation,* 2008 WL 686213 (M.D. Tenn. 2008). ("Trial by videotape is simply not preferable to live examination in front of a jury. After having held more than 150 trials, this Court is of the opinion that live testimony is preferable to deposition testimony."). <u>Second</u>, Defendants' counsel need to start finalizing their trial strategy and preparations. If they are busy preparing for and traveling to the Jacoby deposition *and* the Rhee deposition, at the last moment, their ability to prepare for trial is greatly diminished.

As to Mr. Korf's absence, Plaintiff again suggests taking his testimony by deposition (which would make *three* depositions that Defendants would have to prepare for in addition to trial in the span of a couple weeks). Putting aside the fact that Defendants should be able to put on their expert witness in person, proceeding with Mr. Korf's testimony by deposition is particularly problematic in light of the pending motion in *limine* regarding Mr. Korf, which has yet to be heard by the Court. How, exactly, should Defendants structure their examination of Mr. Korf? Should they assume the motion will be denied in its entirety as it should be? Partially

9

granted? If so, which parts? The potential iterations are simply too great to proceed by deposition.

Moreover, proceeding by deposition testimony (whether it is Rhee or Korf) has obvious drawbacks. During a trial, examinations can be modified "on the fly" if an objection to the testimony is sustained. During a deposition, there is no opportunity to "modify" because there is no immediate ruling on an interposed objection. And, if the interposed objection is later sustained, there's no ability to go back and try to elicit testimony in an admissible way. Worse yet, the result may very well be a disjointed presentation of video testimony which may not make sense after it has been edited to take into account any sustained objections.

D. Plaintiff Would Not Be Harmed by a Continuance.

Defendants can appreciate that this case has been pending for some time, but a short continuance at this point would not prejudice Plaintiff. Plaintiff's witnesses consist of three directors of Weather Underground. Two of them work in Ann Arbor, a short drive to the courthouse. All three will attend trial irrespective of when it occurs since they are motivated by the potential of winning a multi-million dollar judgment. And, given that Plaintiff apparently has an IRS audit during the new trial date, a continuance may ultimately benefit Plaintiff as well, however loathe it may be to admit it.

Perhaps Plaintiff intends to argue that the additional time will provide Defendants an opportunity to dissipate the "tens of millions of dollars" that Plaintiff claims Defendants have.[4] On that point, the record should be made clear with admissible evidence as opposed to Plaintiff's

---

[4] That argument leads to an obvious, cynical observation: what are Defendants going to do in the next few weeks that they could not have already done in the previous 3 years if they were so disposed? The answer is "nothing."

assumptions. Connexus' Consolidated Financial Statements for Fiscal Years December 31, 2009 and 2008 (audited by a group of independent auditors and produced to Plaintiff back in October 2010) (filed under seal as Exhibit H to the Declaration of William Delgado) reveals the truth of the situation. Page 5 of that document shows that, in 2008, the Connexus companies suffered a net loss.[5] In 2009 (the year this lawsuit was filed), the Connexus companies suffered another net loss. The Notes of the Consolidated Financial Statements give further color with various statements, including:

- "The Company's need for cash is dependent on its operating activities and if the Company does not maintain or increase sales and gross profits or control expenses and planned investment, it may require additional cash in the near term."
- "Failure to generate sufficient revenue and related cash flow or raise additional capital could have a material adverse effect on the Company's ability to continue as a going concern and to achieve its intended business objectives."
- "The above conditions raise substantial doubt about the Company's ability to continue as a going concern."

*Id.* at p. 11-12.

Clearly, Defendants' economic condition has been compromised since 2008, *before* this lawsuit was filed. Things have not gotten better (e.g., Defendants have had to pay for the expenses incurred as a result of a three-year long litigation). Defendants are entirely unclear how Plaintiff concluded that the company had "millions of dollars" in surplus, particularly when a

---

[5] Defendants are not going to state the actual amount in this document, a public record. Nevertheless the Court can easily verify for itself the size of the net loss.

124592.1

statement of independent auditors to the contrary was provided to them in October 2010. However Plaintiff arrived at that conclusion, it is simply wrong.

In any event, Defendants are not looking for an extra few weeks to dissipate assets. They are simply looking to have a fair opportunity to defend themselves.

## IV.  CONCLUSION.

Defendants are out-of-state companies with out-of-state counsel and out-of-state witnesses.  The last minute change in the trial schedule has prejudiced Defendants' ability to put on its best case.  Given that Plaintiff has sued for $30 million, Defendants should not be forced into trial with limitations as to the attendance of its attorneys or its witnesses, particularly since the change was not their fault.  To the contrary, Defendants acted diligently to prepare for and attend trial on March 12th.  Their reward should not be an order denying this motion.

For the foregoing reasons, Defendants respectfully request that this motion be granted. As Defendants are unfamiliar with the Court's calendar for the remainder of the Spring and Summer of 2012, Defendants cannot propose a particular date for the start of trial but can be ready with a full list of availability in the event the Court has multiple dates that are available.

RESPECTFULLY SUBMITTED this 5th day of March, 2012 (Pacific time).

／s／William A. Delgado
William A. Delgado
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA  90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

124592.1

## CERTIFICATE OF SERVICE

I hereby certify that on March 5, 2012, Pacific Time, I electronically filed the foregoing paper with the Court using the ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Enrico Schaefer (P43506)<br>Brian A. Hall (P70865)<br>TRAVERSE LEGAL, PLC<br>810 Cottageview Drive, Unit G-20<br>Traverse City, MI  49686<br>231-932-0411<br>enrico.schaefer@traverselegal.com<br>brianhall@traverselegal.com<br>Lead Attorneys for Plaintiff | Nicholas J. Stasevich (P41896)<br>Benjamin K. Steffans (P69712)<br>BUTZEL LONG, P.C.<br>150 West Jefferson, Suite 100<br>Detroit, MI  48226<br>(313) 225-7000<br>stasevich@butzel.com<br>steffans@butzel.com<br>Local Counsel for Defendants |
| Anthony P. Patti (P43729)<br>HOOPER HATHAWAY, PC<br>126 South Main Street<br>Ann Arbor, MI  48104<br>734-662-4426<br>apatti@hooperhathaway.com<br>Attorneys for Plaintiff | William A. Delgado<br>WILLENKEN WILSON LOH & LIEB LLP<br>707 Wilshire Boulevard, Suite 3850<br>Los Angeles, CA  90017<br>(213) 955-9240<br>williamdelgado@willenken.com<br>Lead Counsel for Defendants |

*/s/William A. Delgado*
William A. Delgado
WILLENKEN WILSON LOH & LIEB LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA  90017
(213) 955-9240
williamdelgado@willenken.com
*Lead Counsel for Defendants*