C4a0weaa

```
1    UNITED STATES DISTRICT COURT
     SOUTHERN DISTRICT OF NEW YORK
2    ------------------------------x

3    SETH JACOBY,

4                   Plaintiff,

5              v.                              12 MC 65 Part 1

6    THE WEATHER UNDERGROUND INC.,

7                   Defendant.

8    ------------------------------x
                                           New York, N.Y.
9                                          April 10, 2012
                                           2:00 p.m.
10
     Before:
11
                     HON. BARBARA S. JONES,
12
                                           District Judge
13
                            APPEARANCES
14
     TANNENBAUM HELPERN SYRACUSE & HIRSCHTRITT, LLP
15        Attorneys for Plaintiff Seth Jacoby
     BY:  JOHN E. GREENE
16
     HOOPER HATHAWAY PRICE BEUCHE & WALLACE
17        Attorneys for Defendant
     BY:  ANTHONY P. PATTI
18
     FRIEDMAN, JAMES & BUCHSBAUM, LLP
19        Attorneys for Defendant
     BY:  JOHN PATON JAMES
20

21

22

23

24

25
```

C4a0weaa

1           (In open court)

2           THE COURT:  Good afternoon, please be seated.

3           THE CLERK:  Seth Jacoby vs. The Weather Underground,

4    12 MC 65.  Plaintiff, state your name for the record.

5           MR. GREENE:  John E. Greene, for Movant, Seth Jacoby.

6           THE COURT:  For the defendant?

7           MR. JAMES:  John James, for Respondent The Weather

8    Underground.  And I would like to introduce Anthony Patti, who

9    has been admitted pro hac vice.  He's representing The Weather

10   Underground, in Michigan.

11          THE COURT:  All right.  You're both welcome, as are

12   you, Mr. Greene.

13          All right.  Let me hear from the Movant.

14          MR. GREENE:  Good afternoon, your Honor.

15          THE COURT:  Good afternoon.

16          MR. GREENE:  May it please the Court.

17          Seth Jacoby was deposed at length on videotape on

18   September 15, 2010 in an action that is pending in the Eastern

19   District of Michigan.

20          THE COURT:  Could I just go right to the -- sort of

21   try to cut to the chase here.

22          MR. GREENE:  Absolutely, your Honor.

23          THE COURT:  We have our judge in Michigan who has

24   essentially said she's gonna permit a second deposition of Mr.

25   Jacoby.  Why shouldn't I just honor that?

C4a0weaa

```
 1              MR. GREENE:  Well, your Honor, as I pointed out in the
 2      reply brief, the rights of Seth Jacoby were never really
 3      discussed.  The merits of anything pertaining to him, the fact
 4      that he is no longer employed by First Look, or the fact that
 5      his deposition was videotaped, was never really addressed in
 6      that court.  And it seemed that, in reading the transcript and
 7      sort of especially when the judge in that court ruled on it, it
 8      was more a matter of timing.  I know that the defendants in
 9      that action argued that it would be difficult for them to
10      defend a deposition here in New York and then prepare for a
11      trial which I believe was set to occur in the very next week.
12              Before the argument, the Judge had adjourned the trial
13      date and felt that, well, now, you have time, so that's not
14      really a concern for you, and that was no longer a concern of
15      those defendants.  But the concern of my client, Mr. Seth
16      Jacoby, was never addressed, which is:  I have already
17      submitted to this, I've done this at length, you have me on
18      videotape, so if there are any indications or anything a jury
19      needs to see as far as demeanor, or any assertions or anything
20      that can be waived in live testimony, you have it on video.
21              Interestingly enough, reviewing the transcript this
22      morning, I see that even the person conducting the deposition,
23      Mr. Enrico Shaffer, said that at one point can you tell the
24      jury what this actually means.  So it seems that that
25      deposition was videotaped and should be sufficient for a matter
```

C4a0weaa

1    that my client's no longer involved in.  He doesn't have a dog

2    in that fight, pardon the pun.  So he no longer wants to be

3    involved in that.  He has his own business and trying to get

4    that off the ground.  And to now be dragged back into this

5    litigation seems unfair and unjust, your Honor.  And this is a

6    Court that still has the right to decide whether to enforce or

7    to quash the subpoena under the federal rules.  And especially

8    considering my clients's rights, and the burden on my client to

9    once again submit to what possibly may be a full day, or at

10   least how it was communicated to me earlier in the opposition

11   papers, it seems like the respondents are looking to go into

12   something that could be, conceivably, beyond a full day.  And

13   actually, your Honor, if you look back at the Notice of

14   Deposition that the Respondent sent to the parties in the

15   underlying action, it may be sort of form language, but it says

16   the deposition will go on day to day until complete.

