IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF MICHIGAN

THE WEATHER UNDERGROUND, INC.,
   a Michigan corporation,

       Plaintiff,

vs.

NAVIGATION CATALYST SYSTEMS, INC.,
   a Delaware corporation; CONNEXUS CORP.,
   a Delaware corporation; FIRSTLOOK, INC.,
   a Delaware corporation; and EPIC MEDIA
   GROUP, INC., a Delaware corporation,

       Defendants.

Case No. 2:09-CV-10756
Hon. Marianne O. Battani

---

Enrico Schaefer (P43506)
Brian A. Hall (P70865)
TRAVERSE LEGAL, PLC
810 Cottageview Drive, Unit G-20
Traverse City, MI 49686
231-932-0411
enrico.schaefer@traverselegal.com
brianhall@traverselegal.com
Lead Attorneys for Plaintiff

Anthony P. Patti (P43729)
HOOPER HATHAWAY, PC
126 South Main Street
Ann Arbor, MI 48104
734-662-4426
apatti@hooperhathaway.com
Attorneys for Plaintiff

William A. Delgado
WILLENKEN WILSON LOH & DELGADO LLP
707 Wilshire Boulevard, Suite 3850
Los Angeles, CA 90017
(213) 955-9240
williamdelgado@willenken.com
Lead Counsel for Defendants

Nicholas J. Stasevich (P41896)
Benjamin K. Steffans (P69712)
BUTZEL LONG, P.C.
150 West Jefferson, Suite 100
Detroit, MI 48226
(313) 225-7000
stasevich@butzel.com
steffans@butzel.com
Local Counsel for Defendants

---

## DEFENDANTS' MEMORANDUM IN OPPOSITION TO PLAINTIFF'S EMERGENCY MOTION TO COMPEL

125458.1

## MEMORANDUM OF POINTS AND AUTHORITIES

I.  **INTRODUCTION**

It is apropos that Plaintiff cites to Shakespeare because Plaintiff's motion is much ado about nothing. In 2011, Connexus exited the bulk domain name registration business by selling various assets to a former employee, Seth Jacoby. There was nothing obligating Connexus to remain in that line business. Correspondingly, there is nothing about that decision to sell assets that is "nefarious" or improper. But, more importantly, there is nothing about that transaction that is relevant to the trial in this matter.[1]

This is a lawsuit about whether Defendants had a bad faith intent to profit from the registration, use or trafficking of specific domain names allegedly related to Plaintiff that were registered *between 2004 and 2009*. Unsurprisingly, the evidence should focus on that time frame. Even after reading Plaintiff's motion, which is bereft of any case law or rule of evidence supporting the alleged relevance of the documents, one is left to wonder how a sale of assets that took place *in 2011* is at all relevant. The reality is this: it is not relevant. For that reason, the Court should not only deny Plaintiff's motion to compel but also preclude any evidence, testimony, and/or argument of such a sale of assets at trial, lest the jury be distracted with irrelevant facts. Fed. R. Evid. 403.

II. **STATEMENT OF FACTS.**

  A.  Review of the Proceedings Regarding the Jacoby Deposition.

As the Court will recall, Plaintiff initially waited months (from September 2011 until late February 2012) to schedule the *de bene esse* deposition of Seth Jacoby (a type of deposition

---

[1] Indeed, given Plaintiff's constant refrain about the evils of bulk domain name registration, it is somewhat hypocritical for Plaintiff to attack Connexus's business decision now.

125458.1

which this Court acknowledged was atypical in federal proceedings). Ultimately, Plaintiff unilaterally scheduled the deposition for March 1, 2012 despite the fact that the trial was scheduled to take place on March 12, 2012. Without sufficient time to prepare for such a deposition, Defendants brought a Motion for Protective Order. *See* Docket No. 260. In that Motion, Defendants argued that Plaintiff could not make a showing as to why a second deposition of Seth Jacoby was necessary because Plaintiff had already deposed Mr. Jacoby for a full day. Plaintiff never made any attempt to respond to that argument. Ultimately, that Motion was denied, particularly since trial in the matter was ultimately continued.