17          So there is a worry or concern that, now, my client is

18   once again being dragged back into this when he has his own

19   business and his own priorities to deal with for what

20   conceivably could be an entire day, for what conceivably could

21   go into issues which are unrelated to the underlying action.

22   He has now had to retain counsel, obviously, and pay for that

23   to come in and try to quash this.  So it just seems very unfair

24   that my client is being brought back into an action that he

25   just has nothing to do with anymore, especially since he is

C4a0weaa

1    trying to start and build his own business.

2              We've sort of tentatively scheduled, if the Court

3    denies the motion, a deposition date.  And, funny, my client

4    says to me yesterday, well, I have something really important

5    to do that day, so if we have to go forward, can we start at

6    5:00 in the morning -- which, your Honor, I'm not starting a

7    deposition at 5:00 in the morning, but obviously we'd work as

8    early as possible to get him out as early as possible.  But the

9    concern still remains with Mr. Jacoby that he has his own

10   business to tend to, he has his own priorities to tend to.  And

11   it would be, I guess, a different matter, conceivably wouldn't

12   be here if Mr. Jacoby hadn't already been deposed, if that

13   deposition were not already on videotape, if that deposition

14   weren't already used in support of the respondent's summary

15   judgment motion.

16             So, clearly, they felt that they had sufficient

17   information to go forward and make their case with this

18   testimony that they already have.  The federal rules

19   contemplate using videotape deposition testimony where a

20   witness is beyond the subpoena power of the Court and cannot

21   attend.  So it seems that in this case it's ideal that the

22   initial deposition was videotaped and that that could be used,

23   instead of burdening my client to, once again, come in and

24   discuss matters which, quite frankly, can't possibly be fresh

25   in his mind, having no longer working there.  I'm not going to

C4a0weaa

1  be able to prepare him the way I imagine the underlying

2  defendants did for his initial deposition.  It seems a lot

3  fairer and a lot more practical for the videotape deposition to

4  be used.  And I think that the federal rules allow this Court

5  to go ahead and quash the subpoena despite the rulings of the

6  Judge in the Eastern District of Michigan, especially when my

7  client did not have a chance to go and advocate his rights in

8  fairness to him being forced to submit to yet another

9  deposition.

10        THE COURT:  All right, thank you.

11        You're correct, I certainly have the right to quash

12  the deposition.  But I think it's obvious that I know less

13  about the case than the judge in Michigan.

14        MR. GREENE:  Yes, your Honor.

15        THE COURT:  All right.

16        Mr. Patti.

17        MR. PATTI:  Yes, your Honor.

18        THE COURT:  What's new, and why do you need more

19  information, and how is it different?

20        MR. PATTI:  Well, I started to explain this in the

21  brief, and I'll flesh this out a little bit further.

22        But the case is very much a different case than it was

23  the day that he was first deposed.  There is a terabyte of

24  information that was supplied -- back up for a second.

25        This case started in the winter of 2009.  We ended up

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

C4a0weaa

1    in front of the US Magistrate Judge several times just to get

2    initial disclosures out of the defendants.  And we ended up

3    having discovery battles that took us right up to the time of

4    Mr. Jacoby's first deposition to get them to finally hand over

5    information.  And when they did, what they dumped on us was a

6    terabyte drive.  And that, literally, means a trillion bytes of

7    information.  And I --

8                THE COURT:  Now, who is they?

9                MR. PATTI:  They would be the defendants and, at that

10   time, of course, Mr. Jacoby's employer.  Not just his employer,

11   but he was the president of one of those defendants, First

12   Look.

13               I heard counsel say today, well, my client has nothing

14   do with this.  But his client was in fact the -- Mr. Jacoby

15   was -- the president of the company which held, you know,

16   16 million -- 16 million typosquatted domains in his portfolio.