Thereafter, Mr. Jacoby elected to quash the subpoena issued to him in the Southern District of New York. The undersigned did not represent Mr. Jacoby in connection with that motion and has only limited knowledge as to what occurred during the hearing on that motion, having not attended. Suffice it to say, however, that nothing in Plaintiff's motion suggests any impropriety in Mr. Jacoby's actions. Apparently, Mr. Jacoby had earlier negotiated an agreement that Defendants would pay for any attorneys' fees incurred by him in connection with this action[2] and exercised his rights as a third party to bring a motion to quash. In Mr. Jacoby's motion, he raised arguments that Defendants did not (and could not) raise in their own motion because Defendants are not Seth Jacoby and vice versa, as was his right to do. In short, Plaintiff is complaining that Mr. Jacoby dared to exercise his constitutional rights.

B.     The Jacoby Deposition.

As noted, above, Defendants have always maintained that a second deposition of Mr. Jacoby was unnecessary for trial in this matter. The deposition of Seth Jacoby which took place

---

[2] Deposition Transcript of Seth Jacoby, dated April 12, 2012, at 291:8-18 (attached as Exhibit A hereto).

on April 12, 2012 confirmed as such.  The questions regarding facts that are actually relevant to the upcoming trial were limited and, for the most part, simply consisted of having Mr. Jacoby acknowledge the existence of his prior deposition testimony on the same exact issue by reading his previous transcript.  *See, e.g.,* Jacoby Tr. at 18:7-19:15; 37:24-39:3; 50:7-51:10; 54:21-56:8; 61:5-19; 65:24-66:19; 72:22-73:15; 76:20-77:20; 84:13-86:4; 89:3-20; 94:3-11; 95:17-96:10; 98:16-99:17; 105:17-106:13; 158:12-159:8.

But, that came as no surprise to Defendants, and it should not come as a surprise to this Court.  Plaintiff was never interested in deposing Mr. Jacoby to secure his "trial testimony" for the trial in this matter.  Mr. Jacoby's deposition was nothing more than a fishing expedition for an entirely new and unrelated area:  judgment-debtor discovery which, of course, is rather presumptuous given that there is no judgment at present, and there may never be any such judgment.  Plaintiff's counsel spent a significant amount of time probing the contours of a transaction which has no bearing in this matter.  Now, Plaintiff's present motion confirms as much.  As explained, below, the documents sought have absolutely no bearing on the relevant facts in this case, and neither did the hours of deposition testimony wasted on that very subject.

### III. ARGUMENT

#### A. Plaintiff's Motion Is Procedurally Defective.

Plaintiff's motion must be denied because it is procedurally defective.  Nowhere in Plaintiff's Motion does Plaintiff identify the request for production which requested the documents at issue.  See Local Rule 37-2 ("Any discovery motion filed pursuant to Fed. R. Civ. P. 26 through 37, shall include, in the motion itself or in an attached memorandum, a verbatim recitation of each interrogatory, request, answer, response, and objection which is the subject of

3

the motion or a copy of the actual discovery document which is the subject of the motion.")  It simply seeks to compel production of documents because Plaintiff wants them.  That is not sufficient.  To prevail, Plaintiff must identify the request at issue and that Defendants agreed to produce the documents (but did not) or that Defendants objected to the production of such documents and those objections are invalid.  For that reason alone, the Court should deny Plaintiff's Motion.

      B.      <u>The Documents Sought by Plaintiff Are Irrelevant to the Trial in This Matter</u>.

Days away from the trial in this matter, neither this Court nor the parties should have to devote any attention to a patently irrelevant.  As noted, above, this case centers on whether Defendants had a bad-faith intent to profit from the registration, use, and trafficking of certain specified domain names that were registered between 2004 and March 2009.  Correspondingly, on its face, a motion to compel documents that did not come into existence until 2011 and which memorialize a transaction which occurred in August 2011 fails for lack of relevance.  Fed. R. Evid. 401 provides that evidence is relevant if "(a) it has any tendency to make a fact more or less probable than it would be without the evidence; and (b) the fact is of consequence in determining the action."