17   And at any given time, hundreds of thousands of them.  So

18   during that -- so we get this terabyte drive that was dumped on

19   us.  Just to give you some sense of the volume --

20               THE COURT:  Well, I'm persuaded just hearing terabyte.

21   You don't have to go any farther than that.  But what is it you

22   want to ask him now that is new?

23               MR. PATTI:  Well, if I tell you what's on that

24   terabyte, perhaps, because that gets to the heart of it.

25               In that terabyte, among other things, they finally

C4a0weaa

1     handed over their entire domain portfolio which we didn't have

2     access to and took a special program and analysts for months to

3     weed their way through.  So, virtually, their entire domain

4     portfolio, which is at issue in this case, has been inquired

5     about.  At the time that we deposed him the first time, all of

6     the information we had was what my client, The Weather

7     Underground, was able to find on its own.  And at that time, we

8     had found roughly 50 domains of ours that we -- typosquatted

9     domains of ours that we thought were at issue.  When we went

10    through the terabytes, what we discovered is there is 273 of

11    them.  So it's pretty hard to parse out and say this little

12    piece is new.  The whole case is different.  The case got

13    amended as a result of that.

14         And Judge Battini, in Detroit, is quite familiar with

15    the first deposition.  As brother counsel pointed out in his

16    papers, that deposition was used in response to summary

17    judgment.  So she knows what was in that deposition, she's

18    looked at that deposition and agrees with us that this really

19    doesn't cut it for, given the whole new posture of this case,

20    to put this witness on effectively for trial.  Nor would it

21    make sense to say let's take a few snippets from the first dep,

22    a few snippets from the second dep.  What we now have is the

23    full, complete picture.  We have deposed his subordinates.  We

24    had a lot of things to say that he can be cross-examined with.

25    And she has said:  This is how I want this evidence to come in

C4a0weaa

1    in my trial; even though I know about the first deposition, I

2    agree with you we need a different vehicle for this key

3    witness, this testimony, to enter into the trial record; this

4    is the most efficient way to do it; this is the way that makes

5    sense.

6            THE COURT:   What do you --I heard from Movant that you

7    have a date for a deposition tentatively set aside.

8            How long do you think you need?

9            MR. PATTI:   The judge in Detroit put no limit.   And I

10   can't say for sure how long we need.   But I can say this, we're

11   not incentivized to spend days on end in New York.   I love New

12   York, I'm from Long Island, but we all have homes and families

13   to get back to.

14           My concern, because I read it in the reply brief about

15   setting limits, which Judge Battini did not do, is that once

16   limits are set, it will encourage gamesmanship, quite frankly,

17   and lots of objections and ways to eat up the time.

18           THE COURT:   I'm sorry, what is the tentative date that

19   you have agreed to?

20           MR. PATTI:   This Thursday.   We have two attorneys on

21   standby waiting --

22           THE COURT:   Ready to go?

23           MR. PATTI:   Yes.

24           THE COURT:   Okay.

25           MR. PATTI:   And so my concern -- and I -- and again,

C4a0weaa

1    the judge in Detroit put no limit on it -- is that once a limit

2    gets put on it, either as to content or as to time, that just

3    encourages lots of objections and lots of things to eat up time

4    so that people can say, ah-hah, well, gotcha.  But the reality

5    is, since this is going to go in front of a jury, we don't have

6    incentive to subject a jury to 16 hours of Mr. Seth Jacoby.

7            We're now at a point where the record is complete.  We

8    can zero in.  And we don't want restrictions.  But, on the

9    other hand, there is really not any danger that we're going to

10    abuse this witness because that would be foolish, even from a

11    selfish standpoint, in terms of what the jury is going to hear.

12            THE COURT:  All right.

13            Any reply?

14            MR. GREENE:  Yes, your Honor.

15            THE COURT:  Mr. Greene.

16            MR. GREENE:  Very briefly.  A couple of things that I

17    think are sort of important, and I think go back to my point of

18    about what occurred in the Eastern District.