The documents at issue do not meet this definition.  The asset purchase documents cannot tell us whether, between 2004-2009, Defendants' employees knew of Plaintiff's existence but nevertheless registered the domain names at issue.  They do not speak as to whether Defendants' "scrub" in 2008 was carried out in good faith.  They do not address what steps Defendants took to implement an automated filter during that time period.  They do not establish what other steps Defendants may have taken to avoid the registration of trademarks during the relevant time

period. To the contrary, the documents are what they purport to be: documents memorializing the sale of certain assets which took place *in 2011*.

Plaintiff's motion fails to explain the connection between the documents sought and the alleged badges of bad faith. For example, Plaintiff argues that the use of proxies and offshore entities to hide domain names evidences bad faith. Motion at Section II(C)(1). Even accepting that premise as accurate (it isn't, by the way), what do the asset purchase documents have to do with it? The following section in Plaintiff's Memorandum (Section II(C)(2)), in which they analyze the registration of "RYAIANIR" is even farther afield. How would the asset purchase documents change the analysis offered? They would not.

Perhaps most telling is when Plaintiff ends Section II by stating that Mr. Jacoby has purchased all of the assets of Connexus for $8,000,000 in a financed transaction (which it denigrates as a "song-and-dance") and then concludes with "Plaintiff suspects that it will be obvious to the Court why the details of this transaction warrant further discovery." The Court should not be fooled by what is *truly* obvious: that Plaintiff is wholly unable to adequately explain why the documents sought are relevant to the trial in this matter. Clearly, Plaintiff is hoping that the Court will simply nod in agreement with Plaintiff without further inquiry. That should not be the case. Rather, Plaintiff should be put to the test: explain in a cogent manner how documents memorializing an August 2011 transaction have any bearing on the events that transpired between 2004 and 2009.

Ultimately, Plaintiff's motion betrays itself when it argues that "if this is a sham transaction, as it appears on the surface, it is just another attempt to hide the true owner of the extensive domain portfolio, and **in the context of this specific litigation**, **yet another effort to**

5

**make judgment collection difficult**." Mot at p. 13 (emphasis added). As Plaintiff can appreciate, even assuming *arguendo* that Defendants and Jacoby are "hiding" the identity of certain domains in 2011(they aren't), those actions are irrelevant to whether "bad faith" can be established for the time period 2004-2009.

If there is any doubt, consider the following "opposite" situation: in 2005, a defendant, with full knowledge of the basketball team DETROIT PISTONS, sits down at his computer and, with malice aforethought, registers www.detroitpisttons.com, an obvious misspelling (i.e., "pisttons" instead of "pistons"). For purposes of the contact information, he provides: Mickey Mouse, 123 Main Street, Disneyland, CA. Years later, he contacts the real basketball team and offers to ransom them the domain name for $10 million. In response, the Pistons sue him, and he goes to trial in 2012. At the trial in the matter, to show his lack of back faith in 2005, he seeks to introduce the following facts: in 2011, he registered the domain name www.genericdomainnames.com. For purposes of the WHOIS contact information, he provided his actual name and actual address. He uses the domain name in connection with a bona fide business, namely, the auctioning of generic domain names. In this hypothetical, it is evident that the causal link is missing. Acts performed in the future cannot speak as to the reason that motivated past actions, rendering the two events irrelevant to one another.

Accordingly, Plaintiff's true complaint is the complaint identified in the *second* part of the sentence noted above: that Defendants are trying to "make judgment collection difficult." That complaint is easily disposed of; there is *no* judgment in this matter. That's the whole point of going to trial. A jury will hear the evidence and determine *whether* to issue a judgment, and that decision is not (and should not be) based on the relative ease of enforcing said judgment.

6

Plaintiff's final argument—that the documents "will also be relevant and admissible for the purpose of showing that, contrary to his testimony, Mr. Jacoby does indeed have 'skin in the game' or, to use his own counsel's expression, 'a dog in the fight'"—is also easily disposed with a simple rhetorical question: how so? If Defendants win, no judgment is issued. If Defendants lose, a judgment is issued against *Defendants*. Neither Mr. Jacoby nor his company is a defendant in this matter. Moreover, even if one accepted the proposition that the purchase of Connexus' assets resulted in a bias by the purchaser, in what way would the documents evidence that bias? Indeed, given that there is already *testimony* establishing such bias, what would the documents add?