19            As counsel pointed out, there was no limit set.  And

20    if you read the transcript, it is because there was no limit

21    asked.

22            Again, those defendants there were self interested,

23    obviously.  And their counsel represented them, not my client.

24    These are issues or concerns that my client has that were never

25    addressed by the judge in the Eastern District.

C4a0weaa

 1        A couple of other things to sort of keep in mind.
 2        THE COURT:  Uh-huh.
 3        MR. GREENE:  You know, Mr. Jacoby actually had a
 4   superior, the CEO, who we believe is still employed by First
 5   Look and has the same amount of knowledge.  So if there is any
 6   cross-examination or any additional information that needed to
 7   come out during trial, it would probably, I imagine, come out
 8   from that witness.
 9        The new information is, as counsel pointed out, is a
10   domain portfolio, which is simply different spellings, I
11   imagine, of different domains.  But it doesn't undercut the
12   practice; the practice of how this was vetted; the practice of
13   how this was obtained; the practice of consulting legal
14   counsel; the practices behind creating and finding these domain
15   names and quote, unquote, cybersquatting.  That was all asked
16   and answered at length during the initial deposition.
17        So the new information doesn't substantively change
18   what Mr. Jacoby has already testified to, which was the how,
19   the why, the intent, or any other thing that goes towards the
20   cybersquatting law which, again, as much as there has been an
21   amended complaint, at the end of the day -- and I have a copy
22   of the transcript, your Honor, I didn't provide it in the
23   motion papers because it's protected by a protective order.
24        But the end of the day the questions that were asked
25   then wouldn't fundamentally be different by the questions that

C4a0weaa

1   would be asked now, based on the complaint and the causes of

2   action which are still remaining in that case.  It would be

3   substantively be, in my conversations with counsel for The

4   Weather Underground, the same types of questions.  Of course,

5   now, there are more questions which are coming up, including

6   what his new life is now.  Which I can't see how that would

7   possibly be relevant to the underlying action.

8           And so, your Honor, to the extent that the deposition

9   does go forward, and the Court does not quash the subpoena, I'm

10  going to urge at least some modification to both put a time

11  limit on this and to also sort of restrict what can be asked or

12  inquired into.  Because if this is supposed to be a trial

13  back-and-forth, if this were a trial, it would be a Court or a

14  judge who could rule on relevance, et cetera, and we won't have

15  that here.

16          THE COURT:  Well, what restrictions do you want.  I

17  think you alluded to not wanting any questions about his new

18  business.

19          MR. GREENE:  That's correct, your Honor.

20          In the opposition papers, in a footnote, counsel

21  raises the fact that they intend to, or suggested that they

22  can, sort of go into his new business.  I don't see how his new

23  business would be, in any way, relevant to the cybersquatting

24  that those defendants allegedly either did or didn't do years

25  ago.  Time restrictions also, again, your Honor.  Because my

C4a0weaa

1    client's concerned about getting things done.  Like I said, he

2    suggested yesterday a 5:00 start time --

3         THE COURT:  I think that's a great idea, Mr. Greene.

4    You are not ready, willing, and able?

5         MR. GREENE:  You know, look, he is the client, he's

6    paying my bill, I'll do it if he asked me to, I just wouldn't

7    be a happy attorney defending a deposition.

8         THE COURT:  All right, thank you.

9         Anything further, Mr. Patti?

10        MR. PATTI:  Very briefly, your Honor.

11        I'll just start with the last point first.

12        THE COURT:  Yeah.

13        MR. PATTI:  I just cannot imagine any witness in a

14   federal proceeding can't be asked about their current

15   employment and whether there is a connection between that

16   current employment and the defendant's business.  I think it

17   gets to bias, and it gets to motive, and it gets to, also, the

18   elements, rather the factors I should say, in an

19   anticybersquat --

20        THE COURT:  I could imagine there may be, beyond some

21   questions, some additional questioning that might be

22   irrelevant.  But I agree with you that, basically, I'm sure

23   there are a number of questions that would be.  And it will be

24   up to a trial judge to decide what is relevant and what is not

25   relevant for the trial in Michigan, not me.