### C. Defendants Are Not Under Any Court Order to Produce the Documents Requested.

Plaintiff's attempt to argue that Defendants are under court order to produce the requested documents rests upon a *truncated* version of Judge Morgan's order which borders on the deceptive. Judge Morgan's order, when read in full, provides:

> "With regard to RFP #40, NCS shall produce *e-mails to and from the emails shown on the bottom of all parked pages* regarding the purchase or sale of domain names for the Domains at Issue and for all domains registered by NCS *during the period January 1, 2008 through January 1, 2009*."

Docket No. 82, ¶ 23 (emphasis added). When one considers the entirety of the Court's order, above, which Plaintiff conveniently omits from its motion, it becomes apparent why Defendants are not under any court order to produce the asset purchase documents. Put simply, the asset purchase documents are not "e-mails to and from the e-mails shown on the bottom of all parked

7

pages" nor are they documents that existed "during the period January 1, 2008 through January 1, 2009."

### D. Plaintiff's Motion Is Notably Hypocritical.

The hypocrisy in Plaintiff's Motion should not be lost on this Court. Essentially, Plaintiff wants to present evidence of Defendants' financial arrangements to the jury when it suits Plaintiff (even though such evidence is *irrelevant*). But, when Defendants' financial evidence is inconvenient to Plaintiff—such as the number of visitors to the Domain Names at Issue or how much money Defendants made in monetizing the Domain Names at Issue—Plaintiff seeks to exclude such evidence, even though it is *relevant*. That's not the way it works. Admissibility of evidence is a function of relevance not Plaintiff's whims and desires.

## IV. CONCLUSION

For the foregoing reasons, Defendants respectfully submit that the Court deny Plaintiff's Emergency Motion to Compel.

RESPECTFULLY SUBMITTED this 14th day of May, 2012.

> */s/William A. Delgado*
> William A. Delgado
> WILLENKEN WILSON LOH & DELGADO LLP
> 707 Wilshire Boulevard, Suite 3850
> Los Angeles, CA 90017
> (213) 955-9240
> williamdelgado@willenken.com
> Lead Counsel for Defendants

8

## **CERTIFICATE OF SERVICE**

I hereby certify that on May 14, 2012, Pacific Time, I electronically filed the foregoing paper with the Court using the ECF system which will send notification of such filing to the following:

| | |
|---|---|
| Enrico Schaefer (P43506) | Nicholas J. Stasevich (P41896) |
| Brian A. Hall (P70865) | Benjamin K. Steffans (P69712) |
| TRAVERSE LEGAL, PLC | BUTZEL LONG, P.C. |
| 810 Cottageview Drive, Unit G-20 | 150 West Jefferson, Suite 100 |
| Traverse City, MI  49686 | Detroit, MI  48226 |
| 231-932-0411 | (313) 225-7000 |
| enrico.schaefer@traverselegal.com | stasevich@butzel.com |
| brianhall@traverselegal.com | steffans@butzel.com |
| Lead Attorneys for Plaintiff | Local Counsel for Defendants |
| | |
| Anthony P. Patti (P43729) | William A. Delgado |
| HOOPER HATHAWAY, PC | WILLENKEN WILSON LOH & DELGADO LLP |
| 126 South Main Street | 707 Wilshire Boulevard, Suite 3850 |
| Ann Arbor, MI  48104 | Los Angeles, CA  90017 |
| 734-662-4426 | (213) 955-9240 |
| apatti@hooperhathaway.com | williamdelgado@willenken.com |
| Attorneys for Plaintiff | Lead Counsel for Defendants |

> */s/William A. Delgado*
> William A. Delgado
> WILLENKEN WILSON LOH & DELGADO LLP
> 707 Wilshire Boulevard, Suite 3850
> Los Angeles, CA  90017
> (213) 955-9240
> williamdelgado@willenken.com
> Lead Counsel for Defendants