C4a0weaa

1          I am denying the motion to quash the subpoena.

2          Mr. Greene, I appreciate that your client wasn't there

3     to talk, or you were not there on his behalf to talk about the

4     inconvenience, et cetera.  But I think the fact remains that he

5     appears to me to be an important witness.  Certainly Judge

6     Battini believed that when she made her ruling in Michigan.

7     And so, as I say, I'm denying that motion.  I'm also not going

8     to enjoin Mr. Patti or his client in terms of prohibiting him

9     from asking questions about your client's new business.

10         Now, how much time do you think you need, gentlemen.

11         Mr. Patti?

12         MR. PATTI:  Our plan is to complete this deposition in

13    a day.  Obviously, if we spend half the day arguing objections,

14    then we don't want our hands tied.  But, again, our motive is

15    to get something that makes sense for a jury to listen to, and

16    not bore them into tears.  So but that is -- our hope is to

17    complete it in a day, and that's certainly what the plan is.

18    Again, I'd rather not be limited to that, but I can't see us

19    being far beyond that, if at all.

20         THE COURT:  All right.  Well, then, would you propose

21    to ask for more time if it was not concluded in a day?  I think

22    the rules indicate that unless everybody agrees, or I order it,

23    the deposition is limited to one day of seven hours, isn't that

24    correct?

25         MR. PATTI:  It is for a deposition in discovery.  It's

C4a0weaa

1    a little bit of a different territory, because the judge has --

2    I know that de bene esse is usually a tool of the admiralty

3    court, which is Mr. James' specialty --

4              THE COURT:  That's all right.  I have recently had

5    someone refer to just such deposition as de bene esse right

6    here in my court, not in an admiralty case.

7              So you're saying that should be different --

8              MR. PATTI:  We look at it as this.  It's no different.

9    The only thing that is different is the medium by which the

10   testimony is being taken.  It's no different than if he were

11   being brought into court live.  And there is no restriction on

12   how long a person's on the witness stand in trial.  But there

13   are very good reasons why lawyers don't keep those people on

14   the stand ad nauseam, because it backfires on us quite frankly,

15   and it bores juries and so forth.  But since there is no

16   restriction on the time of a trial witness on the stand under

17   the rules, and Judge Battini has indicated this is to be a

18   trial deposition, this is to replace him being live in the

19   court because he is beyond her subpoena power, that there

20   should be no restrictions for that reason.

21             THE COURT:  All right.

22             MR. GREENE:  But, your Honor -- I'm sorry.

23             THE COURT:  Yeah.

24             MR. GREENE:  But this is a different sort of beast.

25   It's a deposition this Circuit doesn't recognize.  And there is

C4a0weaa

1    a restriction.  And the restriction being that Mr. Jacoby is

2    beyond her subpoena power, so he wouldn't actually have to

3    appear for a trial.  So this sort of takes it out of that realm

4    of, well, this should be an exceptional circumstance where we

5    can go beyond seven hours.  And, for that reason, it should be

6    limited as such.

7            THE COURT:  All right.  I'm not going to impose a

8    limit, but I am going to permit the Movant, if required -- or

9    I'm sorry, permit Mr. Patti and his client, if required, to go

10   beyond seven hours.  Hopefully, that won't be necessary and

11   everything will be done efficiently.

12           I'm in Part I the rest of the week.  I hope I don't

13   hear from you but -- as much as I enjoyed meeting you -- if

14   there are any issues at the deposition, you should call my

15   chambers, (212)805-6187.  And actually, on Friday, the judge in

16   Part I, instead of me, will be Judge Koeltl.  And his number is

17   (212)805-0222.  Again, I hope you are able to resolve

18   everything amicably and efficiently.

19           And I'm not enjoining any particular line of

20   questioning as requested by the Movant.

21           Okay, anything else?

22           MR. GREENE:  No, your Honor.

23           MR. PATTI:  No, your Honor.

24           THE COURT:  Thank you very much.  Nice to meet you.

25           (Adjourned)